Christina L. Henry, WSBA# 31273
chenry@hdmlegal.com
Henry & DeGraaff, PS
787 Maynard Ave S
Seattle, WA 98104
Tel: +1-206-330-0595
Fax: +1-206-400-7609

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| OSURE BROWN,<br>     *on his own behalf and on behalf of*<br>*other similarly situated persons*,<br><br>       Plaintiff,<br><br>       v.<br><br>TRANSWORLD SYSTEMS, INC.,<br>PATENAUDE & FELIX, APC, U.S. BANK,<br>NA. NATIONAL COLLEGIATE STUDENT<br>LOAN TRUST 2004-1, NATIONAL<br>COLLEGIATE STUDENT LOAN TRUST<br>2004-2, NATIONAL COLLEGIATE<br>STUDENT LOAN TRUST 2005-1,<br>NATIONAL COLLEGIATE STUDENT<br>LOAN TRUST 2005-2, NATIONAL<br>COLLEGIATE STUDENT LOAN TRUST<br>2005-3, NATIONAL COLLEGIATE<br>STUDENT LOAN TRUST 2006-1,<br>NATIONAL COLLEGIATE STUDENT<br>LOAN TRUST 2006-2, NATIONAL<br>COLLEGIATE STUDENT LOAN TRUST<br>2007-1, and NATIONAL COLLEGIATE<br>STUDENT LOAN TRUST 2007-2,<br><br>       Defendants. | Case No: 2:20-cv-00669<br><br><br><br>AMENDED COMPLAINT<br><br><br>(JURY DEMAND) |

Plaintiff Osure Brown, on his behalf and on behalf of similarly situated persons, brings

this action by his undersigned counsel and says in support:

AMENDED COMPLAINT - 1

# I.  <u>INTRODUCTION</u>

2     1.     The Defendants have worked together and collectively orchestrated to collect

3  and attempt to collect debts through unfair and/or deceptive claims, which were lawfully

4  discharged in bankruptcy, by falsely claiming that certain loans they allegedly acquired (the

5  "Discharged Loans") were covered by a limited and specific exception to bankruptcy

6  discharges, when they knew they were not. Defendants were able to perpetrate their ongoing

7  and extensive unfair and deceptive acts and omissions by refusing to disclose documents and

8  information to consumers, including the Plaintiff, that showed that their debts did not meet the

9  criteria for exclusion from bankruptcy discharges. In the absence of the information, that was in

10  the exclusive possession of the defendants and their affiliates and agents, there was no

11  reasonable way for the Plaintiff and putative class members to know that the loans did not meet

12  the criteria for exception from the bankruptcy discharges. Only after documents were finally

13  publicly disclosed were the Defendants' scheme and unfair and deceptive practices and

14  wrongdoing exposed.

15          a.     The Defendants knew but recklessly disregarded the fact that they did not

16          have the lawful right to collect any sums from the Plaintiff and the Class members

17          because the accounts they sought to collect had been discharged in bankruptcy. They

18          have acted in concert to claim such a right when they knew that they had no such right.

19          They had information in their exclusive possession and control and knew they lacked

20          other information to support their claims. This was all concealed from the Plaintiff,

21          Class members, and the public at large until a period of time less than 12 months before

22          the commencement of this action) that they had no such right.

23          b.     Defendants also knew but recklessly, unfairly, and deceptively

24          disregarded the fact that they did not have the right to flood the courts with consumer

25          debt collection actions under the color of law, based upon records they knew were

26          unreliable, inadequate, and/or infected with inaccurate information.

Henry & DeGraaff, P.S.
787 Maynard Ave S
Seattle, Washington 98104
telephone (206) 330-0595
fax (206) 400-7609

c.      Notwithstanding this knowledge, as part of their pattern and practice related to their unfair, deceptive, and/or unconscionable debt collection practices, Defendants through their affiliates and authorized agents collected and attempted to collect on thousands of certain purported consumer debts, which they acquired for pennies on the dollar of what they claimed was due, that have been discharged in bankruptcy.

d.      The supposed debts are based on (i) non-governmental loans (ii) originated for student borrowers (and their families) but (iii) not funded for a "qualified education loan," which is specifically defined pursuant to 28 U.S.C. § 221(d)(1). Instead, the Plaintiff and Class members' loans at issue were for amounts in excess of the actual cost of education to the Plaintiff and Class members and therefore did not meet the statutory requirements to be excluded from bankruptcy discharges.

2.      As a direct and proximate result of the Defendants' acts and omissions, the Plaintiff and Class members have sustained damages and losses in the form of (i) incurred costs to defend the Defendants' improperly pursued debt collection actions, (ii) payments made to the Defendants which were not lawfully owed, and (iii) stress, worry, frustration, and anxiety related to the Defendants' debt collection activities. Plaintiff and the Class members are also entitled to statutory damages.

## II.      JURISDICTION AND VENUE

3.      This action arises under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), the Washington State Consumer Protection Act, RCW 19.86 *et seq*. ("WCPA"), the Washington State Collection Agency Act, RCW 19.86 *et seq*. with is enforced though the WCPCA ("WCAA"), and the Bankruptcy Discharge under 11 U.S.C § 524(a)(2) which is enforced through the bankruptcy court's contempt powers under 11 U.S.C § 105.

4.      Subject matter jurisdiction is conferred upon this Court by 15 U.S.C. § 1692k(d), 28 U.S.C. §§ 1331, 1334(a), 1337. Supplemental jurisdiction exists for state law claims pursuant to 28 U.S.C. § 1367.

**HENRY & DEGRAAFF, P.S.**
787 MAYNARD AVE S
SEATTLE, WASHINGTON  98104
telephone (206) 330-0595
fax (206) 400-7609

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as each defendant conducts business in this District and a substantial portion of the events or omissions giving rise to the claims occurred within this District.

### III.   **PARTIES**

6.      Plaintiff Osure Brown is a citizen of Washington state and the borrower on the consumer loans at issue.

7.      Defendant Transworld Systems, Inc. ("Transworld") is a debt collector which acts on behalf of US Bank for the NCSLT Trusts and is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts allegedly owed to others. Transworld is a corporation chartered under California law with offices at 507 Prudential Road, Horsham, Penn., 19044. Transworld does business in Washington, and its registered agent in Washington is CT Corporation System, 711 Capital Way S., Ste. 204, Olympia, Washington 98501. In addition:

a.      Transworld is a debt collector as defined in the FDCPA. It acquired the alleged consumer loan accounts of the Plaintiff and Class members at a time when it knew Plaintiff's and Class members' debts were in default on or about November 1, 2014. Among the debts Transworld collects are "private student loans" allegedly owed to the NCSLT Trusts.

b.      Transworld is managed by a Board of Directors.

c.      To carry out part of its consumer collections business, it also operates and manages an Attorney Network business unit, which includes Defendant Patenaude & Felix, APC, that files debt collection lawsuits in Washington and nationwide to collect on behalf of the NCSLT Trusts.

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

d.     These "Agency and Attorney Networks" were described on TSI's website[1] as follows:

> Transworld Systems Inc. is expanding its existing Agency and Attorney Networks with current and new business opportunities. We are extremely proud of our Agency and Attorney Networks which designs and implements cost-effective collection solutions on behalf of clients across the country. We manage a nationwide network through leading edge technology and the expertise needed to achieve results.
>
> We strive to surpass the growing and complex needs of our clients through the professional services provided by our Agency and Attorney Networks. TSI is currently seeking collection agencies and law firms to support our growing network and expanded business opportunities. TSI has a variety of business opportunities in which we are seeking professional, cost-conscious industry experts to join our Agency and Attorney Networks. The business opportunities contain, although not limited to, the following: healthcare, commercial, student loans, telecommunications, and bank card.

e.     Transworld is a licensed Washington collection agency under UBI# 600-169-996.

f.     Transworld is a person subject to RCW Ch. 19.86.

g.     Transworld was not included as a creditor in Osure Brown's bankruptcy.

8.     Defendant Patenaude & Felix, A.P.C. ("P & F") is a debt collection law firm incorporated in California. P & F is a professional corporation doing business under the laws of Washington. P & F's registered agent in Washington is Matthew Cheung, who conducts business out of an office in Lynnwood, Washington.

