1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

OSURE BROWN, on his own behalf and
on behalf of other similarly situated
persons,

               Plaintiff,

    v.

TRANSWORLD SYSTEMS, INC., *et al.*,

               Defendants.

No. 2:20-cv-00669-RSL

DEFENDANTS' JOINT MOTION TO
DISMISS PLAINTIFF'S AMENDED
COMPLAINT UNDER FED. R. CIV.
P. 12(b)(6)

NOTE ON MOTION CALENDAR:
OCTOBER 2, 2020

ORAL ARGUMENT REQUESTED

DEFENDANTS' JOINT MOTION TO
DISMISS AMENDED COMPLAINT
(No. 2:20-cv-00669-RSL)

149133537.2

# TABLE OF CONTENTS

                                                                                                  **Page**

I.     INTRODUCTION ................................................................................................. 1

II.    FACTUAL BACKGROUND .................................................................................. 4

       A.    Brown Takes Out Student Loans ................................................................ 4

       B.    Brown's Loans Were Not Discharged in His Bankruptcy.......................... 5

       C.    Brown Defaults on the Loans, and the Trusts Sue to Collect .................... 5

       D.    Brown Sues the Defendants Here .............................................................. 6

III.   STANDARD OF REVIEW ................................................................................... 7

IV.    LEGAL ARGUMENT........................................................................................... 8

       A.    Brown's Bankruptcy Plan Expressly Did Not Discharge the Loans, and
             Brown Cannot Collaterally Attack the Bankruptcy Judgment in This Court ........ 8

       B.    Brown's Claims Fail Because There Is No Private Right of Action for an
             Alleged Discharge Violation..................................................................... 11

       C.    Brown's Claims that the Loans Were Dischargeable Are Barred by
             Judicial Estoppel ....................................................................................... 12

       D.    Brown Has Not Plausibly Alleged (and Cannot Allege) that the Loans
             Were Dischargeable Under Section 523(a)(8) .......................................... 13

             1.    Brown has not and cannot allege that § 523(a)(8)(A)(i) does not
                   apply to his loans ........................................................................... 14

             2.    Brown fails to plausibly allege that the loans did not qualify for
                   non-dischargeability under § 523(a)(8)(A)(ii) & § 523(a)(8)(B).......... 20

       E.    Brown's Declaratory Judgment Claims Must be Dismissed for Failure to
             Allege an Actual Controversy Against Any Defendant............................. 20

V.     CONCLUSION.................................................................................................... 22

DEFENDANTS' JOINT MOTION TO
DISMISS AMENDED COMPLAINT
(No. 2:20-cv-00669-RSL) – i

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# TABLE OF AUTHORITIES

**Page**

CASES

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009)...................................................................................................7

*Bell Atl. Corp. v. Twombly,*
 550 U.S. 544 (2007)...................................................................................................7

*Benitec Austl., Ltd. v. Nucleonics, Inc.,*
 495 F.3d 1340 (Fed. Cir. 2007)...............................................................................21

*Celotex Corp. v. Edwards,*
 514 U.S. 300 (1995)...................................................................................................9

*Coffman v. Breeze Corp.,*
 323 U.S. 316 (1945).................................................................................................20

*Coto Settlement v. Eisenberg,*
 593 F.3d 1031 (9th Cir. 2010) .................................................................................15

*Dougherty v. City of Covina,*
 654 F.3d 892 (9th Cir. 2011) ...............................................................................7, 20

*Espinosa v. United Student Aid Funds, Inc.,*
 553 F.3d 1193 (9th Cir. 2008), *aff'd,* 559 U.S. 260 (2010) .......................................9

*Goree v. Wells Fargo Bank N.A.,*
 2013 U.S. Dist. LEXIS 199792 (C.D. Cal. Oct. 8, 2013)..........................................7

*Grassmueck v. Barnett,*
 281 F. Supp. 2d 1227 (W.D. Wash. 2003)..............................................................15

*Hamilton v. State Farm Fire & Cas. Co.,*
 270 F.3d 778 (9th Cir. 2001) ...................................................................................12

*In re Belforte,*
 No. 10-22742-JNF, 2012 WL 4620987 (Bankr. D. Mass. Oct. 1, 2012)................18

*In re Chaussee,*
 399 B.R. 225 (B.A.P. 9th Cir. 2008)........................................................................10

*In re Cleveland,*
 559 B.R. 265 (Bankr. N.D. Ga. 2016) .....................................................................16

DEFENDANTS' JOINT MOTION TO
DISMISS AMENDED COMPLAINT
(No. 2:20-cv-00669-RSL) – ii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Drumm*,
329 B.R. 23 (Bankr. W.D. Pa. 2005) .......................................................................15, 16, 19

*In re Duits*,
No. 14-05277-RLM-13, 2020 WL 256770 (Bankr. S.D. Ind. Jan. 15, 2020).........................16

*In re Fin. Oversight & Mgmt. Bd. for P. R.*,
919 F.3d 638 (1st Cir. 2019).....................................................................................21

*In re Gilbert*,
535 B.R. 317 (Bankr. C.D. Cal. 2015), *aff'd*, 671 F. App'x 697 (9th Cir. 2016)...................12

*In re Greer-Allen*,
602 B.R. 831 (Bankr. D. Mass. July 29, 2019)............................................... passim

*In re Kidd*,
458 B.R. 612 (Bankr. N.D. Ga. 2011) ......................................................................19

*In re Lykoudis*,
381 B.R. 349 (Bankr. M.D. Fla. 2007) ....................................................................15

*In re McClain*,
272 B.R. 42 (Bankr. D. N.H. 2002) ........................................................................16

*In re Murphy*,
282 F.3d 868 (5th Cir. 2002) ..................................................................................18

*In re Murray Indus., Inc.*,
122 B.R. 135 (Bankr. M.D. Fla. 1990) ....................................................................21

*In re Nies*,
334 B.R. 495 (Bankr. D. Mass. 2005) ....................................................................18

*In re Noland*,
Adv. No. A09-8048-TJM, 2010 WL 1416788 (Bankr. D. Neb. Mar. 30, 2010)...................19

*In re O'Brien*,
419 F.3d 104 (2d Cir. 2005)..............................................................................16, 17

*In re Old Carco LLC*,
530 B.R. 614 (Bankr. S.D.N.Y. 2015) ....................................................................21

DEFENDANTS' JOINT MOTION TO
DISMISS AMENDED COMPLAINT
(No. 2:20-cv-00669-RSL) – iii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Rizor*,
   553 B.R. 144 (Bankr. D. Alaska 2016) ................................................................18

*In re Rodriguez*,
   319 B.R. 894 (Bankr. M.D. Fla. 2005) ...............................................................15

*In re Taratuska*,
   No. 07-11938-RCL, 2008 WL 4826279 (D. Mass. Aug. 25, 2008) ................16, 17

*In re Wetzel*,
   213 B.R. 220 (Bankr. N.D. N.Y. 1996) ..............................................................13

*In re Williams*,
   No. 16-01114-CMA, 2017 WL 665050 (Bankr. W.D. Wash. Feb. 17, 2017) .......16