9.     P & F seeks to collect defaulted consumer debts on behalf of the NCSLT Trusts through litigation and the mails. In addition:

a.     P & F is a debt collector as defined in the FDCPA. It regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or

---

[1] https://web.archive.org/web/20150511054427/https://www.tsico.com/Services/Agency_Attorney_Network.html

AMENDED COMPLAINT - 5

due another including the alleged loan accounts of the Plaintiff and putative class members.

b.  P & F is managed by a Board of Directors.

c.  To carry-out part of its consumer collections business, it also operates as part of Transworld's Attorney Network business unit and files debt collection lawsuits in Washington and nationwide to collect on behalf of the Trusts.

d.  P & F is a licensed Washington collection agency.

e.  P & F is a person subject to Revised Code of Washington Ch. 19.86.

f.  P & F and its lawyer in Washington, Matthew Cheung, have, by service and/or filing, commenced over 1400 lawsuits in the State of Washington on behalf of the NCSLT Trusts including hundreds of cases against the Plaintiff and the Class members.

g.  P & F was fully aware of, countenanced, permitted, and encouraged the conduct of its employee Matthew Cheung as set forth herein.

h.  The actions of Mr. Cheung on behalf of P & F were conducted in trade or commerce and primarily in connection with P & F's business has a collection agency.

i.  Matthew Cheung is an employee of P & F, and is a lawyer licensed to practice law in the state of Washington and practices law from an office address in Lynnwood, Wash.

j.  P & F was not included as a creditor in Osure Brown's bankruptcy.

10.  Defendants National Collegiate Student Loan Trust 2004-1, National Collegiate Student Loan Trust 2004-2, National Collegiate Student Loan Trust 2005-1, National Collegiate Student Loan Trust 2005-2, National Collegiate Student Loan Trust 2005-3, National Collegiate Student Loan Trust 2006-1, National Collegiate Student Loan Trust 2006-2, National Collegiate Student Loan Trust 2007-1, and National Collegiate Student Loan Trust 2007-2 (collectively "NCSLT Trusts" or "the Trusts") are Delaware statutory trusts, formed and existing pursuant to the laws of the state of Delaware for the purpose of acquiring purported consumer debts.

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

11.     Defendant U.S. Bank, NA is a National Banking Association which does business in King County, Washington.

12.     U.S. Bank serves as the "indenture trustee" for the NCSLT Trusts. U.S. Bank's role in the Trusts is not in pursuit of its consumer banking activities.

13.     U.S. Bank became "Special Servicer" to the Trusts in 2012.

14.     U.S. Bank, rather than perform as Special Servicer, engaged and delegated its responsibilities, negligently, to Turnstile Capital Management, LLC ("Turnstile"). US Bank, directly or through Turnstile, had the duty to properly supervise and control the activities of Transworld and its Attorney Network, and for breach of that duty is vicariously liable for the torts and other wrongful conduct committed against Plaintiff and others in Washington by Transworld and/or its Attorney Network.

15.     Asserting gross negligence and other actionable wrongful conduct, the NCSLT Trusts, by way of a Verified Amended Complaint filed in Delaware Chancery Court against Transworld and two codefendants (*The National Collegiate Master Student Loan Trust 1, et al v. U.S. Bank National Association, GSS Data Services Inc., Turnstile Capital Management, LLC and Transworld Systems, Inc.*; Chancery Court of Delaware, Cause #2018-0167-JRS) ("Verified Amended Complaint"),"[2] (a copy of which is Exhibit A, hereto), against U S. Bank, Turnstile, and GSS Data Services, Inc., made, among others, the following allegations which, on information and belief, after investigation, Plaintiff asserts are accurate, and on information and belief reallege:

16.     ¶45  "Neither the Trusts nor the Owners approved these arrangements with Turnstile or with Transworld. To the contrary, the Owners specifically informed the Administrator and U.S. Bank that they did not want Turnstile or TSI to perform any services

---

[2] As of 2020, this suit has been consolidated with three others as *In re National Collegiate Student Loan Trusts Litigation*, C.A. No. 12111-VCS (Del. Ch. Jan. 21, 2020).

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S
SEATTLE, WASHINGTON  98104
telephone (206) 330-0595
fax (206) 400-7609

relating to the Trusts. But the Administrator and U.S. Bank refused to follow the instructions from the Owners. The Trust did not hire Turnstile or TSI, neither Turnstile nor TSI acts at the direction of the Trusts, and they do not follow any directions or instructions issued by the Trusts. To the contrary, as discussed below, while the Owners of the Trusts have requested that TSI cease filing lawsuits in the name of the Trusts where TSI cannot prove that the Trusts have standing to collect on defaulted loans, TSI has nevertheless continued to file such lawsuits."

17.  ¶46. "To the contrary, TSI is an agent of U.S. Bank as Special Servicer. Under the Special Servicing Agreement, U.S. Bank was responsible for 'the enforcement, collection and servicing of Delinquent Loans and Defaulted Loans. . . .'"

18.  ¶47. "U.S. Bank's duties further included monitoring the performance of Turnstile and replacing it if it was deficient or negligent in performing its duties. As set forth herein, Turnstile's performance of its duties was deficient and negligent, but U.S. Bank failed to monitor Turnstile's performance and failed to replace Turnstile as Subservicer."

19.  The remainder of the allegations as they pertain to U.S. Bank in said Verified Amended Complaint establish that U.S. Bank was in a position to prevent and avoid the unfair and deceptive acts and practices performed by Transworld and the attorneys from Transworld's Attorney Network acting in Washington and elsewhere; that U.S. Bank knew of and was fully informed about said unfair and deceptive acts and practices being performed in Washington and elsewhere; that U.S. Bank had a duty to prevent and avoid such unfair and deceptive acts and practices; and that U.S. Bank negligently and/or grossly negligently and/or intentionally failed to prevent such unfair and deceptive acts and practices in Washington and elsewhere, and in fact aided and abetted the commission of such unfair and deceptive acts and practices in Washington and elsewhere by Transworld and the attorneys retained by Transworld to act in the name of the NCSLT Trusts in Washington and elsewhere.

20.  The doctrine of respondeat superior applies to U.S. Bank, and renders it responsible for the wrongful conduct of Transworld in Washington and elsewhere as herein

HENRY & DeGRAAFF, P.S.
787 MAYNARD AVE S
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

alleged and for the wrongful actions of the attorneys retained by Transworld to act in the name of the NCSLT Trusts in Washington and elsewhere.

21.     Paragraphs 71 through 79 of the said Verified Amended Complaint establish that U.S. Bank and Transworld were fully aware that key portions of instruments which allegedly transferred the Discharged Loans or servicing rights thereto, including Schedule 1, Schedule 2, or Schedule 3 (collectively the "Loan Schedules") to those instruments, do not exist. Despite that knowledge, Transworld, with the knowledge and consent of U.S. Bank, has failed to disclose these material facts and continued in many cases, in Washington and elsewhere, to file affidavits and/or declarations under oath which falsely and knowingly testify that such schedules do exist, and that the affiant or declarant has personal knowledge of their existence and to mislead as to the true nature of the loans.

22.     Paragraphs 80 through 85 of said Verified Amended Complaint set forth examples of case authority and rulings which establish that U.S. Bank, and Transworld, knew that the declarations and affidavits, submitted to support claims made in the name of NCSLT Trusts, concerning loan documentation were false.

23.     In fact, Transworld has not only failed to disclose material facts but has created false documents purporting to reflect the Loan Schedules from the original "Pool Supplement Agreements" and Transworld, through its employees and through its Attorney Network, falsely represented, through false affidavits and/or declarations, and through false statements in pleadings, testified or asserted that such documents were genuine loan documents and that the attorney, affiant or declarant had personal knowledge of their authenticity.

24.     The foregoing omissions and statements made in, or summarized from, the said Verified Amended Complaint constitute admissible evidence under Washington Evidence Rule 801(d)(2).

25.     U.S. Bank has been fully aware of the Transworld Stipulation and Consent Order Issued by the Consumer Financial Protection Bureau ("CFPB") on September 18, 2017 and available publicly at https://www.consumerfinance.gov/administrative-adjudication-

**HENRY & DEGRAAFF, P.S.**
787 MAYNARD AVE S
SEATTLE, WASHINGTON  98104
telephone (206) 330-0595
fax (206) 400-7609

proceedings/administrative-adjudication-docket/transworld-systems-inc/, and fully aware of the unfair and deceptive acts and practices, including violations of the CAA and CPA that Transworld and U.S. Bank permitted, consented to, and aided and abetted those unfair or deceptive acts and practices.

26. U.S. Bank was, and is, bound by the Transworld Consent Order issued by the CFPB. That order imposed both affirmative and prohibitory duties upon U.S. Bank. U.S. Bank has failed and/or refused to act in accordance with its duties under said Transworld Consent Order. The failure of U.S. Bank to act in accordance with its duties under the Transworld Consent Order, and to ensure and enforce Transworld's compliance with that Consent Order, establishes that US Bank's consent to, and aiding and abetting in the commission of, unfair and deceptive acts and practices by Transworld in violation of the CAA and the CPA was willful and knowing.