*Katz v. Main St. Acquisition Corp.*,
   No. 11-CV-1838 JLS (NLS), 2012 WL 1439132 (S.D. Cal. Apr. 26, 2012) .........13

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ..............................................................................8

*Marder v. Lopez*,
   450 F.3d 445 (9th Cir. 2006) ................................................................................8

*Motley v. Equity Title Co. (In re Motley)*,
   268 B.R. 237 (C.D. Cal. Bankr. 2001)..................................................................9

*Portland Police Ass'n v. City of Portland, By & Through Bureau of Police*,
   658 F.2d 1272 (9th Cir. 1981) .............................................................................21

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ............................................................................7, 8

*Stratosphere Litig. L.L.C. v. Grand Casinos, Inc.*,
   298 F.3d 1137 (9th Cir. 2002) ..............................................................................9

*Union Pac. R.R. Co. v. Sacks*,
   309 F. Supp. 3d 908 (W.D. Wash. 2018)............................................................21

*United States v. Braren*,
   338 F.3d 971 (9th Cir. 2003) ..............................................................................20

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

**TABLE OF AUTHORITIES**
(continued)

Page

*Walls v. Wells Fargo Bank, N.A.*,
    276 F.3d 502 (9th Cir. 2002) ..........................................................................11, 12

*Whitty v. First Nationwide Mortg. Corp.*,
    No. 05-cv-1021 H(BLM), 2007 WL 628033 (S.D. Cal. Feb. 26, 2007) ...............................10

STATUTES

11 U.S.C. § 523(a)(8)............................................................................... passim

11 U.S.C. § 523(a)(8)(A) .............................................................................3

11 U.S.C. § 523(a)(8)(A)(i) ....................................................................... passim

11 U.S.C. § 524.....................................................................................1, 11, 12

11 U.S.C. § 524(a)(2).................................................................................7, 11

11 U.S.C. § 1307(c) ....................................................................................12

28 U.S.C. § 2201......................................................................................20

RULES

Fed. R. Civ. P. 9(b) .....................................................................................7

Fed. R. Civ. P. 12(b)(6)...........................................................................1, 7, 8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, all Defendants jointly move to dismiss Plaintiff Brown's Amended Complaint (Dkt. # 56), based on issues common to all Defendants. In accordance with the parties' stipulation and this Court's order, (Dkt. # 58), each Defendant will also submit separate motions to dismiss on issues unique to them.

## I.      INTRODUCTION

Plaintiff Osure Brown filed an Amended Complaint in this action asserting claims against Defendants stemming from collection attempts on student loans owned by the National Collegiate Student Loan Trust defendants. Despite receiving Defendants' motions to dismiss the original complaint and having an opportunity to remedy its apparent deficiencies, Brown's Amended Complaint fails to do so. The conclusion is simple: Brown is unable to set forth viable claims against Defendants concerning collections on his student loans. His Amended Complaint should be dismissed with prejudice because any further amendments would be futile.

Specifically, Brown still does not dispute that he filed for bankruptcy and agreed to a Chapter 13 plan that expressly stated the loans were not dischargeable. Having received the benefit of his plan, Brown now—seven years after his bankruptcy discharge—takes the opposite position: that his student loans owned by the Trusts *were* discharged. To accomplish here what he could not in bankruptcy court, Brown—represented by the same counsel as in his bankruptcy case—now contends that his admission should no longer apply based on a vague and irrelevant theory of fraud concerning the non-dischargeability of the loans. He claims that because his loans were purportedly discharged, the continued collection attempts violated the Fair Debt Collection Practices Act ("FDCPA") (Dkt. # 56, Count I, ¶¶ 135–40) and the bankruptcy discharge pursuant to 11 U.S.C. § 524 (*id.*, Count III, ¶¶ 145–48). He also seeks a declaratory judgment that his loans were discharged. (*Id.*, Count II, ¶ 144; Count IV, ¶¶ 149–55).

DEFENDANTS' JOINT MOTION TO
DISMISS AMENDED COMPLAINT
(No. 2:20-cv-00669-RSL) – 1
149133537.2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1
2
3
4

As an initial matter, Brown's Amended Complaint remains self-contradictory. He alleges his loans *were* discharged by the bankruptcy court; yet he simultaneously suggests that the loans *would have been* discharged absent some type of purported fraud in the bankruptcy proceedings.

5
6
7
8
9
10
11
12
13
14

Ultimately, despite filing an Amended Complaint, these claims and assertions amount to an improper collateral attack on the bankruptcy court's final judgment and must be dismissed under either scenario. Even if Brown had sufficiently alleged that Defendants somehow deceived Brown or the bankruptcy court regarding the loans' dischargeability, this Court is the wrong venue because such arguments can only be addressed in bankruptcy court. And even if the loans were discharged (they were not), Brown's claims are still barred because binding precedent holds that claims based on purported violations of a bankruptcy discharge must be brought as contempt proceedings in the bankruptcy court, not through statutory claims in a separate proceeding. They are also barred by judicial estoppel.

15
16
17
18
19
20
21
22
23
24
25
26

Further, Brown still has not and cannot plausibly allege that the student loans qualified for dischargeability under 11 U.S.C. § 523(a)(8). The crux of his claim is that his loans were not eligible for a discharge as educational loans "made under any program funded in whole or in part by a governmental unit or nonprofit institution," 11 U.S.C. § 523(a)(8)(A)(i). He asserts that his loans did not meet the requirements of the relevant guaranty because they were in excess of his educational expenses, despite his representations in the credit agreements that the loans would be used only for such expenses. But the Bankruptcy Code states that loans "made under [a loan] *program*" funded by a non-profit institution are non-dischargeable. 11 U.S.C. § 523(a)(8)(A)(i) (emphasis added). The Code does not look to whether amounts on the individual *loan* were funded by a non-profit; rather, it looks to whether the *program* under which the loan was made was funded, at least in part, by a non-profit. Brown does not challenge that the loans were made under such a

DEFENDANTS' JOINT MOTION TO
DISMISS AMENDED COMPLAINT
(No. 2:20-cv-00669-RSL) – 2
149133537.2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

program. Indeed, he expressly acknowledged that fact when he signed the credit agreements. And, in any event, a student loan cannot be rendered dischargeable in bankruptcy merely because the student unilaterally decides to use the loan proceeds contrary to the stated educational purpose.

Similarly, Brown's allegations relating to § 523(a)(8)(A)(i)—that the non-profit institution, through a subsequent bankruptcy, "rejected" the guaranty and that the institution was not a "bona fide" non-profit—fare no better because they are factually unsupported and legally irrelevant. And his bare legal assertions that the loans qualified for dischargeability under the two other parts of 11 U.S.C. § 523(a)(8)(A) are insufficient under Rule 8 (let alone the heighted pleading standards applicable to this case) and are nonetheless immaterial because the loans were non-dischargeable under 11 U.S.C. § 523(a)(8)(A)(i). Thus, even if this were the proper venue to argue about dischargeability, Brown's claims must still be dismissed as a matter of law.