27. The actions, omissions, and non-actions of US Bank in consenting to, and aiding and abetting, the unfair and deceptive acts and practices of Transworld in violation of the CAA and the CPA, are themselves unfair practices in violation of the CPA, when committed by a national banking association in, or related to, its status as a trustee for the Trusts.

28. At all times relevant to this Complaint, Transworld has acted as the debt collector on behalf of the Trusts and the Trusts expressly authorized Transworld to carry out all work that it has done on their behalf.

29. The Trusts are persons subject to RCW Ch. 19.86.

30. The Trusts, directly and indirectly, filed false claims in bankruptcy proceedings and are subject to the discharge injunction related to the Plaintiff's bankruptcy and the bankruptcies of the putative class members. The Trusts failed to disclose material facts that would have exposed that the affirmative statements made by the Trusts were untrue and the loans were subject to discharge, and the affirmative acts were designed to mislead borrowers in bankruptcy proceedings. The Trusts are not entitled to benefit from their unfair or deceptive practices.

AMENDED COMPLAINT - 10

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

31.     U.S. Bank, TSI and P & F have pursued collections of debts that are not legally enforceable through debt collection correspondence and litigation.

32.     In relation to the Plaintiff and the Class members, at all times the Defendants knew that there was a defaulted debt, that the debt had been discharged in bankruptcy, and they engaged in unfair and deceptive collection efforts after the discharge. Not only were the Plaintiff and the Class members harmed by this conduct, but so too were the other, honest creditors who did not conceal the true facts and circumstances known to them from the Plaintiff and Class members, the bankruptcy courts, U.S. Trustees, and others.

33.     This Court has jurisdiction over Transworld, P & F, U.S. Bank and the NCSLT Trusts because they do business in Washington State by collecting or attempting to collect debts from Washington State residents who they allege owe debts to the Trusts. Therefore, Defendants have obtained the benefits of the laws of Washington (without the right to do so), and Defendants are subject to the jurisdiction of this Court.

34.     Venue is proper in this District because a substantial part of the events or omissions giving rise to the claim occurred in this District. 28 U.S.C.A. §1391(b)(2).

## IV.    FACTUAL BACKGROUND

### A.    NCSLT and Transworld Background

35.     Based on publicly available documents and information and belief, the Trusts are investment vehicles that engaged in the practice of buying and selling large numbers of education-related consumer loans and collecting payments from the borrowers for the benefit of investors. The Trusts have been subject to significant litigation, including some discussed *infra*, and are aware that the assets (i.e. the purported student loans) acquired by them subject to this action are unenforceable since the debts are discharged and they otherwise cannot enforce them since they lack sufficient reliable information to enforce any alleged debt. What was not publicly available, and only disclosed in the twelve months preceding the filing of the original Complaint in this action (before removal), was that the loans are unenforceable by the Trusts and they do not qualify to be excepted under any exception to bankruptcy discharges.

AMENDED COMPLAINT - 11

36.     As the Trusts have no employees, any actions performed nominally by a Trust or on its behalf are actually performed by its board and management structure, servicers, or by attorneys hired by the servicers. On information and belief, NCO Financial Systems, Inc. claims to be the default servicer for the Trusts until November 1, 2014, at which time Transworld became the successor in interest to NCO.

37.     Transworld became the alleged default loan servicer for the Plaintiffs' and Class members' account loans at a time when it believed the loans were in default and Transworld treated the loans as in default. Transworld became the servicer for the Discharged Loans accounts at a time then it knew the Discharged Loans records were inaccurate and prone to errors, and thus rendered the loans unenforceable. Transworld knew this based on the records Transworld received from NCO and the Trusts and their affiliates at the time of the servicing transfer. However, Transworld concealed this material information from the Plaintiff and putative Class members until less than twelve months before the commencement of this action.

### 1.     Transworld attorney network

38.     Based upon public disclosures, and upon information and belief, Transworld retains a national network of law firms and attorneys to pursue delinquent borrowers by filing collection lawsuits in state courts. One of these firms is P & F.

39.     On information and belief, P & F is licensed as a collection agency in the State of Washington, and is therefore subject to laws that govern the practice of such agencies, including the federal Fair Debt Collection Practices Act ("FDCPA"), Washington's Collection Agency Act ("CAA"), and Washington's Consumer Protection Act ("CPA").

### 2.     The Trusts, Bank of America, and TERI

40.     A debtor who files a Chapter 7 or Chapter 13 proceeding is entitled to a discharge of their debts under either 11 U.S.C.A. 727 or 11 U.S.C.A. §1328, respectively. There are certain exceptions to a discharge. A private educational loan can be nondischargeable if it meets the criteria under 11 U.S.C.A. § 523(a)(8) of the Bankruptcy Code. The loans at issue

Henry & DeGraaff, P.S.
787 Maynard Ave S
Seattle, Washington 98104
telephone (206) 330-0595
fax (206) 400-7609

1    here in relation to the Plaintiff and the Class members did not meet any of the criteria under

2    § 523(8).

3    41.    Subsection (A)(i) of § 523(8) only applies and makes a loan non-dischargeable if

4    they are "made under any program funded in whole or in part by a governmental unit or

5    nonprofit institution." The loans which are the subject of the claims in this complaint did not

6    meet this requirement.

7    42.    On information and belief, since 2003, the Trusts purchased a large number of

8    loans from Bank of America, NA ("BOA") that BOA represented as being private educational

9    loans that were guaranteed by The Education Resources Institute, Inc. ("TERI"), a non-bona-

10   fide and purported non-profit organization, upon origination. The Trusts knew or had reason to

11   know that the Plaintiff's loan accounts and the loan accounts of the putative class members;

12   could never be covered by any bona fide guarantees by TERI, and that TERI was not a

13   legitimate "non-profit" organization in any event.

14   43.    In 2001, TERI entered into a purchase and sale agreement with a First

15   Marblehead Corporation ("FMC"), a for profit corporation, in which it sold its assets and

16   transferred the majority of its employees to FMC and placed the assets into a new for profit

17   subsidiary called First Marblehead Education Recourses, Inc. ("FMER"). TERI and FMC then

18   entered into a Master Servicing Agreement under which FMER would perform the loan

19   origination and servicing duties required of TERI under the Loan Origination Agreements

20   ("LOA"). Thereafter, TERI made significant changes to their bylaws in 2003 that were not

21   reported to the IRS. From 2002 till 2008, TERI paid FMER more than $500 million for loan

22   origination, processing and other services even though they only earned only $147 million from

23   LOAs. Additionally, in 2008, the balance of student loans outstanding guaranteed by TERI

24   totaled approximately $16.9 billion, and TERI reserved only 2 percent of that balance, or $326

25   million, in cash or cash equivalents, and marketable securities to cover defaults. These facts all

26   lead to the conclusion that TERI was not qualified to act as a bona fide non-profit organization.

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

44.    The terms of any such guarantees for BOA loans were governed by a Guaranty Agreement between TERI and BOA dated June 30, 2003 ("Guaranty Agreement"). (a copy of which is Exhibit B, hereto), That agreement states in part that "if either party should become subject to bankruptcy, receivership, or other proceedings affecting the rights of its creditors generally, the party becoming subject to such proceedings will promptly notify the other party thereof, and this Agreement will be deemed terminated immediately upon the initiation of such proceedings without the need of notice to the other party." TERI declared bankruptcy in April 2008 and rejected the purported guaranties it previously made.

45.    The Guaranty Agreement incorporated exhibits A-C that were not publicly available and included the program guidelines for Bank of America's Direct to Consumer Loan Program, the Servicer Data Requirements with a schedule of Guaranty Fee Amounts, and the Certificate of Guaranty that among other things, included the contractual parameters for underwriting. One of those parameters was that TERI would only guaranty loans subject to credit underwriting criteria that allowed for loans up to the "cost of education less other financial aid…" or otherwise known as the Costs of Attendance as defined by the IRS Code. The Guaranty Agreement was not publicly available and known to the Plaintiff, the members of the Class, and the general public until a period less than 12 months before the commencement of this action. The conditional language of the Guaranty Agreement undermines any claim that TERI "funded" the program under which the loans were made as required under § 523(A)(i).

46.    Subsection (A)(ii) of § 523(8) does not apply to the loans which are the subject of this complaint because they are not "funds received as an educational benefit, scholarship, or stipend."

47.    Subsection B of § 523(8) does not apply to loans which are the subject of this complaint because they were not "qualified education loan[s], as defined in section 221(d)(1) of the Internal Revenue Code of 1986" as alleged above.