Finally, Brown asserts a claim for a declaratory judgment and injunction concerning future collection attempts on his loans. (Dkt. # 56, Count II, ¶¶ 142–44.) Yet, the Amended Complaint does not contain a single factual allegation concerning continued collection attempts after the Trusts' state court collection suits were dismissed. Nor can Brown make such allegations because there will not be any further collection attempts. There is no actual controversy between the parties on this issue, and the claim must be dismissed.

DEFENDANTS' JOINT MOTION TO
DISMISS AMENDED COMPLAINT
(No. 2:20-cv-00669-RSL) – 3
149133537.2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

## II.     FACTUAL BACKGROUND

**A.     Brown Takes Out Student Loans.**

Between 2003 and 2007, Brown took out at least ten private educational loans (the "Loans"). (Dkt. # 56 at ¶¶ 6, 70–83). In signing the credit agreements[1] for the Loans, Brown agreed that "[t]his loan will be used only for the Student's tuition and other educational expenses at [his] School." (*See, e.g.*, Ex. A at § L.1; Ex. B at § L.2).[2] He also represented that "I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated." (Ex. B at § N).

All of the Loans were made under a program whereby Bank of America originated the loans and The Education Resources Institute ("TERI"), a non-profit institution, guaranteed payments on the loans in case of the debtor's default. The credit agreements for the Loans explicitly acknowledge this fact. (*See* Ex. B at § L.12 ("I understand that you have purchased a guaranty of this loan, and that this loan is guaranteed by [TERI], a non-profit institution."); Ex. A at §§ D, I, L.3). By signing the credit agreements, Brown certified that: "I understand that the loan is made under a program which is funded in part by a non-profit organization and as such is generally not dischargeable in bankruptcy." (Ex. A at § I; *see also* Ex. B at § L.12 ("I acknowledge that the requested loan may be subject to the limitations on dischargeability in bankruptcy contained in Section 523(a)(8) of the United States Bankruptcy Code)). Specifically, I understand that you have purchased a guaranty of this loan, and that this loan is guaranteed by [TERI], a non-

---

[1] Some of the agreements signed by Brown are labeled "promissory notes" and some are labeled "credit agreements," but the substance of the agreements remain the same for all at-issue loans. For ease of reference, Defendants will use the term "credit agreements."

[2] References to "Ex." herein refer to the exhibits attached to the Declaration of Kristine E. Kruger, submitted herewith. The Court may consider these exhibits at the pleadings stage. *See infra* § III.

DEFENDANTS' JOINT MOTION TO
DISMISS AMENDED COMPLAINT
(No. 2:20-cv-00669-RSL) – 4
149133537.2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

profit institution."). After origination, the Loans were ultimately sold to several National Collegiate Student Loan Trusts (the "Trusts" or the "Trust defendants"). (*See* Dkt. # 56 at ¶ 64).

**B.      Brown's Loans Were Not Discharged in His Bankruptcy.**

In November 2012, Brown—through his current counsel—filed a voluntary Chapter 13 bankruptcy petition in the U.S. Bankruptcy Court for the Western District of Washington. (Dkt. # 56 at ¶ 48; *see also* Case No. 12-21878-TWD (Bankr. W.D. Wash.) ("Brown Bk."), (Dkt. # 1). In his bankruptcy petition, Brown represented that he had borrowed, and still owed, over $200,000.00 in student loans, explicitly mentioning "National Collegiate Trust" as one of his creditors. (Brown Bk., Dkt. # 1 at Schedule F & Schedule H). Brown eventually signed and filed an amended "Chapter 13 Plan," which explicitly stated that "[a]fter month 36, all available plan payments after [secured debt] is paid in full, shall be distributed to the *non-dischargeable student loan creditors* only, … American Educational Services, *National Collegiate Trust*, … and any other unknown student loan lenders." (Dkt. # 56 at ¶ 50; *see also* Brown Bk., Dkt. # 12 at § XII.2 (emphasis added)). The bankruptcy court confirmed this plan in February 2013. (Brown Bk., Dkt. # 13). The Trusts then filed ten timely proofs of claim on Brown's student loans. (*Id.*, Dkt. # 16). Brown never objected to these proofs of claim, and the bankruptcy court ultimately entered a discharge order and injunction. In its discharge order, the bankruptcy court explained that "[s]ome debts are not discharged" including "debts for most student loans." (*Id.*, Dkt. # 24 at 1).

**C.      Brown Defaults on the Loans, and the Trusts Sue to Collect.**

After his bankruptcy, Brown defaulted on the Loan payments to the Trusts. Because the Loans were not discharged, Patenaude & Felix (the Trusts' collection attorneys), on behalf of the Trusts, began collection efforts and, when those proved unsuccessful, filed suit against Brown in Washington state court in April 2019. (Dkt. # 56 at ¶ 59). Brown eventually moved for summary

DEFENDANTS' JOINT MOTION TO
DISMISS AMENDED COMPLAINT
(No. 2:20-cv-00669-RSL) – 5
149133537.2

judgment against the Trusts, arguing that an affidavit submitted by the Trusts to prove ownership of the loans was hearsay because the affiant allegedly "was not employed by the entity that had custody and possession of the purported records and did not have knowledge of the retention policies of" Bank of America. (Dkt. # 56 at ¶¶ 91–94). The court struck that particular affidavit and dismissed the case but made no ruling regarding whether the Trusts actually owned Brown's loans. (*Id.*)

**D.    Brown Sues the Defendants Here.**

Brown now brings amended claims against the Trusts, Patenaude, Transworld Systems Inc. (the Special Subservicer for the Trusts), and U.S. Bank (the Successor Special Servicer for the Trusts) (collectively, the "Defendants"). Defendants previously moved to dismiss the claims in Brown's original complaint. (Dkt. # 42, 45, 47, 49, 52). Rather than oppose the motions to dismiss, Brown filed his Amended Complaint, which dropped his claims under the Consumer Protection Act (*see* Dkt. # 56-10) and added an additional declaratory judgment claim. (Dkt. # 56 at ¶¶ 141–144). The Amended Complaint fails to rectify the deficiencies in the original complaint and should be dismissed.

The Amended Complaint continues to allege the Loans did not qualify for bankruptcy discharge under 11 U.S.C. § 523(a)(8) because they did not meet underwriting criteria in the TERI Guaranty Agreement requiring that the loan be used for educational expenses (Dkt. # 56 at ¶¶ 74–79), despite the fact that he expressly represented that they *would* be used solely for such expenses. He also sets forth irrelevant allegations and otherwise baldly asserts that the Loans were dischargeable because the guarantor, TERI, was not a "bona fide" non-profit institution and because TERI's bankruptcy in 2008 voided the guaranty. (*Id.* ¶¶ 41–44, 72). Brown alleges that

DEFENDANTS' JOINT MOTION TO
DISMISS AMENDED COMPLAINT
(No. 2:20-cv-00669-RSL) – 6
149133537.2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

collecting on the purportedly discharged Loans violates the FDCPA and the bankruptcy discharge under 11 U.S.C. § 524(a)(2) and seeks declaratory and injunctive relief.