**Henry & DeGraaff, P.S.**
787 Maynard Ave S
Seattle, Washington 98104
telephone (206) 330-0595
fax (206) 400-7609

## B.    Osure Brown Files for Bankruptcy

48.    On November 29, 2012, Osure Brown and his then wife filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Washington. Among the debts he listed on Schedule F of his bankruptcy petition was a debt to "Permant [sic] Recovery Inc." of Pleasanton, Cal., serviced by American Education Services of Harrisburg, Pa. on behalf of National Collegiate Trust, in the amount of $143,588.15. He did not list U.S. Bank, TSI or P & F.

49.    Between April 25 and April 30, 2013, NCO, on behalf of the Trusts and with the Trusts' authority, filed ten Proofs of Claims in Osure Brown's bankruptcy estate for amounts totaling $97,350.83, to be paid to an entity called "Total Debt Management" at a post office box in Columbus, Ga. Each Proof of Claim misstated that the basis for the claim was "Money loaned non-dischargeable student loan," and included several attachments:

a.    A "Statement of Accounts" listing the balance of the alleged loan prior to the filing date.

b.    A notice from U.S. Bank identifying itself as the Special Servicer for one or another of the NCSLT Trusts and confirming NCO as the Trusts' subservicer.

c.    A "Pool Supplement" evidencing the purported sale of certain loans from BOA to National Collegiate Funding LLC, which would in turn sell them to one of the Trusts. The Pool Supplement notes that the actual list of loans in each pool is specified by an associated Loan Schedule (variously Schedule 1, Schedule 2, or Schedule 3) of the Pool Supplement. However, the designated schedule itself is not attached.

d.    A "Note Disclosure Statement" and part of a "Loan Request/Credit Agreement" or "Loan Application/Promissory Note" for each of the ten BOA loans, signed by Osure Brown as borrower and Tommy Brown as cosigner. Although each Loan Request/Credit Agreement excerpt states that the document consists of seven pages, each Proof of Claim only includes two pages, and does not include the terms and conditions of the associated loan.

AMENDED COMPLAINT - 15

HENRY & DeGRAAFF, P.S.
787 MAYNARD AVE S
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

e. The proof of claims and the exhibits omitted material information relating to the loans that undermined the statement that the loans were non-dischargeable.

f. In the filings described in the previous paragraph, NCO and the Trusts knew that representations of non-dischargeability asserted by them were false in light of the representations and warranties in the Guaranty Agreement to which they had knowledge (but the Plaintiff, class members, and general public did not), but NCO and the Trusts elected to conceal that knowledge and misrepresented the true status of the loan accounts and their dischargeability. The Trusts and their authorized agents and affiliates made these knowing misrepresentations and omissions for the purpose of deceiving not only the Plaintiff but also other class members, bankruptcy courts, and other creditors entitled to relief in the bankruptcy proceedings.

50. Osure Brown's Chapter 13 bankruptcy plan stated that "[a]fter month 36, all available plan payments after [secured debt] is paid in full, shall be distributed to the non-dischargeable student loan creditors only, ECMC, American Educational Services, National Collegiate Trust, Permant [sic] Recovery Inc. and any other unknown student loan lenders." The statement made in the plan did not change the status of the loans because the loans had to meet the criteria for an exception to discharge but did not. Moreover, it was based on the omissions and misrepresentations described herein that the Defendants and their agents had failed to file honest and accurate claims in the bankruptcy court and elected instead to conceal from the Plaintiff and the bankruptcy court the true and accurate facts described herein until a period of time less than 12 months before the commencement of this action. At most, the reference to it in the plan shows that the effort to mislead and deceive the debtor worked.

51. Osure Brown entered into the Chapter 13 plan believing, based upon NCO's knowingly false representations on behalf of the Trusts, that the debts claimed by NCO on behalf of the Trusts were non-dischargeable. Had NCO or the Trusts not chosen to make false representations and material omissions about the non-dischargeability of the student loan accounts owned by the Trusts and chosen to conceal from them and the bankruptcy court the

AMENDED COMPLAINT - 16

terms and conditions of the Guaranty Agreement, proper objections to the proofs of claim could have been asserted.

52.     During the pendency of his bankruptcy case, Osure Brown made payments as directed by his Chapter 13 plan, which the bankruptcy trustee distributed to creditors.

53.     During the pendency of Osure Brown's bankruptcy case, the trustee distributed a total of $12,847.59 from the bankruptcy estate to the Trusts as payment on the ten fraudulent, unfair, or deceptive Proofs of Claim filed by NCO on behalf of the Trusts.  The Trusts would not have been paid these sums if the truth concerning the loans was known and they were only paid because the true status was knowingly and willfully concealed from the Plaintiff, the bankruptcy court, and other creditors.

54.     On December 29, 2017, having successfully completed his bankruptcy plan, Osure Brown received an order of discharge of all dischargeable debts, including the debts claimed by the Trusts, from the bankruptcy court under 11 U.S.C. § 1328(a).  The Trusts did not object to Osure Brown's discharge but could have done so if they believed the debts remained due and owing.  In addition, the Trusts did not appeal the bankruptcy court's discharge order in favor of Osure Brown and against their interests.

55.     Defendants, directly or through their principals and agents were given notice of the discharge.

### C.     Debt Collection Begins

56.     In October 2018, Patenaude & Felix sent ten letters, signed by Matthew Cheung, that were received by Osure Brown stating that they would initiate collection efforts regarding an outstanding balance claimed to be owed to the Trusts by Osure Brown. The collection letters failed to reference the original creditor Bank of America and did not include any breakdown of interest or service charge, collection costs, or late payment charges, if any, added to the original obligation by the original creditor or the last payment made on the loans.

57.     In response to a debt verification letter sent to Patenaude & Felix and signed for by Matthew Cheung, Osure Brown received documentation regarding all ten loans, including

HENRY & DeGRAAFF, P.S.
787 MAYNARD AVE S
SEATTLE, WASHINGTON  98104
telephone (206) 330-0595
fax (206) 400-7609

payment histories from American Educational Services, and payments on a Loan Payment History Report after charge-off on September 4, 2012. Each loan verification response included accrued interest for each loan. There is no indication on any payment history to indicate who made the payments. The responses also concealed information available to the Trusts and its debt collector Patenaude & Felix that would have identified to any reasonable person that alleged debts did not meet the criteria for nondischargeability.

58.    In January 2019, Osure Brown again received letters from Patenaude & Felix, signed by Matthew Cheung, informing him of a potential settlement for each NCSLT loan, indicating that they would discount a considerable portion of the obligation.  This separate communication also concealed information available to the Trusts and its debt collector Patenaude & Felix that would have identified to any reasonable person that alleged debts did not meet the criteria for nondischargeability.

### 1.    The Trusts File Suit

59.    On April 5, 2019, Osure Brown and Tommy Brown were sued by the Trusts, represented by P & F, in ten separate cases in King County Superior Court, Nos. 19-2-09408-7, 19-2-09402-8, 19-2-0903-6, 19-2-09404-4, 19-2-09405-2, 19-2-09405-2, 19-2-09406-1, 19-2-09407-9, 19-2-09409-5, 19-2-09410-9, and 19-2-09411-7. The cases were subsequently consolidated into cause No. 19-2-09402-8.

60.    In each case, the Trusts, Transworld, and P & F alleged that Osure Brown had liability for each one of the ten Bank of America loans identified in his Chapter 13 bankruptcy case, which, they alleged, had subsequently been purchased by the Trusts in consolidated loan pools. These statements were false, unfair, and deceptive.  In addition, these separate communications also concealed information available to the Trusts and its debt collector Patenaude & Felix that would have identified to any reasonable person that alleged debts did not meet the criteria for nondischargeability.

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

61.     After receiving the unfiled summons and complaints via process service in February 2019, Osure Brown sent *pro se* notices of appearance on all ten cases to counsel at P & F.

62.     P & F sent copies of the filed lawsuits and affidavits by letter dated April 8, 2019 to Osure Brown. These separate communications also concealed information available to the Trusts and its debt collector Patenaude & Felix that would have identified to any reasonable person that the alleged debts did not meet the criteria for nondischargeability.

63.     Each of the ten complaints filed by the Trusts, with the aid and assistance of U.S. Bank and their debt collectors Transworld and P & F, was unfair, abusive, and deceptive in multiple ways, as explained herein:

**2.     The Trusts could not substantiate their ownership of the loans.**

64.     In each case, the NCSLT Trusts concurrently filed an affidavit (collectively the "Audet Affidavits") signed by Jennifer A. Audet, an employee of Transworld, the NCSLT Trusts' debt collector. Each of Audet's Affidavits claimed that Audet had personal knowledge regarding the records pertaining to the loan at issue, had verified that there was an outstanding principal balance on a loan currently owned by one of the Trusts, and was authorized by Transworld and US Bank, National Association to make the representations in the affidavit. Each Audet Affidavit also claimed that the associated loan had been transferred, sold and assigned to the NCSLT Trusts. Each of the Audet Affidavits also concealed information available to the Trusts and its debt collector Patenaude & Felix that would have identified to any reasonable person that alleged debts did not meet the criteria for nondischargeability and in fact were then discharged by Osure Brown's prior bankruptcy case and no right to collect actually existed.