### III.    STANDARD OF REVIEW

To survive a motion under Rule 12(b)(6), a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and have "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A complaint will not suffice if it "tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Mere legal conclusions 'are not entitled to the assumption of truth,'" and the complaint must contain more than "a formulaic recitation of the elements of a cause of action." *Dougherty v. City of Covina*, 654 F.3d 892, 897 (9th Cir. 2011). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Critically, to allege FDCPA claims sounding in fraud, like the ones asserted here (Dkt. # 56 at ¶¶ 49(f), 50, 53, 103, 120(b), 138), plaintiffs must satisfy the heightened pleadings standard under Fed. R. Civ. P. 9(b). *See Goree v. Wells Fargo Bank N.A.*, 2013 U.S. Dist. LEXIS 199792, at *26 (C.D. Cal. Oct. 8, 2013) ("[C]ourts in the Ninth Circuit have generally required that allegations of fraudulent representations or omission that violate the FDCPA satisfy Rule 9(b)'s heightened pleading standard."). He fails to do so, and his claims should also be dismissed on that basis.

Further, on a motion to dismiss, the court may consider a document not attached to the complaint where the plaintiff's "claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of

DEFENDANTS' JOINT MOTION TO
DISMISS AMENDED COMPLAINT
(No. 2:20-cv-00669-RSL) – 7
149133537.2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). And the court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell*, 266 F.3d at 988; *Marder v. Lopez*, 450 F.3d 445, 453 (9th Cir. 2006) (affirming grant of a motion to dismiss where the plaintiff's "proposed interpretation of [a] Release [agreement] is inconsistent with its terms," even where the agreement was not attached to the complaint).

Here, the Court may consider the documents submitted with the Declaration of Kristine E. Kruger, as Brown's claims "depend[]" on these documents. *Knievel*, 393 F.3d at 1076. Brown explicitly refers to the "'Loan Request/Credit Agreement' or 'Loan Application/Promissory Note' for each of the ten BOA loans, signed by Osure Brown as borrower and Tommy Brown as cosigner," (*e.g.*, Dkt. # 56 at ¶ 49(d)), and to the "Guaranty Agreement between TERI and BOA dated June 30, 2003," (*e.g.*, Dkt. # 56 at ¶ 44). The Court may "treat [these] document[s] as 'part of the complaint, and thus may assume that [their] contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" *Marder*, 450 F.3d at 448.

## IV.   LEGAL ARGUMENT

### A.   Brown's Bankruptcy Plan Expressly Did Not Discharge the Loans, and Brown Cannot Collaterally Attack the Bankruptcy Judgment in This Court.

Brown admits that the bankruptcy plan expressly *did not* discharge the Loans. (*See* Dkt. # 56 at ¶ 50 (alleging that his "Chapter 13 bankruptcy plan stated that [certain available payments], 'shall be distributed to *the non-dischargeable student loan creditors* only, … *National Collegiate Trust*[.]'" (emphases added)). The publicly filed plan confirms this. (Brown Bk., Dkt. # 12 at § XII.2). *Sprewell*, 266 F.3d at 988 (courts need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit."). Because the bankruptcy court expressly

DEFENDANTS' JOINT MOTION TO DISMISS AMENDED COMPLAINT (No. 2:20-cv-00669-RSL) – 8

149133537.2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

did not discharge these debts, it follows that Brown cannot bring claims based on a purported violation of the discharge injunction or the bankruptcy plan.

To the extent Brown is arguing the Loans *should have been* discharged by the bankruptcy court, that argument amounts to an improper collateral attack on the bankruptcy court's final judgment. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995) (holding that "[i]f respondents believed the Section 105 Injunction was improper, they should have challenged it in the Bankruptcy Court" and "[i]f dissatisfied with the Bankruptcy Court's ultimate decision, respondents can appeal"—they could not, however, "collaterally attack the Bankruptcy Court's Section 105 Injunction in the federal courts"); *Stratosphere Litig. L.L.C. v. Grand Casinos, Inc.*, 298 F.3d 1137, 1143 (9th Cir. 2002) ("SL is barred from collaterally challenging the bankruptcy court's confirmation of Stratosphere's second reorganization plan."); *Motley v. Equity Title Co. (In re Motley)*, 268 B.R. 237, 241 (C.D. Cal. Bankr. 2001) ("Like the automatic stay, the discharge injunction issues from the authority of the bankruptcy court. Bankruptcy court orders are not subject to collateral attack in other courts.").

Indeed, Brown has neither appealed the bankruptcy court judgment nor petitioned the bankruptcy court to re-open his case to amend the plan or discharge order. *See Espinosa v. United Student Aid Funds, Inc.*, 553 F.3d 1193, 1199, 1205 n.7 (9th Cir. 2008) (explaining that "[a]fter a [bankruptcy] judgment (including a discharge) is finalized, and the time for appeal has run, the judgment can only be reconsidered in the limited circumstances provided by Rule 60(b)" and that such a petition under Rule 60(b) must be made to "the bankruptcy court to reopen and set aside the judgment"), *aff'd*, 559 U.S. 260 (2010). Brown's claims are an improper attempt to alter the bankruptcy court's final judgment, are brought in the wrong court, and therefore must be dismissed.

DEFENDANTS' JOINT MOTION TO
DISMISS AMENDED COMPLAINT
(No. 2:20-cv-00669-RSL) – 9

149133537.2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

The outcome remains the same even if Brown had plausibly alleged that Defendants somehow deceived Brown and the bankruptcy court regarding the loans' non-dischargeability.[3] The Ninth Circuit has made clear that the Bankruptcy Code precludes any FDCPA claim based on "alleged misconduct that occurs in connection with a bankruptcy case." *In re Chaussee*, 399 B.R. 225, 232 (B.A.P. 9th Cir. 2008). For example, in *Chaussee*, the plaintiff alleged that the defendant violated the FDCPA by filing a proof of claim in the bankruptcy court based on a debt that she did not owe or that was time-barred. *Id.* at 229. The court dismissed the claim as precluded by the Bankruptcy Code, explaining that "the Code represents a 'whole system' designed to comprehensively define all rights and remedies of debtors and creditors" and so "debtors may not resort to other state and federal remedies to redress their claims lest the congressional scheme behind the bankruptcy laws and their enforcement be frustrated." *Id.* at 236–37. Indeed, "if a purported creditor abuses the claims process," the Bankruptcy "Code and Rules are up to the task of compensating a debtor for any damages or costs occasioned by" that abuse. *Id.* at 241. Accordingly, the court dismissed the FDCPA claims as precluded by the Bankruptcy Code. *Id.*; *see also Whitty v. First Nationwide Mortg. Corp.*, No. 05-cv-1021 H(BLM), 2007 WL 628033, at *10 (S.D. Cal. Feb. 26, 2007) (dismissing a claim based on allegations that the defendants "committed a fraud on … the bankruptcy court" because "Plaintiffs' have not brought a 60(b) motion to the bankruptcy court that adjudicated this matter" and the district court was "the wrong

---

[3] Brown has not plausibly alleged such deception because the loans were, in fact, non-dischargeable. *See infra* § IV.E. Moreover, Brown bases this claim on the fact that Defendants did not publicly disclose the underwriting terms of the Guaranty Agreement, but he does not explain why Defendants would have any reason or duty to do so. And his claim that *Defendants* were deceptive is puzzling, to say the least—the only reason Brown is even invoking these underwriting terms is because *his* contractual representations that the loans would be used only for educational expenses apparently turned out to be false.