65.     Attached to each of the Audet Affidavits is a trio of exhibits purporting to substantiate the chain of assignment for the loan. Exhibit A was a notice from U.S. Bank identifying itself as the special servicer for a number of the Trusts, including the defendants, and confirming Transworld as the trusts' subservicer. Exhibit B was a document titled "Loan

**Henry & DeGraaff, P.S.**
787 Maynard Ave S
Seattle, Washington 98104
telephone (206) 330-0595
fax (206) 400-7609

Application/Promissory Note" or "Loan Request /Credit Agreement" allegedly signed by Osure Brown as borrower and Tommy Brown as cosigner and submitted to BOA, along with a document titled "Note Disclosure Statement" that includes additional information about the alleged loan. Exhibit C consisted of a "Pool Supplement" evidencing the purported sale of certain loans from BOA to The National Collegiate Funding LLC, which would in turn sell them to one of the NCSLT Trusts, followed by a "Deposit and Sale Agreement" that purports to record the sale of the pool of loans from National Collegiate Funding to the designated Trust.

66. In each case, both the Pool Supplement and the Deposit and Sale Agreement note that the actual list of loans in each pool is specified by an associated Schedule (variously Schedule 1, Schedule 2, or Schedule 3; collectively the "Loan Schedules") of the associated Pool Supplement. None of the Pool Supplements attached to any of the Audet Affidavits include the associated Schedules referenced and thus cannot establish the validity of assignment under RCW 19.16.270, despite the claim in the affidavits that Exhibit C "is a true and correct copy of the assignment Agreement(s) described herein."

67. The Audet Affidavits purposely did not disclose any information relating to the inability of the loans to meet the criteria under 11 U.S.C.A. § 523(a)(8) or that the Trusts did not have any of the schedules needed to prove assignment under RCW 19.16.270.

68. Additionally, the Audet Affidavits claimed that Tommy Brown had made payments on the loans, with the last payment made for various loans in 2017 and 2018, without disclosing that any payments made on the account were not made by Tommy Brown. When subsequently challenged on the validity of the false Audet Affidavits, the Trusts responded by replacing them on October 7, 2019 with a new affidavit (the "Luke Affidavit") signed by Bradley Luke, another Transworld employee presented as the custodian of records for the Trusts.

69. The Luke Affidavit was accompanied by several exhibits that purported to substantiate the Trusts' ownership of the loans at issue. Like the Audet Affidavits, however, the Luke Affidavit failed to provide any of the Loan Schedules required to prove a valid

HENRY & DeGRAAFF, P.S.
787 MAYNARD AVE S
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

assignment, or any other business records demonstrating that the Trusts had at any point purchased any loans originated by Osure Brown and/or Tommy Brown. Instead, it provided what appeared to be an excerpt of a spreadsheet, which appeared to have been expressly generated for litigation purposes long after the loans were purportedly originated. Also, the Luke Affidavit did not disclose any information relating to the inability of the loans to meet the criteria under 11 U.S.C.A. § 523(a)(8) or that the Trusts did not have sufficient information to properly pursue the claims before a court since they had been previously discharged in Osure Brown's prior bankruptcy and therefore the Trusts had no right to attempt to collect. The Luke Affidavit was a separate communication that also concealed information available to the Trusts and its debt collector Patenaude & Felix that would have identified to any reasonable person that alleged debts did not meet the criteria for nondischargeability.

### 3. The Trusts could not prove that the loans survived bankruptcy.

70.     None of the complaints and amended and supplemental papers filed by NCSLT disclosed that Osure Brown had scheduled the loans in bankruptcy and received a discharge of all dischargeable debts prior to the filing of the complaints.

71.     For a debt to be considered non-dischargeable under 11 U.S.C. § 523(a)(8)(A), it must be "(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend."

72.     The loans for which the Trusts filed claims did not meet the criteria under § 523(a)(8)(A)(i) because they were not funded by a government unit or bona-fide nonprofit institution.

73.     The loans for which the Trusts filed claims also did not meet the criteria under § 523(a)(8)(A)(ii) because they were not an obligation to repay funds received as an educational benefit, scholarship, or stipend.

Henry & DeGraaff, P.S.
787 Maynard Ave S
Seattle, Washington 98104
telephone (206) 330-0595
fax (206) 400-7609

74.     For a debt to be considered non-dischargeable under 11 U.S.C. § 523(a)(8)(B) it must be a "qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986…." The loans for which the Trusts filed claims against Osure Brown did not meet these criteria.

75.     The loans for which the Trusts filed claims were all purportedly related to Osure Brown's studies at Washington State University ("WSU") and Bellevue College between 2003 and 2007.

76.     The Guaranty Agreement between BOA and TERI states that "the borrower may obtain funds under the program, up to the cost of education less other financial aid," and that "if the student wishes to borrow amounts in excess of a Participating School's published cost of attendance, a letter is required from the School stating that these additional funds are needed as an education expense." Those details and limitations on the Guaranty Agreement were not known to the Plaintiff, Class members, or the public until less than 12 months before the commencement of this action; the Defendants knew the details and limitations of the guaranty agreement but chose to conceal it from the Plaintiff, Class members, and the public.

77.     The TERI guaranty agreements were not disclosed to Plaintiff's counsel until December 2019 and by the Trusts to Plaintiff until January 2020.

78.     In all subsequent paragraphs, the "published cost of attendance" at WSU includes tuition, fees, room and board, transportation, and other living expenses, as published by WSU for the appropriate time period.

79.     In all subsequent paragraphs, "non-NCSLT financial aid" incorporates all financial aid received by Osure Brown during his tenure at WSU that was not included in any of the claims filed by the Trusts, Transworld, and P & F against Osure Brown and Tommy Brown on April 5, 2019.

80.     For the 2003–04 school year, the published cost of attendance at WSU for Osure Brown's attendance was $18,914. He received non-NCSLT financial aid totaling $18,914, or 100 percent of the published cost of attendance. In cause No. 19-2-09403-6, NCLST Trust

AMENDED COMPLAINT - 22

2005-1 declared that BOA had loaned Osure Brown $12,248 for the school year, every cent of which was in excess of his actual cost of education less other financial aid.

81.     For the 2004–05 school year, the published cost of attendance at WSU for Osure Brown's attendance was $18,862. He received non-NCSLT financial aid totaling $18,862, or 100 percent of the published cost of attendance. In causes Nos. 19-2-09404-4 and 19-2-09405-2, NCLST Trusts 2005-2 and 2005-3 declared that BOA had loaned Osure Brown a total of $16,042.78 for the school year, every cent of which was in excess of his actual cost of education less other financial aid.

82.     For the 2005–06 school year, the published cost of attendance at WSU for Osure Brown's attendance was $9,622. He received non-NCSLT financial aid totaling $9,622, or 100 percent of the published cost of attendance. In causes No. 19-2-09409-5 and 19-2-09410-9, NCLST Trusts 2006-1 and 2006-2 declared that BOA had loaned Osure Brown a total of $25,688.45 for the school year, every cent of which was in excess of his actual cost of education less other financial aid.

83.     For the 2006–07 school year, the published cost of attendance at WSU for Osure Brown's attendance was $9,841. Osure Brown received non-NCSLT financial aid totaling $9,841, or 100 percent of the published cost of attendance. In cause Nos. 19-2-09402-8 and 19-2-09411-7, NCLST Trust 2007-2 declared that BOA had loaned Osure Brown $24,902.84 for the school year, every cent of which was in excess of his actual cost of education less other financial aid.

84.     Under the terms of the 2003 Guaranty Agreement between BOA and TERI, every cent loaned by BOA to Osure Brown was not guaranteed by TERI, because every cent was in excess of his cost of education less other financial aid.  The Guaranty Agreement was concealed from Osure Brown by the Defendants until December 27, 2019 when a similar guaranty agreement was unsealed in *Mata et.al. v National Collegiate Student Loan Trust 2006-1*, Adv. No. 6:18-ap-01089-MH, Bankr. C.D. Cal. Dec. 27, 2019, Dkt No. 99. Thereafter, Osure Brown's attorney was able to obtain the BOA Guaranty Agreement in January 2020.

**HENRY & DeGRAAFF, P.S.**
787 MAYNARD AVE S
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

85.     Further, under the terms of the 2003 Guaranty Agreement, every cent loaned by BOA to Osure Brown was not guaranteed by TERI, because the agreement was nullified upon TERI's 2008 bankruptcy.