DEFENDANTS' JOINT MOTION TO
DISMISS AMENDED COMPLAINT
(No. 2:20-cv-00669-RSL) – 10
149133537.2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1
2
court for such a motion to be made"). No matter how Brown attempts to frame his theory of

liability, then, his claims must be dismissed.

3
4
**B.      Brown's Claims Fail Because There Is No Private Right of Action for an Alleged**
**Discharge Violation.**

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
Even if Brown's bankruptcy plan discharged the Loans (it expressly did not), Brown's

claims would still fail as a matter of law. As an initial matter, Brown brings a claim for "violation

of the discharge injunction under 11 U.S.C. § 524(a)(2)" (Count IV). But "there is no private right

of action under § 524," and the only remedy for an alleged violation of a discharge injunction is a

"contempt proceeding in the bankruptcy court." *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502,

507–09 (9th Cir. 2002). And the same goes for Brown's FDCPA claim, which is also grounded in

Defendants' alleged attempts to collect the Loans in violation of the bankruptcy discharge. (Dkt.

# 56 at ¶ 138). Those claims mirror the FDCPA claim at issue in *Walls*—the plaintiff there alleged

that "Wells Fargo engaged in unfair and unconscionable collection practices, which are forbidden

by the FDCPA, by trying to collect her debt in violation of the discharge injunction." *Id.* at 510.

In affirming dismissal of the claim, the court noted that the plaintiff's FDCPA claim involved

"bankruptcy-laden determinations" and was, at bottom, "based on an alleged violation of § 524."

*Id.* at 510. But, again, "[t]he Bankruptcy Code provides its own remedy for violating § 524, civil

contempt under § 105." *Id.* Thus, "[t]o permit a simultaneous claim under the FDCPA would allow

through the back door what [the plaintiff] cannot accomplish through the front door—a private

right of action." *Id.* Because "the debtor's protection and remedy remain under the Bankruptcy

Code," the FDCPA claim failed as a matter of law. *Id.*

24
25
26

DEFENDANTS' JOINT MOTION TO
DISMISS AMENDED COMPLAINT
(No. 2:20-cv-00669-RSL) – 11
149133537.2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

All of Brown's claims here—the FDCPA claim, the § 524 claim, the declaratory judgment claims—are likewise based on an alleged violation of the bankruptcy discharge, and so they meet the same fate as the claims in *Walls*.

## C.   Brown's Claims that the Loans Were Dischargeable Are Barred by Judicial Estoppel.

Separately, Brown's claims are barred by judicial estoppel. "Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). Courts "invoke[] judicial estoppel not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings, and to protect against a litigant playing fast and loose with the courts." *Id.* (internal quotation marks omitted). Application of the doctrine is "appropriate to bar litigants from making incompatible statements in two different cases." *Id.* at 783.

In bankruptcy court, Brown, through current counsel, represented that the Trusts owned the loans and that they were non-dischargeable. *See supra* § II.B. Based on these representations, Brown received a discharge. *Id.* Had Brown asserted that his loans were dischargeable, the Trusts could have brought an adversary proceeding to adjudicate dischargeability, seek payments under Brown's plan, or request that the court convert the bankruptcy to Chapter 7 and liquidate Brown's assets. *See* 11 U.S.C. § 1307(c) (permitting conversion "on request of a party in interest"). The bankruptcy would have had the opportunity to resolve these issues at that time. Indeed, Brown's Chapter 13 plan would have been infeasible if the bankruptcy court determined that his loans were non-dischargeable and had to be paid in full as part of the plan. *See In re Gilbert,* 535 B.R. 317,

DEFENDANTS' JOINT MOTION TO
DISMISS AMENDED COMPLAINT
(No. 2:20-cv-00669-RSL) – 12
149133537.2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

321 (Bankr. C.D. Cal. 2015), *aff'd*, 671 F. App'x 697 (9th Cir. 2016) ("good cause" to convert or dismiss a Chapter 13 case exists if a plan is proposed or a case is filed in bad faith, or if the proposed plan is "infeasible"). However, having received the benefit of his Chapter 13 plan, Brown cannot now make representations contrary to the ones he made in bankruptcy court. He is judicially estopped from doing so.

**D.      Brown Has Not Plausibly Alleged (and Cannot Allege) that the Loans Were Dischargeable Under Section 523(a)(8).**

Even if this Court were the proper forum to argue about dischargeability (it is not), Brown's claims would still fail because Brown cannot plausibly allege that the loans were dischargeable under 11 U.S.C. § 523(a)(8). That section provides that loans are *not* dischargeable in most circumstances. *See* 11 U.S.C. § 523(a)(8).[4] The "effect of Code § 523(a)(8) is to make student loan debts presumptively nondischargeable." *In re Wetzel*, 213 B.R. 220, 224 (Bankr. N.D. N.Y. 1996). Additionally, "Section 523(a)(8) is written disjunctively, meaning that a loan must fall within just one of the [non-dischargeability] categories in order to be non-dischargeable." *In re Greer-Allen*, 602 B.R. 831, 836 (Bankr. D. Mass. July 29, 2019).

Because Brown's FDCPA claims are premised on the contention that the loans were dischargeable, he has the burden of pleading (and proving) dischargeability in this case. *See Katz v. Main St. Acquisition Corp.*, No. 11-CV-1838 JLS (NLS), 2012 WL 1439132, at *3 & n.5 (S.D. Cal. Apr. 26, 2012) (explaining that "Plaintiff has the burden to prove her asserted FDCPA violations" and noting that "[m]erely asserting that she has not received proof of Defendants' valid

---

[4] Loans are non-dischargeable if: (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual.

DEFENDANTS' JOINT MOTION TO
DISMISS AMENDED COMPLAINT
(No. 2:20-cv-00669-RSL) – 13
149133537.2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

ownership of the debt does not establish Defendants ever falsely represented the debt or that their collections efforts have been unauthorized"). He fails to meet this burden.

### 1. Brown has not and cannot allege that § 523(a)(8)(A)(i) does not apply to his loans.

Under 11 U.S.C. § 523(a)(8)(A)(i), "an educational … loan … made under any program funded in whole or in part by a governmental unit or nonprofit institution" is non-dischargeable. Brown advances three arguments purportedly aimed at alleging the loans do not qualify under this section: (1) TERI was not a "bona-fide" or "legitimate" non-profit institution; (2) under the Guaranty Agreement, TERI would only guaranty loans up to the "cost of education less other financial aid," and the loaned amounts were above and beyond the published cost of attendance at Brown's institutions; and (3) TERI declared bankruptcy in 2008 and "rejected" the Guaranty Agreement. (Dkt. # 56 at ¶¶ 40–47, 76–88). None of these allegations are sufficient to plausibly allege that the Loans were not "made under any program funded in whole or in part by a governmental unit or nonprofit institution." 11 U.S.C. § 523(a)(8)(A)(i). And the loans were, in fact, made pursuant to such a program.