86.     Because none of the money BOA loaned to Osure Brown (which debt was allegedly subsequently acquired by the Trusts) was guaranteed by a qualified non-profit institution, all such debts were discharged at the conclusion of Osure Brown's Chapter 13 bankruptcy plan.

87.     Therefore, the ten state court litigation claims filed by the Trusts against Osure Brown and Tommy Brown were invalid, because any and all debts claimed by the Trusts had been discharged in the prior bankruptcy. Each separate action to collect on these debts was false and misleading since the Trusts had no legal right to pursue Osure Brown in debt collection litigation and otherwise

88.     The Trusts, Transworld, U.S. Bank and P & F were aware of all facts, and had exclusive possession of these facts, which necessarily meant that every debt claimed by the Trusts in the state court proceedings had been discharged in bankruptcy, but concealed that knowledge from the Plaintiff and state court until less than 12 months before the commencement of this action.

89.     P & F also proceeded with filing actions that it knew could not be proven because it had a vested interest in any recovery obtained—even though it had no right to pursue collection on the discharged debts.

**D.     Summary Judgment is Granted in Favor of the Browns**

90.     On September 20, 2019, the Browns moved for summary judgment in their favor in the consolidated matter for lack of standing and for failure to prove assignment of the loans, arguing that Bradley Luke did not have the ability to testify about the NCSLT Trusts' ownership of the loans at issue.

91.     On October 24, 2019, the Browns' motion for summary judgment and associated motions by all parties were heard before the King County Superior Court of the State of

**HENRY & DEGRAAFF, P.S.**
787 MAYNARD AVE S
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

1     Washington by the Hon. Nicole Gaines-Phelps. On December 24, 2019 the state court ordered

2     that summary judgment be granted in favor of Osure Brown and Tommy Brown in the

3     consolidated matter which incorporated oral findings of fact and conclusions of law found in the

4     transcript of the hearing attached as Exhibit A to Dkt No. 67 ("October 24, 2019 Hearing

5     Transcript"), attached hereto as Exhibit C.

6          92.     The state court also struck the affidavit of Bradley Luke as hearsay, because Mr.

7     Luke was not employed by the entity that had custody and possession of the purported records

8     and did not have knowledge of the retention policies of BOA, the alleged originator of the

9     loans. Accordingly, the state court granted the motion for summary judgment in favor of the

10     Browns ("Order Granting Summary Judgment"), attached hereto as Exhibit D.

11          93.     The NCSLT Trusts, and their debt collectors Transworld and P & F, did not

12     appeal the judgments entered against the Trusts in favor of the Browns. Those judgments are

13     now final judgments.

14        **E.**     **The Trusts Possessed Knowledge that They Chose to Conceal from the Plaintiff, Class Members, and State Courts.**

15          94.     The Trusts were recently the subject of investigation by the CFPB.

16          95.     On September 18, 2017 a complaint was filed by the CFPB against fifteen

17     National Collegiate Student Loan Trusts, including all of the defendant trusts in the instant

18     matter (collectively the "Collective NCSLT Trusts"), in the United States District Court for the

19     District of Delaware, Cause No. 17-cv-01323-GMS (ECF No. 1 therein) ("CFPB Complaint"),

20     attached hereto as Exhibit E.

21          96.     The same day, the parties jointly moved therein for entry of a consent judgment

22     (ECF No. 3 therein)("CFPB Proposed Consent Judgment"), attached hereto as Exhibit F.

23          97.     The CFPB Complaint allege that unfair and deceptive practices in debt collection

24     are routine practices of the NCSLT Trusts and regardless of whether or not the CFPB Proposed

25     Consent Judgment is approved by a federal court against the NCSLT Trusts, the NCSLT Trusts

26     are on notice and have knowledge of the allegations, and so does the public.

**HENRY & DEGRAAFF, P.S.**
787 MAYNARD AVE S
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

98.     That CFPB Proposed Consent Judgment is thus incorporated by reference here as if fully set forth.

99.     On September 15, 2017, more than a year and a half before filing suit against the Browns, the CFPB issued a Stipulation and Consent to the Issuance of a Consent Order ("Transworld Stipulation") and a Consent Order in the matter of Transworld Systems, Inc. as agent for the Collective NCSLT Trusts("Transworld Consent Order"), filing both in 2017-CFPB-0018, attached hereto as Exhibit G and H.

100.    That Transworld Consent Order was issued specifically as to Transworld's unfair and deceptive acts and practices on behalf of, or in the name of, the NCSLT Trusts. The Transworld Consent Order is both remedial and mandatory, and identified and prohibited many of the unfair and deceptive acts and practices of Transworld on behalf of, or in the name of, the NCSLT Trusts identified above.

101.    In the Transworld Consent Order, the CFPB found that Transworld and its nationwide network of law firms committed a number of offenses between November 1, 2014 and April 25, 2016, including:

a.      Filing tens of thousands of collections lawsuits against borrowers in which they did not possess the complete documentation needed to prove the NCSLT Trusts owned the loans;

b.      Filing tens of thousands of affidavits in support of collections lawsuits in which the affiant swore they had personal knowledge of the debt, when in fact the affiants frequently merely reviewed data on a computer screen, did not know the source of the data or how it was collected and maintained, and lacked knowledge of the chain of assignment records necessary to prove that the relevant Trust owned the loans;

c.      Filing numerous lawsuits without the intent or ability to prove the claims, if contested.

102.    The Transworld Consent Order further found that these acts constituted violations of the Consumer Financial Protection Act, 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

103.    In 2018, the Collective NCSLT Trusts, through the Trusts' Owners (as defined in the Trust Agreements), filed suit in Delaware Chancery Court against Transworld and two codefendants, for breach of contract, charging them with costing the Collective NCSLT Trusts billions of dollars and with causing "wrongful and fraudulent …cases being brought against thousands of borrowers." *See* Verified Amended Complaint, Exhibit A

104.    Specifically, the Collective NCSLT Trusts have accused Transworld of injurious falsehood for, among other things:

>    a.    Recklessly making false and misleading representations to borrowers that the Collective NCSLT Trusts had a right to sue the Plaintiff and putative class members, when they did not;

>    b.    Falsely representing to borrowers that the Collective NCSLT Trusts possessed all of the notes, assignments and other documents needed to prove standing to foreclose on their loans, when they did not;

>    c.    In so doing, exposing the Collective NCSLT Trusts to lawsuits from borrowers.

105.    At the time the NCSLT Trusts filed suit against Osure Brown on April 5, 2019, the Trusts were aware of the CFPB Consent Order, and of their lawsuit against Transworld and other codefendants in Delaware Chancery Court.

106.    At the time the NCSLT Trusts filed suit against Osure Brown on April 5, 2019, the Trusts were aware of the reckless and injurious practices of Transworld as explained in the Delaware lawsuit.

107.    At the time the NCSLT Trusts filed suit against Osure Brown, with the aid and assistance of Transworld and P & F, on April 5, 2019, the NCSLT Trusts, U.S. Bank, Transworld, and P & F were aware of Transworld's reckless and injurious practices. Yet, Transworld, U.S. Bank, P & F, and the NCSLT Trusts continued their unfair and deceptive practices of flooding the courts with hundreds of debt collection actions without a reasonable

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

basis to do so and without the right to due so based on their prior admissions in the CFPB Consent Orders.

108.     The actions of the NCSLT Trusts, Transworld, U.S. Bank and P & F in regard to Osure Brown were substantially identical to the actions that the Transworld Consent Order found they took in regard to thousands of borrowers across the country in violation of the Consumer Financial Protection Act.

109.     The NCSLT Trusts, P & F, U.S. Bank and Transworld were aware that they lacked the ability to prove their ownership of any loans taken out by Osure Brown at the time they filed their collection action against the Browns.

110.     The NCSLT Trusts are aware that they cannot prove they have a legitimate claim on the $12,847.59 paid to them from the bankruptcy estate of Osure Brown between 2012 and 2017. Yet, the NCSLT Trusts wish to retain the benefit from their improper actions.

111.     The NCSLT Trusts and U.S. Bank are aware that the Loan Schedules related to the purported student loans acquired by them are lost, and they do not exist now, if they ever did. No entity has the Loan Schedules and thus these loans are uncollectible by any successor because no one can prove valid assignment and history of the loans.