***Nonprofit Institution.*** Brown claims TERI was not a "legitimate" nonprofit institution (Dkt. 56 at ¶¶ 43–45), but conspicuously fails to allege—*because he cannot*—that TERI's non-profit status was ever revoked. Plaintiff does not dispute that TERI was a "non-profit corporation organized under Chapter 180 of the Massachusetts General Laws." (*E.g.*, Dkt. # 56-3 at p. 2.) Indeed, TERI's Articles of Organization and the amendments thereto, of which the Court can take judicial notice, confirm that TERI shall "always be operated exclusively for charitable and educational purposes," that "the Corporation shall not participate in activities not permitted to be carried on [] by a corporation exempt from federal income tax under Section 501(c)(3)" and TERI

DEFENDANTS' JOINT MOTION TO
DISMISS AMENDED COMPLAINT
(No. 2:20-cv-00669-RSL) – 14
149133537.2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

"is organized and at all times shall be operated … within the meaning of Section 501(c)(3) of the Internal Revenue Code of 1986."[5] *See* Ex. E at pp. 3, 6; *see also* Ex. G at p. 4. Accordingly, TERI was a nonprofit at the time it guaranteed loans under the relevant loan program.

Brown's remaining allegations are irrelevant. He alleges that TERI sold assets to First Marblehead Corporation ("FMC"), entered into a Master Servicing Agreement with First Marblehead Education Resources, Inc. ("FMER"), and paid millions in fees to FMER. (Dkt. # 56 at ¶ 43). Even if true, these allegations are immaterial—courts have held that interpreting section 523(a)(8) requires the Court to consider whether TERI is a "nonprofit" within the "common meaning" of the term. *See In re Rodriguez,* 319 B.R. 894, 897 (Bankr. M.D. Fla. 2005). The *Rodriguez* court further held that Congress did not contemplate "an in-depth 'totality of the circumstances' test [that] would … depart from the plain meaning" of the statute and "look behind the tax-exempt status of the lender, which is facially classified as nonprofit." *Id.* at 898 (holding that "TERI fits the plain meaning of the term 'nonprofit institution' precisely.") Brown's allegations concerning TERI go to the precisely the type of analysis that *Rodriguez*, and other courts[6], rejected and require the Court to "look behind" TERI's classification as a nonprofit. Accordingly, Brown has not, and cannot, plead that TERI was not a nonprofit under section 523(a)(8).

Next, to determine if a nonprofit institution funded the subject student loan program, bankruptcy courts consider the debtor's loan agreements, applicable guarantee agreement, and

---

[5] District courts may consider matters of public record on a motion to dismiss. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). Entity formation documents such as Articles of Incorporation "fall directly into the category of items that the Ninth Circuit generally considers proper for judicial notice" and the "Court may consider the Articles as part of a 12(b)(6) motion without converting the motion into summary judgment." *Grassmueck v. Barnett*, 281 F. Supp. 2d 1227, 1232 (W.D. Wash. 2003).

[6] *In re Lykoudis*, 381 B.R. 349, 352 (Bankr. M.D. Fla. 2007) (citing *Rodriguez* for the same proposition as to a different non-profit entity); *In re Drumm*, 329 B.R. 23, 33 (Bankr. W.D. Pa. 2005) (same).

---

DEFENDANTS' JOINT MOTION TO
DISMISS AMENDED COMPLAINT
(No. 2:20-cv-00669-RSL) – 15
149133537.2

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

other relevant documents, such as NCSLT Trust Agreements. *See, e.g., In re Greer-Allen*, 602 B.R. at 838; *In re Duits*, No. 14-05277-RLM-13, 2020 WL 256770, at *2 (Bankr. S.D. Ind. Jan. 15, 2020). Here, these documents all confirm that TERI was a nonprofit organization both when the loan program started and at the time Brown's student loans were made. (*See* Ex. A at § I; Ex. B at § L.12 (Brown's credit agreements stating his loans were "guaranteed by [TERI], a non-profit institution" or were "made under a program which is funded in part by a non-profit organization"); Dkt. # 56-3 at p. 2 (relevant Guaranty Agreement defining TERI as a "non-profit corporation organized under Chapter 180 of the Massachusetts General Laws").

Indeed, courts across the country have held that loans made under programs guaranteed by TERI qualify under the nonprofit discharge exemption and that TERI was a nonprofit—even after the time Brown alleges TERI was no longer "legitimate." *See In re Williams*, No. 16-01114-CMA, 2017 WL 665050 (Bankr. W.D. Wash. Feb. 17, 2017); *In re Greer-Allen*, 602 B.R. at 838; *In re Duits*, 2020 WL 256770 at *2 (debtor's NCSLT loans were non-dischargeable absent undue hardship because they "were guaranteed by TERI, a nonprofit institution. Even if the debtor had shown that TERI did not fund the loans or even pay the initial lender on the guaranty is of no significance because TERI's guaranty helps fund a program …") (internal quotation omitted).[7] Accordingly, Brown has not alleged (and cannot allege) that TERI is not a "nonprofit institution."

---

[7] *See also In re O'Brien*, 419 F.3d 104, 106-07 (2d Cir. 2005); *In re Drumm*, 329 B.R. 23, 35 (Bankr. W.D. Pa. 2005); *In re McClain*, 272 B.R. 42, 46 (Bankr. D. N.H. 2002); *In re Cleveland*, 559 B.R. 265, 271 (Bankr. N.D. Ga. 2016) ("The NCSLT loans were made under a program funded in whole or in part by a non-profit institution, in this case, The Education Research Institute, Inc. Consequently, all of the loans of … NCSLT qualify to be non-dischargeable under Section 523(a)(8)(A)(i)"); *In re Taratuska*, No. 07-11938-RCL, 2008 WL 4826279, at *6 (D. Mass. Aug. 25, 2008); *In re Tresedder*, No. 12-ap-99011 (Bankr. W.D. Mich. Oct. 28, 2013) (rejecting debtor's argument NCSLT loans were discharged because TERI failed to honor guarantees after 2008 bankruptcy; guarantor's role in funding loan program, not guaranteeing individual loans, controls dischargeability, and therefore NCSLT loans guaranteed by TERI are exempt from discharge under § 523(a)(8)(A)(i)).

DEFENDANTS' JOINT MOTION TO
DISMISS AMENDED COMPLAINT
(No. 2:20-cv-00669-RSL) – 16
149133537.2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

***Educational loan made under a program***. Nor can Brown plausibly allege that his loans were not educational loans made under a TERI-guaranteed program. 11 U.S.C. § 523(a)(8)(A)(i). Brown does not deny that his loans were "made under" a program funded by TERI—he attached the Guaranty Agreement to his Amended Complaint. (Dkt. # 56 at ¶ 44; # 56-3). Instead, he alleges that, under the Guaranty Agreement, "TERI would only guaranty loans subject to credit underwriting criteria that allowed for loans up to the 'cost of education less other financial aid'" and that "if the student wishe[d] to borrow amounts in excess of a Participating School's published cost of attendance, a letter [was] required from the School stating that these additional funds are needed as an educational expense." (Dkt. # 56 at ¶¶ 45, 76). Brown contends that the amounts he borrowed exceeded the cost of attendance for his schools, so those amounts were not actually guaranteed by TERI. (*Id.* ¶¶ 80–84).