## V.     CLASS ALLEGATIONS

112.     Plaintiff Osure Brown also sues on behalf of others, pursuant to Fed. R. Civ. P. R. 23, who are similarly situated to Mr. Brown as a Washington Class or Classes. This Class or Classes of similar persons are defined as follows:

a.     **Bankruptcy Class**: Any person who received a bankruptcy discharge from  a bankruptcy court located  in the State of Washington and against whom the Trusts, directly or indirectly through their authorized agent(s), filed bankruptcy proofs of claims of alleged non-dischargeable student loan debts, where the student loans were in fact for sums in excess of the actual published cost of attendance at the person's school, and/or were not made, insured, or guaranteed by a governmental unit, or made under any

**HENRY & DEGRAAFF, P.S.**
787 MAYNARD AVE S
SEATTLE, WASHINGTON  98104
telephone (206) 330-0595
fax (206) 400-7609

program funded in whole or in part by a governmental unit or bona fide nonprofit institution.

   b.    **FDCPA Class:** Those persons with an address in the State of Washington whom P & F or Transworld has communicated with directly or indirectly for the purpose of collecting a purported student loan owned by a Trust after the person had obtained a discharge of the debt under Chapter 7 or Chapter 13 of the Bankruptcy Code or the Defendants are collaterally estopped from collecting based on the final judgment described in ¶¶ 90-93. On information and belief, most but not all members of the FDCPA Class are also members of the Bankruptcy Class.

   113.   Excluded as members of the Bankruptcy Class and the FDCPA Class are any persons who fall within these definitions if the person is (i) an employee or independent contractor of any of the Defendants; (ii) a relative of an employee or independent contractor of any of the Defendants; (iii) is an employee of the Court where this action is pending or (iv) have previously released the Defendants for the claims asserted in this action.

   114.   The Class definitions may be amended or modified.

   115.   Osure Brown proposes to represent himself and the Bankruptcy Class and the FDCPA Class defined above.

   116.   Osure Brown qualifies as a person who is a member of the respective Class definitions he seeks to represent.

   117.   The members of the Bankruptcy Class and FDCPA Classes are capable of being described without difficult managerial or administrative problems. The members are readily identifiable from the information and records in the possession, custody or control of the Defendants, public records, and records of third parties including the consumer reporting agencies who report the Defendants furnished credit information to others as part of their business.

   118.   Upon information and belief based on public records, the Bankruptcy Class and FDCPA Class are each sufficiently numerous such that individual joinder of all members is

AMENDED COMPLAINT - 29

impractical. This allegation is based on the fact that the Trusts have sued thousands of consumers nationwide, including hundreds of cases in Washington by P & F and Transworld, and also filed thousands of proofs of claims in bankruptcy proceedings throughout the country.

119. There are questions of law and fact common to the Bankruptcy Class which predominate over any questions affecting only the individual members of the Bankruptcy Class. The common issues include, but are certainly not limited to:

a. Whether the debts fell within the limited exception to bankruptcy discharge;

b. Whether the Trusts and the other defendants pursued collections of debts that were discharged in bankruptcy;

c. Whether the Trusts had knowledge of the bankruptcy discharges.

120. There are questions of law and fact common to the FDCPA Class which predominate over any questions affecting only the individual members of the FDCPA Class. The common issues include, but are certainly not limited to:

a. Whether the Defendants have used false, deceptive or misleading statements in connection with its attempts to collect debts from the members of the FDCPA class;

b. Whether the Defendants have made false statements concerning the character, amount or legal status of any debts, misrepresenting, directly or indirectly, expressly or by implication, that Defendants had verified that the debt was the accurate amount, owed by the consumer, and collectible;

c. Whether the Defendants have made any threat to take legal action that they do not have the right to take in light of the class member's bankruptcy discharges;

d. Whether the Defendants misrepresented, directly or indirectly, expressly or by implication, when filing debt collection lawsuits and other separate communications that they intended to and could prove their claims when they could not;

**HENRY & DEGRAAFF, P.S.**
787 MAYNARD AVE S
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

e. Whether the Defendants have used any false representation or deceptive means to collect or attempt to collect any debt;

f. Whether the Defendants engaged in any material investigation as to the completeness or authenticity of records to prove the chain of title and/or ownership of loan documents.

g. Whether the Defendants engaged in any investigation of prior collection activities to determine if any unfair practice had been committed which as a matter of law prevent collection of interest, costs or charges under RCW 19.16.450, or otherwise;

h. Whether the Defendants engaged in any investigation of the validity or truth of statements contained in the alleged loan documents;

i. Whether the Defendants both negligently and intentionally caused false evidence to be submitted in student loan collection actions commenced in the state of Washington where they knew or should have known that the affidavits supporting the lawsuits were false or that the affiant lacked personal knowledge of the matters to which he or she attested;

j. Whether the Defendants sued, directly and indirectly, on a debt not owed to the;

k. Whether the Defendants have used any unfair or unconscionable means to collect or attempt to collect any debt;

l. Whether the Defendants filed and served lawsuits without standing or ownership of the alleged debt; and

m. The sum of the Defendants' net worth;

121. The Plaintiff Osure Brown's claims are the same as those of each member of the Bankruptcy Class and FDCPA Class and are based on the same legal and factual theories.

122. There is no material difference between his claims and the claims of the members of the respective classes he seeks to represent.

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

123.	The Defendants' likely defenses (though unavailing) are and will be typical of and materially the same or identical for each of the Bankruptcy Class and FDCPA Class and will be based on the same legal and factual theories. There are no valid, unique defenses.

124.	Osure Brown will fairly and adequately represent and protect the interests of the class members.

125.	Osure Brown does not have any interests antagonistic to the members of the respective classes he seeks to represent.

126.	Osure Brown seeks certification pursuant to Fed. Civ. P. 23(b)(2) and (b)(3).

127.	The Defendants' acts were wrongful on grounds that apply uniformly across the Bankruptcy Class and FDCPA Class so that the underlying statutory relief afforded to the claims below is appropriate respecting each of the classes as a whole. Further, common questions predominate over any individual questions and a class action is superior for the fair and efficient adjudication of this controversy. A class action will cause an orderly and expeditious administration of class members' claims, and economies of time, effort, and expenses will be fostered and uniformity of decisions will be ensured.

128.	Apart from details such as names, dates, and dollar amount of Discharged Loans, there are no individual questions to establish the claims of the Plaintiff and the Bankruptcy Class or the FDCPA Class members. The claims are based on Defendants' omissions and lack of right to collect from Class Members for Discharged Loans.

129.	Osure Brown's claims are typical of the claims of the Bankruptcy Class and FDCPA Class members.

130.	The Bankruptcy Class members have suffered damages, losses, and harm similar to those sustained by Osure Brown in relation to the improper, unfair, and deceptive collection activities of the Defendants in violation of state and federal laws governing their activities.

131.	There is an actual controversy between the Bankruptcy Class members and the Defendants.

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

132.     The FDCPA Class members have suffered damages, losses, and harm similar to those sustained by Plaintiff in relation to the improper, unfair, and deceptive collection activities of the Defendants in violation of state and federal laws governing their activities.

133.     As described herein, the claims of the Bankruptcy Class and FDCPA Class are tolled by the Defendants' unlawful concealment of their knowledge from the Plaintiff, the Bankruptcy and FDCPA Class members, various state and federal courts, and the public until less than 12 months before the commencement of this action.

134.     The Defendants also took affirmative actions to conceal the claims from Plaintiff Osure and the Bankruptcy Class and FDCPA Class members. Therefore, any limitations period applying to Osure Brown's claims and the claims of the Bankruptcy Class members or FDCPA Class Members should be equitably tolled given the Defendants' voluntary and improper election to conceal disclosure of the material information which should have foreclosed its efforts to collect from Osure Brown and Bankruptcy Class members.

## VI.     CAUSES OF ACTION

### A.     COUNT I:  FAIR DEBT COLLECTION PRACTICES ACT ("FDCPA"), 15 U.S.C. § 1692, *ET SEQ.* ON BEHALF OF THE NAMED PLAINTIFF AND THE FDCPA CLASS MEMBERS AGAINST CERTAIN DEFENDANTS.

135.     Plaintiff incorporates all preceding paragraphs as if set forth fully herein and assert this claim on his behalf and on his behalf of FDCPA Class members against Defendants Transworld and P & F only.

136.     Transworld and P & F acquired their interest in the Named Plaintiff and FDCPA Class members' consumer loans during a period in which each allege (directly and indirectly) the loans of the Plaintiff and FDCPA Class were in default and were otherwise delinquent pursuant to the loan documents. In fact, P & F presented to various state courts in relation to the Plaintiff and the FDCPA class members the sworn testimony under penalties of perjury Transworld's testimony of these facts on behalf of the Trusts. Therefore Transworld and P & F are Debt Collectors within the meaning of 15 U.S.C. § 1692a(6). Transworld and P & F also are debt collectors pursuant to 15 U.S.C. § 1692a(6) because their principal business activity utilizes

AMENDED COMPLAINT - 33

**HENRY & DEGRAAFF, P.S.**
787 MAYNARD AVE S
SEATTLE, WASHINGTON  98104
telephone (206) 330-0595
fax (206) 400-7609

instrumentalities of interstate commerce or the mails related to the collection of consumer debts on behalf of others including the Trusts.