Brown misses the point—what matters is that the loans were "made under any program" funded by TERI. In other words, it is the funding for the *program*, and not the individual loan, that matters. *See In re Greer-Allen*, 602 B.R. at 836 ("it is the program, not the individual loan, that must have been funded by a governmental unit or nonprofit institution.").[8] Indeed, the credit agreements he signed explicitly acknowledge that the loans were issued pursuant to such a program. (*See* Ex. A at § I; Ex. B at § L.12); *see In re O'Brien*, 419 F.3d at 106 ("We also note that the Promissory Note for [the consumer's] loan itself stated that it 'evidences an educational loan made pursuant to a loan program funded in part by a nonprofit institution and is therefore

---

[8] *See also In re O'Brien*, 419 F.3d at 106 ("Section 523(a)(8) does not require that TERI fund O'Brien's loan in order for that section to be applicable. Rather, § 523(a)(8) requires only that O'Brien's loan was 'made under any program funded in whole or in part by' TERI."); *In re Taratuska*, 2008 WL 4826279, at *3 ("[F]rom the plain meaning of the statute, it is clear that it is a program that must be funded by a nonprofit institution under this section, rather than a particular loan itself."). And Brown nowhere contests that "TERI played a part in funding the Program" under which his loans were issued "by guaranteeing loans issued under the Program." *In re Greer-Allen*, 602 B.R. at 839.

DEFENDANTS' JOINT MOTION TO
DISMISS AMENDED COMPLAINT
(No. 2:20-cv-00669-RSL) – 17
149133537.2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

subject to the limitations on dischargeability contained in Section 523(a)(8) of the United States Bankruptcy Code.'").

Nor does Brown contest that these loans were "educational." Courts focus on the "substance of the transaction to determine whether the loan was educational." *In re Belforte*, No. 10-22742-JNF, 2012 WL 4620987, at *7 (Bankr. D. Mass. Oct. 1, 2012); *see also In re Nies*, 334 B.R. 495, 501 (Bankr. D. Mass. 2005) ("A majority of courts has adopted a test that determines the educational nature of the loan by focusing on the substance of the transaction which resulted in the obligation."). The loan need not be used only for tuition. *See In re Murphy*, 282 F.3d 868, 871 (5th Cir. 2002) ("Section 523(a)(8) does not expressly state that only loans 'used for tuition' are nondischargeable. Nor does it define educational loans as excluding living or social expenses."). And a loan does not become dischargeable simply because the student ends up using the funds for non-educational purposes. *See id.* at 873; *see also In re Rizor*, 553 B.R. 144, 149 (Bankr. D. Alaska 2016) ("[W]hether a loan is for an educational benefit depends not how the funds were actually 'used,' but on the 'stated purpose for the loan when it was obtained.'") (internal citation omitted).

Here, Brown does not dispute that these were "educational loans." Indeed, the Loans' stated purpose was educational. In the credit agreements, Brown represented that the loans "will be used only for the Student's tuition and other educational expenses at [his] School" and that he was "responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated." (Ex. A at § L.1; Ex. B at §§ L.2, N; *see also* Dkt. # 56 at ¶ 75 (admitting that the loans "were all purportedly related to Osure Brown's studies … between 2003 and 2007")). Brown's admission that he breached these promises does not eliminate the creditors' protections under

DEFENDANTS' JOINT MOTION TO
DISMISS AMENDED COMPLAINT
(No. 2:20-cv-00669-RSL) – 18
149133537.2

§ 523(a)(8)(A)(i). *See In re Noland*, Adv. No. A09-8048-TJM, 2010 WL 1416788, at *3 (Bankr. D. Neb. Mar. 30, 2010) (rejecting the argument that the loans were dischargeable "because some of the funds were used for dining out, purchasing gifts," among other social purchases.).

The Guarantee Agreement also confirms Defendants' point. (Dkt. # 56-3 at ¶ 2.1). Courts have concluded identical language in TERI guarantee agreements regarding NCSLT loans evidence TERI's funding of the loan programs under § 523(a)(8)(A)(i). *See, e.g., In re Greer-Allen*, 602 B.R. 831 at 839 (noting "[t]he sweeping breadth of the guaranty makes clear that TERI helped fund the Program. [The lenders] knew that all loans issued under the Program would be guaranteed by TERI in the event of default.").

Brown's argument that TERI did not "fund" the loan program within the meaning of § 523(a)(8)(A)(i) due to insufficient funds to cover defaults (Dkt. # 56 at ¶ 43) is similarly meritless. Courts have repeatedly rejected arguments that the nonprofit guarantor did not "fund" the loan program where the guarantee agreement limited its financial contribution or risk. *See In re Kidd*, 458 B.R. 612, 619 (Bankr. N.D. Ga. 2011) (rejecting such argument where the guarantee agreement limited the nonprofit's risk to the amount of funds paid into a guarantee pool by loan applicants); *see also In re Drumm*, 329 B.R. at 23 (rejecting such argument where the bank fees charged to student applicants were remitted to the nonprofit's reserve account, and the nonprofit's obligation for payment upon default did not extend beyond the available balance of the reserve account). Here, like in *Kidd* and *Drumm*, Brown's allegation that TERI did not set aside sufficient reserves to ultimately guarantee every defaulted loan does not alter TERI's role in funding the program under which his loans were made pursuant to § 523(a)(8)(A)(i).

Brown further alleges that the loans were not "made under a program" guaranteed by TERI because TERI purportedly rejected any guarantees in its April 2008 bankruptcy case. (Dkt. # 56 at

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

¶ 44). But the statutory text looks to the time the loans were "made." 11 U.S.C. § 523(a)(8)(A)(i).

Consequently, TERI's 2008 bankruptcy filing had no effect on whether the loans were "made"

under a program funded by a nonprofit institution in 2003 through 2007. Regardless, Brown's

allegations are factually incorrect and must be ignored. The Bankruptcy Court ordered TERI to

make payments to the Trusts to "honor" TERI's "guarantee obligations" pursuant to the "terms of

the applicable Guaranty Agreement." (*In re TERI*, Bankr. D. Mass., Case No. 08-12530, Dkt. # 361

at 1, 3, 4.

> **2.** **Brown fails to plausibly allege that the loans did not qualify for non-dischargeability under § 523(a)(8)(A)(ii) and § 523(a)(8)(B).**

Brown also fails to allege that the loans did not fall under the exceptions to non-

dischargeability in § 523(a)(8)(A)(ii) and § 523(a)(8)(B). Because Brown bears the burden of

proving his prima facia case, he must plausibly allege that the loans did not qualify for non-

dischargeability under *all three* sections of the statute. *See In re Greer-Allen*, 602 B.R. at 836. In

his Amended Complaint, Brown merely re-states the statutory language in alleging that the loans

did not satisfy the remaining two non-dischargeability categories. (Dkt. # 56 at ¶¶ 46–47). Such

"legal conclusions" are "not entitled to the assumption of truth," and thus, fail. *Dougherty*, 654

F.3d at 897.