137.     By communicating with the Plaintiff and FDCPA class members, directly and indirectly, and threatening and/or actually pursuing litigation and demanding sums not legally due from the Plaintiff and the FDCPA class members, which are barred from collection against the Plaintiff and FDCPA Class members as a result of bankruptcy discharges and an inability to prove their claims, Transworld and P & F used false, deceptive, or misleading representations or means in connection with the collection of consumer debts of the Named Plaintiff and FDCPA Class members in violation of 15 U.S.C. § 1692e, 1692e(2), 1692e(5) and 1692e(10).

138.     Alternatively to the claims asserted in the previous paragraph, Transworld's and P & F's actions and omissions described herein in relation to pursuing discharged debts and their knowledge of the Trust's inaccurate and incomplete records which are not sufficient to pursue debt collection actions also constitute unfair or unconscionable means to collect or attempt to collect from the Named Plaintiff and FDCPA Class Members in violation of 15 U.S.C. § 1692f.

139.     Named Plaintiff and the FDCPA Class members have suffered actual economic and non-economic damages, as more fully described *supra* and have incurred attorney's fees and court costs as a result of Transworld's and P & F's illegal debt collection practices and direct and indirect actions described herein.

140.     The FDCPA provides for statutory damages in addition to actual damages.

**B.     COUNT II: CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF ON BEHALF OF THE PLAINTIFF AND THE FDCPA CLASS AGAINST ALL DEFENDANTS.**

141.     Plaintiff Osure Brown incorporates all preceding paragraphs as if set forth fully herein and assert this claim on his behalf and on behalf of FDCPA Class members against all Defendants.

142.     There is an actual controversy between the parties concerning the enforceability of the debts that the Defendants have sought to collect from the Plaintiff and the FDCPA Class.

AMENDED COMPLAINT - 34

**HENRY & DEGRAAFF, P.S.**
787 MAYNARD AVE S
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

1    143.     The Plaintiff and the FDCPA Class seek a declaratory judgment pursuant to Fed.

2 R. Bankr.P. 7001(9) and 28 U.S.C. § 2201 of the respective rights of the parties.

3    144.     The Plaintiff and the FDCPA Class seek a declaration that the Defendants are

4 estopped from claiming the right to collect the debts from the Plaintiff and the FDCPA class by

5 the judgment entered in favor of the Plaintiff in the prior actions filed against him described in ¶

6 that the Defendants seek to collect are discharged and may not be collected.

7     **C.**     **COUNT III: VIOLATION OF THE DISCHARGE INJUNCTION ON**
           **BEHALF OF THE PLAINTIFF AND THE BANKRUPTCY CLASS**
8            **MEMBERS AGAINST ALL DEFENDANTS.**

9    145.     Plaintiff Osure Brown incorporates all preceding paragraphs as if set forth fully

10 herein and asserts this claim on his behalf and on behalf of Bankruptcy Class members against

11 the Defendant Trusts only.

12    146.     The Defendant Trusts have attempted to collect on discharged debts of Osure

13 Brown as a personal liability in violation of 11 U.S.C § 524(a), which is subject to enforcement

14 through the bankruptcy code's contempt powers under 11 U.S.C § 105.

15    147.     As discussed herein, the Plaintiff and Bankruptcy Class members have been

16 damaged by the Defendant Trusts by (i) their attempts at debt collection through letters

17 attempting to collect debt that was discharged in bankruptcy and (ii) their improper post-

18 bankruptcy debt collection actions brought in state court for debts which were discharged in

19 bankruptcy.

20    148.     It would be inequitable and unjust to permit the Trusts to retain their receipts

21 obtained on any discharged debts.

22     **D.**     **COUNT IV: CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF**
           **ON BEHALF OF THE PLAINTIFF AND THE BANKRUPTCY CLASS**
23            **AGAINST ALL DEFENDANTS.**

24    149.     Plaintiff Osure Brown incorporates all preceding paragraphs as if set forth fully

25 herein and asserts this claim on his behalf and on behalf of Bankruptcy Class members against

26 the Defendant Trusts only.

**HENRY & DEGRAAFF, P.S.**
787 MAYNARD AVE S
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609

150.    There is an actual controversy between the parties concerning the enforceability of the debts that the Defendants have sought to collect from the Plaintiff and the Bankruptcy Class.

151.    The Plaintiff and the Bankruptcy Class seek a declaratory judgment pursuant to 28 U.S.C.A. 2201 of the respective rights of the parties.

152.    The Plaintiff and the Bankruptcy Class seek a declaration that the debts that the Defendants seek to collect are discharged and may not be collected.

153.    The Plaintiff and the Bankruptcy Class also seek a declaration that the Defendants must return any amounts they have collected for debts that were discharged.

154.    Plaintiff Osure Brown further asserts that the public interest favors granting injunctive relief sought to protect and enforce the discharge granted to Plaintiff or the members of the Bankruptcy Class under 11 U.S.C. § 727 or § 1328 as provided by § 524, and that this interest is furthered by the granting of injunctive relief to enjoin all collection efforts against Plaintiff and the Bankruptcy class members.

155.    Plaintiff Osure Brown further asserts that granting the injunction will maintain the status quo that these debts have been discharged and may not be collected by the Defendants.

## VII.    REQUEST FOR RELIEF

WHEREFORE, the Plaintiff prays for the following relief and judgment in his favor and the other members of the FDCPA Class and against Transworld and P & F pursuant to Count I of this Complaint under the FDCPA and Against All Defendants pursuant to Counts II:

i.    The Court certify a FDCPA Class of persons as defined herein subject to modification or amendment;

ii.    The Court appoint Plaintiff and his counsel to represent the FDCPA Class certified;

iii.    The Plaintiff and FDCPA Class be awarded statutory damages against each Defendants Transworld and P & F pursuant to the FDCPA in the sum of $500,000 per

AMENDED COMPLAINT - 36

1    defendant;

2          iv.      The Plaintiff and FDCPA Class be awarded actual damages against the

3    Defendants Transworld and P & F under Count I in an amount to be determined at trial;

4          v.       The Plaintiff and FDCPA Class the declarations sought and injunctive

5    relief sought in Count II and enjoin the Defendants from further collection of discharged

6    debts;

7          vi.      The Plaintiff and the FDCPA Class be awarded their costs, including

8    attorney fees, pursuant to the FDCPA; and

9          vii.     The Plaintiff and FDCPA Class be awarded such other and further relief as

10   may be appropriate and proper.

11          WHEREFORE, the Plaintiff and the Bankruptcy Class also pray for the following

12   relief and judgment against the Defendants pursuant to Count III of this Complaint:

13         viii.    The Court certify a Bankruptcy Class of persons as defined herein subject

14   to modification or amendment;

15         ix.      The Court appoint Plaintiff and his counsel to represent the Bankruptcy

16   Class certified;

17         x.       The Plaintiff and Bankruptcy Class be awarded actual damages against the

18   Defendants in an amount to be determined at trial;

19         xi.      The Court grant the declarations sought and injunctive relief and enjoin the

20   Defendants form further collection of discharged debts;

21         xii.     The Plaintiff and the Bankruptcy Class be awarded their costs, including

22   attorney fees to the extent allowed by law; and

23         xiii.    The Plaintiff and Bankruptcy Class be awarded such other and further

24   relief as may be appropriate and proper.

25

26

AMENDED COMPLAINT - 37

Dated this 25th of June 2020.

/s/ Christina L Henry
Christina L Henry, WSBA 31273
Counsel for Plaintiff
HENRY & DEGRAAFF, PS
787 Maynard Ave S
Seattle, WA 98104
206-330-0595 Fax 206-400-7609
chenry@hdm-legal.com

/s/ Scott C. Borison
Scott C. Borison (Pro Hac Vice)
Borison Firm, LLC.
Counsel for Plaintiffs
1900 S. Norfolk St. Suite 350
San Mateo CA 94401
301-620-1016 Fax 301-620-1018
scott@borisonfirm.com

/s/ Phillip R. Robinson
Phillip R. Robinson (Pro Hac Vice)
Consumer Law Center LLC
8737 Colesville Road, Suite 308
Silver Spring, MD 20910
(301) 448-1304
phillip@marylandconsumer.com

HENRY & DEGRAAFF, P.S.
787 MAYNARD AVE S
SEATTLE, WASHINGTON 98104
telephone (206) 330-0595
fax (206) 400-7609