**E.** **Brown's Declaratory Judgment Claims Must be Dismissed for Failure to Allege an Actual Controversy Against Any Defendant.**

To obtain declaratory or injunctive relief, the plaintiff must allege "a substantial

controversy, between parties having adverse legal interests, of sufficient immediacy and reality."

*United States v. Braren*, 338 F.3d 971, 975 (9th Cir. 2003). Indeed, 28 U.S.C. § 2201 "may not be

made the medium for securing an advisory opinion in a controversy which has not arisen."

*Coffman v. Breeze Corp.*, 323 U.S. 316, 324 (1945) (citations omitted). Plaintiff must allege that

DEFENDANTS' JOINT MOTION TO
DISMISS AMENDED COMPLAINT
(No. 2:20-cv-00669-RSL) – 20
149133537.2

they are "threatened by injury that is both real and immediate, and not conjectural or hypothetical." *Portland Police Ass'n v. City of Portland, By & Through Bureau of Police*, 658 F.2d 1272, 1273 (9th Cir. 1981) (internal quotation marks and parentheses omitted).

Brown asks for a declaration that Defendants cannot collect on his loans and to enjoin them from further collection efforts. But the Amended Complaint lacks any factual allegation supporting a "real and immediate" injury; there are no allegations that any Defendant has attempted, or even threatened, to collect on his loans since the Trusts' state court collection lawsuits against Brown were dismissed and the time to appeal expired. (Dkt # 56 at pp. 24-25 ¶¶ 90–93.) Plaintiff cannot make such allegations because TSI, on behalf of the Trusts, does not intend to collect on Brown's Loans. *See Benitec Austl., Ltd. v. Nucleonics, Inc.,* 495 F.3d 1340, 1343 (Fed. Cir. 2007) (affirming dismissal of a declaratory judgment claim at the pleading stage where appellee promised not to sue appellant for patent infringement). Rather, Brown's only assertions are historical, *i.e.* Defendants "*have* pursued collections of debts." (Dkt. # 56 at ¶ 31) (emphasis added). He fails to allege the immediacy and reality of potential injury caused by any hypothetical collection attempts. *See In re Fin. Oversight & Mgmt. Bd. for P. R.*, 919 F.3d 638, 644 (1st Cir. 2019) (finding no controversy when allegations could not result in "relief to resolve any current concrete dispute").[9] Brown's claims for declaratory relief under Count II and Count IV must therefore be dismissed for failure to allege an actual, existing controversy between the parties.

---

[9] *See also Union Pac. R.R. Co. v. Sacks*, 309 F. Supp. 3d 908, 918 (W.D. Wash. 2018) (dismissing a complaint seeking a declaratory judgment at the pleading stage because "Plaintiff has failed to show that there is an existing substantial controversy" and defendant stated it would take no further action); *In re Old Carco LLC,* 530 B.R. 614, 619 (Bankr. S.D.N.Y. 2015) (dismissing a complaint where the alleged dispute was "neither immediate nor real" because the relevant party had "not asserted or threatened to assert a claim … and [was] not likely ever to do so."); *In re Murray Indus., Inc.,* 122 B.R. 135, 137 (Bankr. M.D. Fla. 1990) (dismissing an action seeking declaratory judgment where allegations were "hypothetical and speculative").

DEFENDANTS' JOINT MOTION TO
DISMISS AMENDED COMPLAINT
(No. 2:20-cv-00669-RSL) – 21
149133537.2

In sum, even if this Court were the proper forum for determining the dischargeability of Brown's student loans (it is not), Brown has failed to plausibly plead (and cannot plead) that his loans were dischargeable in bankruptcy, and he has failed to allege an actual, existing controversy between the parties to support his declaratory judgment claim. Because Brown's claims depend on the dischargeability of the loans and merely hypothetical future collections, his Amended Complaint must be dismissed.[10]

## V.      CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant Defendants' Joint Motion to Dismiss the Complaint.

---

[10] Notably, Brown has never contended that the narrow exception of "undue hardship" applies to his Loans. 11 U.S.C. § 523(a)(8).

DEFENDANTS' JOINT MOTION TO
DISMISS AMENDED COMPLAINT
(No. 2:20-cv-00669-RSL) – 22

149133537.2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

PERKINS COIE LLP

By: s/ Kristine E. Kruger
Kristine E. Kruger, WSBA No. 44612
1201 Third Avenue, Suite 4900
Seattle, WA 98101
Telephone: 206.359.8000
Facsimile: 206.359.9000
KKruger@perkinscoie.com

*Attorneys for Defendants U.S. Bank National
Association, National Collegiate Student Loan
Trust 2004-1, National Collegiate Student
Loan Trust 2004-2, National Collegiate
Student Loan Trust 2005-1, National
Collegiate Student Loan Trust 2005-2,
National Collegiate Student Loan Trust 2005-
3, National Collegiate Student Loan Trust
2006-1, National Collegiate Student Loan
Trust 2006-2, National Collegiate Student
Loan Trust 2007-1, National Collegiate
Student Loan Trust 2007-2*

SESSIONS, FISHMAN, NATHAN & ISRAEL

By: s/ Bryan C. Shartle, Esq.
Bryan C. Shartle, *Pro Hac Vice*
Justin Homes, *Pro Hac Vice*
Bradley St. Angelo, *Pro Hac Vice*
3850 North Causeway Boulevard, Suite 200
Metairie, LA 70002
bshartle@sessions.legal
jhomes@sessions.legal
bstangelo@sessions.legal

*Attorneys for Transworld Systems Inc*

CORR CRONIN LLP

By: s/ Emily J. Harris
Emily J. Harris, WSBA No. 35763
Benjamin C. Byers, WSBA No. 52299
1001 Fourth Avenue, Suite 3900
Seattle, WA 98154
eharris@corrcronin.com
bbyers@corrcronin.com

*Attorneys for Transworld Systems Inc.*

JONES DAY

By: s/ Albert J. Rota
Albert J. Rota, *Pro Hac Vice*
2727 North Harwood St.
Dallas, TX 75201
ajrota@jonesday.com

*Attorneys for U.S. Bank National Association*

LEE SMART, P.S., INC.

By: s/ Marc Rosenberg
Marc Rosenberg, WSBA No. 31034
1800 One Convention Place
701 Pike St.
Seattle, WA 98101
Mr@leesmart.com

*Attorneys for Patenaude & Felix, APC*

DEFENDANTS' JOINT MOTION TO
DISMISS AMENDED COMPLAINT
(No. 2:20-cv-00669-RSL) – 23
149133537.2

1

2

## <u>CERTIFICATE OF SERVICE</u>

3      I hereby certify under the penalty of perjury under the laws of the United States that on the

4 date below, I electronically served the foregoing Joint Motion to Dismiss Plaintiff Brown's

5 Complaint with the Clerk of the Court using the CM/ECF system, which will send notification of

6 such filing to all counsel of records.

7

8

9 DATED: August 6, 2020

10

11                  By s/ Kate Johnson
                    Kate Johnson, Legal Practice Assistant
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' JOINT MOTION TO
DISMISS AMENDED COMPLAINT
(No. 2:20-cv-00669-RSL) – 1
149133537.2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000