Hon. Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

OSURE BROWN, on his own behalf and on behalf of other similarly situated persons,

Plaintiff,

vs.

TRANSWORLD SYSTEMS, INC., PATENAUDE & FELIX, APC; U.S. BANK, NA. NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-1, NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-2, NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-1, NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-2, NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-3, NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-1, NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-2, NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-1, and NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-2,

Defendants.

No. 2:20-cv-00669-RSL

DEFENDANT PATENAUDE & FELIX, APC'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

MOTION NOTING DATE: OCTOBER 2, 2020

LEE·SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

## I. INTRODUCTION

Pursuant to Fed.R.Civ.P. 12(b)(6), Defendant Patenaude & Felix, APC ("Patenaude") moves to dismiss the claims alleged against it by Plaintiff Osure Brown ("Brown"). (Dkt 56). Brown alleges Patenaude violated the federal Fair Debt Collection Practices Act ("FDCPA"), (Dkt 56 at ¶ 135), and he seeks declaratory judgment against it under Fed.R.Bankr.P. 7001(9) and 28 U.S.C. § 2201. (Dkt 56 at ¶ 143). The two remaining "counts" (i.e., causes of action) are brought only against other defendants.[1] Patenaude incorporates the arguments set forth in the joint defense motion to dismiss. (Dkt 62). In this brief, Patenaude provides additional defenses specific to Patenaude, in addition to those in the joint defense brief.

Brown borrowed student loans. Brown later obtained a discharge in bankruptcy court by representing to that court that the National Collegiate Trusts ("NCT") owned the student loan debt and that the loans were non-dischargeable (i.e. he would repay them after discharge). After receiving a discharge, Brown takes the dishonest position, contrary to his representations to the bankruptcy court, that NCT does not own the loans and that the loans are dischargeable. Patenaude represented the NCTs in a lawsuit following the bankruptcy to recover money borrowed by Brown. Brown alleges Patenaude brought the state court action knowing the loans were dischargeable, despite Brown having represented they are non-dischargeable. Brown's claims fail as a matter of law in a variety of ways.

## II. FACTS

### A. This Court should consider documents attached to the Kruger Declaration, (Dkt 43), and Rosenberg Declaration, (Dkt 48).

In ruling on a Rule 12(b)(6) motion, the Court may consider documents attached to complaint, documents whose contents are alleged in a complaint and whose authenticity no

[1] Brown's Third cause of action based on alleged violation of a discharge injunction and fourth cause of action for declaratory and injunctive relief are "against the Defendant Trusts only." (Dkt 56 at ¶¶ 145, 149).

LEE·SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

party questions, but which are not physically attached to the pleading, and documents of which the Court may take judicial notice. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Phillips v. World Pub. Co.*, 822 F. Supp. 2d 1114, 1117-18 (W.D. Wash. 2011). The court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). *See also Schasa v. AmTrust Bank*, No. 11-cv-01108, 2011 WL 13220099, at *2 (C.D. Cal. Aug. 2, 2011) ("a written instrument that contradicts Plaintiff's allegations generally trumps the allegations"); *Marder v. Lopez*, 450 F.3d 445, 453 (9th Cir. 2006) (affirming grant of a motion to dismiss where the plaintiff's "proposed interpretation of [a] Release [agreement] is inconsistent with its terms," even where the agreement was not attached to the complaint).

Patenaude requests the Court consider documents attached to the declarations of Kristine E. Kruger, (Dkt 43), and Marc Rosenberg, (Dkt 48). The Kruger Declaration provides Brown's "Loan Request/Credit Agreement" or "Loan Application/Promissory Note" for each loan signed by Osure Brown as borrower, (Dkt. 56 at ¶ 49(d)), and the "Guaranty Agreement between TERI and BOA dated June 30, 2003." (Dkt. 56 at ¶¶ 44-45). *See also* (Dkt 56-3). The documents attached to the Rosenberg Declaration are on file in two court cases: (1) Brown's bankruptcy case in the United States Bankruptcy Court for the Western District of Washington, Case No. 12-21878-TWD (the "Bankruptcy Case"); (2) *NCT v. Brown*, King County Superior Court, cause no. 19-2-09402-8-KNT (the "State Case").

**B. Mr. Brown borrowed student loans, and reported to the bankruptcy court in bankruptcy plans that the loans were nondischargable.**

"Plaintiff Osure Brown is … the borrower on loans at issue." (Dkt 56 at ¶ 6). Brown took out ten educational loans between 2003 and 2007 to study at Washington State University and Bellevue College. (Dkt. 56 at ¶¶ 75, 80-83). In signing credit agreements, Brown agreed: "This loan will be used only for the Student's tuition and other educational expenses at [his]

LEE·SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

School." (Dkt 43-1, Ex. A at § L.1); (Dkt 43-1, Ex. B at § L.2). Brown agreed: "I understand that I am responsible for repaying immediately any funds that I receive which are not to be used or are not used for educational expenses related to attendance at the School for the academic period stated." (Dkt 43-1, Ex. B at § N). Brown acknowledged that the loans were made under a program whereby Bank of America originated the loans and The Education Resources Institute ("TERI"), a non-profit institution, guaranteed payments on the loans in case of default. (Dkt 43-1, Ex. B at § L.12); (*Id*., Ex. A at §§ D, I, L.3). Brown certified: "I understand that the loan is made under a program which is funded in part by a non-profit organization and as such is generally not dischargeable in bankruptcy." (*Id*., Ex. A at § I). *See also* (*Id*., Ex. B at § L.12) ("I acknowledge that the requested loan may be subject to the limitations on dischargeability in bankruptcy contained in Section 523 (a) (8) of the United States Bankruptcy Code. Specifically, I understand that you have purchased a guaranty of this loan, and that this loan is guaranteed by The Education Resources Institute, Inc. ('TERI'), a non-profit institution."). The loans were subsequently sold to the NCTs. (Dkt. 56 at ¶ 43).

### C. Brown received a discharge by representing to the bankruptcy court that (a) he owed the debt to NCT, and (b) the debt is non-dischargeable.

On November 29, 2012, Brown filed a voluntary Chapter 13 bankruptcy petition. (Dkt 56 at ¶ 48); (Dkt 48-1); (Dkt 48-2). Brown owed over $200,000.00 in student loan debt. (Dkt 48-2 at pp. 18-20). Brown was represented in the bankruptcy by his current counsel, Christina Henry. (Dkt 48-1); (Dkt 48-2). Throughout the bankruptcy, it was Brown's position that the loans were owed to NCT and were non-dischargeable. As alleged in the Complaint:

> Osure Brown's Chapter 13 bankruptcy plan stated that "[a]fter month 36, all available plan payments after [secured debt] is paid in full, shall be distributed to the **non-dischargeable student loan creditors** only, ECMC, American Educational Services, **National Collegiate Trust**, Permant [sic] Recovery Inc. and any other unknown student loan lenders."

(Dkt 56 at ¶ 50) (emphasis added). *See also* (Dkt 48-2); (Dkt 48-3).

LEE·SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

Brown's Amended Plan again represented the student loans as non-dischargeable and owed to NCT. (Dkt 48-3 at 5). In the bankruptcy court, Brown never challenged the loans as being non-dischargeable, though he was represented by counsel and had 10 years to investigate.

On December 29, 2017, Brown received a discharge. (Dkt 56 at ¶ 54); (Dkt 48-4). The discharge order advises: "Some debts are not dischargeable. Examples of debts that are not discharged are … debts for most student loans." (Dkt 48-4).

### D. Patenaude represented NCT in a State Case, and claims against Patenaude are based on its filing of the lawsuit and submitting declarations.

Patenaude is a law firm, and Matthew Cheung is a lawyer. (Dkt 56 at ¶¶ 8, 9.f, and 9.i). Brown alleges Patenaude acts as a debt collector, and uses boilerplate language to try and bring his claims against Patenaude within the elements of the FDCPA. (*Id*. at ¶¶ 9.a - 9.h, 39). Brown's substantive claims against Patenaude are essentially that NCT retained Patenaude to represent it in the State Case to collect amounts owed on the student loans, and Patenaude submitted client declarations on NCT's behalf in that State Case. (*Id*. at ¶¶ 9.f, 39, 59-63).

On April 5, 2019, NCT sued Brown on separate loans that were consolidated together in the State Case. (Dkt 56 at ¶ 59); (Dkt 1-2).[2] Patenaude represented NCT in the State Case. (Dkt 56 at ¶ 59). On behalf of NCT, Patenaude represented that Brown owed NCT the student loan money, which Brown had conceded. (Dkt 56. at ¶ 60); (Dkt 48-1)-(Dkt 48-3).

Brown moved for summary judgment in the State Case on the ground that NCT did not provide sufficient evidence to show that it owned the loans. (Dkt 48-8); (Dkt 49-9). The evidence submitted by NCT was consistent with Brown's bankruptcy filings, reflecting Brown owed the debt to NCT. (Dkt 56 at ¶¶ 60-64); (Dkt 48-2); (Dkt 48-3). NCT asked for a continuance to conduct discovery, but the state court denied a continuance. (Dkt 48-10); (Dkt 48-11). The state court struck NCT's evidence as hearsay because the declarant worked

[2] The sworn Declaration of Service on file in the State Case reflects that Brown was served earlier, on February 16, 2019, and Brown appeared on March 7, 2019. (Dkt 48-6); (Dkt 48-7).

LEE·SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

for the sub-servicer, not the lender. (Dkt 48-12). Then, rather than giving NCT an opportunity to obtain another declaration, the state court granted summary judgment to Brown. (*Id*.). Bankruptcy issues were not addressed in the State Case, (Dkt 48-6), and the dismissal only stands for the proposition that NCT did not submit admissible evidence to show what Brown had conceded; that he owed the debt to NCT. (Dkt 56 at ¶ 50); (Dkt 48-2)-(Dkt 48-4).

Brown now alleges that Patenaude was "aware that [NCT] lacked the ability to prove their ownership of any loans taken out by Osure Brown at the time they filed their collection action against the Browns." (Dkt 56 at ¶ 109). In other words, Patenaude filed a lawsuit to benefit its client, and submitted declarations on behalf of its client, (Dkt 48-9) – (Dkt 48-11), that were consistent with representations Brown had made in the Bankruptcy Case, (Dkt 48-1) – (Dkt 48-3), and the discharge order, (Dkt 48-4); and that Patenaude should have been aware that Brown's own representations in the Bankruptcy Case were false.

**E. There is no Consent Judgment.**

Brown bases claims on a purported Consent Judgment between the Consumer Financial Protection Bureau and the NCTs. (Dkt 56-7). After two years of litigation, the Delaware District Court has just denied approval of the Consent Judgment, because the signor of that document lacked authority. *Consumer Financial Protection Bureau v. The National Collegiate Master Student Trust, et al.*, 2020 WL 2915759, at *6 (D. Del. May 31, 2020). As such, there is no basis for Brown's allegations related to the failed Consent Judgment.

## III. POINTS AND AUTHORITIES

**A. Standard on Rule 12(b)(6).**

A defendant may move for dismissal when a plaintiff "fails to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Although the court accepts as true a complaint's well-pleaded facts, "conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper motion to dismiss." *Vasquez v. L.A. County*, 487 F.3d 1246, 1249 (9th Cir.

LEE·SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

2007). To survive a motion to dismiss, a plaintiff must allege facts supporting a plausible cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007). If allegations are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible. *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). The plausibility standard asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). Accordingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that the pleader is entitled to relief. *Id*. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).

**B. Patenaude incorporates arguments in the Joint Defense Motion to Dismiss on Common Issues, and all claims should be dismissed on these grounds.**

This Court permitted Defendants to submit a joint brief on common issues and individual briefs by each defendant for argument unique to the each Defendant. (Dkt 59 at 7). Patenaude both submits this brief, and incorporates all arguments in the Defendants' joint brief, (Dkt 62), and asks for dismissal of the claims against it based on the contents of both briefs.

**C. Brown's FDCPA claims are barred by the one-year statute of limitations in 15 U.S.C. § 1692k(d).**

The only substantive cause of action alleged against Patenaude (i.e. "Count I"), are alleged violations of 15 U.S.C. §§ 1692e and 1692f. (Dkt 56 at ¶¶ 137-38).

An action under the FDCPA must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). "That language unambiguously sets the date of the violation as the event that starts the one-year limitations period." *Rotkiske v. Klemm*, 140 S. Ct. 355, 360, 205 L. Ed. 2d 291 (2019). Since Brown filed this lawsuit on April 6, 2020,

LEE·SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

(Dkt 1-2),[3] claims based on events occurring prior to April 6, 2019 are barred by the one-year statute of limitations in § 1692k(d). Thus claims based on the following events are time barred:

- All events occurring in the bankruptcy between 11/29/12 and 12/29/17, including the filing of notice of claims. (Dkt 56 at ¶¶ 48-54); (Dkt 48-1).
- The 10 letters sent by Patenaude in October 2018. (*Id.* at ¶ 56).
- Letters and verifications sent by Patenaude in January 2019. (*Id.* at ¶¶ 57-58).
- Brown was served with the underlying State Case on February 16, 2019, and he appeared and asserted defenses on March 7, 2019. (Dkt 48-6); (Dkt 48-7); (Dkt 56 at ¶ 61).

In Washington, a lawsuit is commenced by filing or service. RCW 4.28.020. As such, claims related to commencement of the State Case are barred based on the February 16, 2019 commencement of that action. (Dkt 56 at ¶ 61). However, for the sake of a complete analysis, the result would be the same even if the Court used the date of filing of the State Case.

Where FDCPA claims are based on the filing of an underlying lawsuit, the statute of limitations generally begins to run on the day the underlying lawsuit is filed. *Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997). This is because "[f]iling a complaint is the debt collector's last opportunity to comply with the Act, and the filing date is easily ascertainable." *Id.* Here, however, the service date is also easily ascertainable. (Dkt 48-6); (Dkt 48-7). The discovery rule does not apply to FDCPA claims and, absent the application of an equitable doctrine, § 1692k(d)'s statute of limitations begins to run when the alleged FDCPA violation occurs, not when the violation is discovered. *Rotkiske*, 140 S. Ct. at 359-62. No equitable doctrine applies here, since Brown was aware of the State Case prior to filing, and appeared in each case before the lawsuits were filed. (Dkt 56 at ¶¶ 56, 58); (Dkt 48-6); (Dkt 48-7).

[3] Brown's Complaint is stamped by the state court on the first page as being filed on April 6, 2020. (Dkt 56). The Complaint was subsequently removed by Defendants to this Court. (Dkt 1).

LEE·SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

Brown filed this lawsuit on April 6, 2020, (Dkt 1-2), so claims are time-barred as to events prior to April 6, 2019. The State Case was filed on April 5, 2019, (Dkt 56 at ¶ 56), one day beyond the statute of limitations deadline. A claim that is even one day beyond the statute of limitations is still barred by the statute of limitations. *Cline v. Brusett*, 661 F.2d 108, 111 (9th Cir. 1981) ("Because appellant's s 1983 complaint was filed on October 16, 1978, it was filed one day beyond the two year statute of limitations and is barred"); *Day v. Moscow*, 769 F. Supp. 472, 476 (S.D.N.Y. 1991), *aff'd*, 955 F.2d 807 (2nd Cir. 1992) (false arrest and illegal search claims were time barred "in that the action was commenced one day beyond the three year statute of limitations").

The Court should use the February 2019 service of the State Case, (Dkt 56 at ¶ 61), (Dkt 48-6), as the date barring claims related to the commencement of the State Case, but the result is the same even if the Court applies the date of filing of that case. Brown's FDCPA claims are barred by the one-year statute of limitations in § 1692d(k).

**D. Brown's FDCPA claims are an improper collateral attack on materials on file in the bankruptcy court, including the bankruptcy court judgment.**

As argued more fully in the Defendants' joint brief, the Bankruptcy Code provides its own remedy for violating § 524, civil contempt under § 105, and to permit a claim under the FDCPA would allow through the back door what a debtor "cannot accomplish through the front door—a private right of action." *In re Chaussee*, 399 B.R. 225, 235 (B.A.P. 9th Cir. 2008). Here, Brown alleges Patenaude violated §§ 1692e(2) and (10) by bringing the State Case to collect amounts discharged in the bankruptcy proceeding. (Dkt 56 at ¶ 137). Brown cannot circumvent bankruptcy procedures by bringing this FDCPA claim. Brown represented that his debt was non-dischargeable, (Dkt 56 at ¶ 50); (Dkt 48-2); (Dkt 48-3), and the bankruptcy discharge agrees that student loan debts are generally not dischargeable, (Dkt 48-4), so the discharge order cannot be understood to include the student loan debt that Brown represented

LEE·SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

as non-dischargeable. If Brown argues that the loans ***should have been*** discharged by the bankruptcy court, this amounts to an improper collateral attack on the bankruptcy court's judgment. *Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995); *Stratosphere Litig. L.L.C. v. Grand Casinos, Inc*., 298 F.3d 1137, 1143 (9th Cir. 2002); *In re Motley*, 268 B.R. 237, 241 (C.D. Cal. Bankr. 2001). Brown did not appeal the bankruptcy court judgment or petition the bankruptcy court to re-open his case to amend the plan or discharge order, so all aspects of his claims under §§ 1692e and 1692f are an improper attempt to alter the bankruptcy court's final judgment, brought in the wrong court, and must be dismissed. *See Espinosa v. United Student Aid Funds, Inc.*, 553 F.3d 1193, 1199, 1205 n7 (9th Cir. 2008), *aff'd*, 559 U.S. 260 (2010).

**E. Brown fails to plead fraud against Patenaude with specificity.**

Brown uses the word fraud twice in his Amended Complaint, (Dkt 56 at ¶¶ 53, 103), and his claims against Patenaude are rife with statements alleging fraud; for example that Patenaude concealed information. (Dkt 56 at ¶¶ 57, 58, 60, 62, 84, 88). In such cases, which sound in fraud, a pleading of that claim must satisfy the particularity requirement of Rule 9(b). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003).

> To plead fraud with the particularity required by Rule 9(b), a complaint "must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Davidson v. Kimberly-Clark Corp*., 889 F.3d 956, 964 (9th Cir. 2018). "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *United States v. United Healthcare Ins. Co*., 848 F.3d 1161, 1184 (9th Cir. 2016). Additionally, when the defendant is an entity, a complaint generally must also *identify the person who made the false representations on behalf of the entity. See United States ex. Lee v. SmithKline Beecham*, 245 F.3d 1048, 1051 (9th Cir. 2001).

*Zetz v. Bos. Sci. Corp.*, 398 F. Supp. 3d 700, 713 (E.D. Cal. 2019).

Brown does not allege such things as who advised Patenaude that the NCTs could not show ownership, who at Patenaude received such information, when such information was

LEE·SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

allegedly conveyed, and a host of similar facts required to show a fraudulent concealment. Since Brown's claims against Patenaude sound in fraud, and he fails to meet the heightened pleading standard under Fed.R.Civ.P. 9(b), his claims against Patenaude should be dismissed.

**F. Brown's FDCPA claims fail on the merits.**

**1. Patenaude did not violate § 1692e(5).**

Subsection (5) is one of the specifically enumerated examples of conduct that violates § 1692e; it prohibits "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5). This subsection is "aimed at preventing empty threats of litigation as a means of scaring the debtor into payment." *Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1136 (N.D. Ill. 1998). Actually taking action is not a "threat to take action," as contemplated by § 1692e(5). *See Hoffman v. Transworld Sys., Inc.*, 806 F. App'x 549, 552 (9th Cir. 2020) ("Defendants did not make a 'threat to take any action that cannot legally be taken or that is not intended to be taken,' 15 U.S.C. § 1692e(5); rather, they filed a lawsuit"). *See also St. John v. Cach, LLC*, 822 F.3d 388, 390–91 (7th Cir. 2016) (filing lawsuit is not a threat to take action that cannot legally be taken, even if collector does not intend to take the case through trial); *Vanhuss v. Kohn Law Firm S.C.*, 127 F. Supp. 3d 980, 988 (W.D. Wis. 2015) ("This court agrees ... that extending § 1692e(5) to apply to actions actually taken conflicts with the statutory text."); *Bravo v. Midland Credit Mgmt., Inc.*, No. 14 C 4510, 2014 WL 6980438, at *3 (N.D. Ill. Dec. 9, 2014) (holding that "§ 1692e(5) prohibits only the threat of unlawful action, not the unlawful action itself" because "Congress intended that provision to prohibit only threats, not actions" and that "the weight of authority from district[ ] courts in this Circuit ... supports this conclusion"), *aff'd*, 812 F.3d 599 (7th Cir. 2016); *Thompson v. Cach, LLC*, No. 14 cv 313, 2014 WL 5420137, at *4 (N.D. Ill. Oct. 24, 2014) ("[T]hreats in and of themselves ... animate § 1692e(5), not what unfolds following the taking of a debt collection action."); *Eul v. Transworld Sys.*, 2017 WL 1178537, at *15 (N.D. Ill. Mar. 30, 2017) (citing

LEE·SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

cases). Brown alleges that Patenaude violated § 1692e(5) by filing the State Case, but this was an action, not a threat to take action.[4] There are other portions of FDCPA that deal with actions, but § 1692e(5) relates only to "threats," and it should be presumed that Congress intended the difference in language. This Court should therefore dismiss the § 1692e(5) claim.

**2. Patenaude did not violate §§ 1692(2), 1692 (10), or 1692f.**

Brown alleges that Patenaude violated §§ 1692(2) and (10) by bringing lawsuits to collect on discharged student loan debt, (Dkt 56 at ¶ 137), and § 1692f by (a) pursuing discharged debts, and (b) pursuing debts knowing that NCT's records were inaccurate, incomplete, and not sufficient to pursue debt collection actions. (Dkt 56 at ¶ 138).

<u>There was no discharge of the loans so there is no claim</u>: Claims under §§ 1692e and 1692f should be dismissed as an improper collateral attack on the bankruptcy court's orders. Brown represented to the bankruptcy court in his bankruptcy plan that his student loan debt was non-dischargeable, (Dkt 56 at ¶ 50); (Dkt 48-2); (Dkt 48-3), and the bankruptcy discharge likewise indicates that most student loan debt is not dischargeable, (Dkt 48-4), so the student loans were not discharged.[5] Brown now alleges essentially that Patenaude pursued debts it could not collect on because the debt was discharged. Such claims fail where the debt was not

[4] Brown will likely cite as support the *Sprinkle* case, an early case from 14 years ago that was issued before there was much authority on § 1692e(5). *Sprinkle v. SB&C Ltd.*, 472 F. Supp. 2d 1235, 1246 (W.D. Wash. 2006) ("few reported cases exist on this topic"). "A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709, 131 S. Ct. 2020, 2033, 179 L. Ed. 2d 1118 (2011) (quoting 18 J. Moore et al., Moore's Federal Practice § 134.02[1] [d], p. 134–26 (3d ed.2011)). *Sprinkle* is outdated, does not follow the statutory language, and erroneous under the great weight of authority. It is contrary to the Ninth Circuits decision in *Hoffman*, 806 F. App'x at 552, and the Seventh Circuit's decision in *St. John v. Cach, LLC*, 822 F.3d 388, 390–91 (7th Cir. 2016) (filing lawsuit is not a threat to take action that cannot legally be taken, even if collector does not intend to take the case through trial).

[5] It should also be noted that the mere fact that a debtor may prevail in an underlying state case does not mean there has been any violation of the FDCPA. *See Heintz v. Jenkins*, 514 U.S. 291, 295–96, 115 S. Ct. 1489, 1491, 131 L. Ed. 2d 395 (1995) ("we do not see how the fact that a lawsuit turns out ultimately to be unsuccessful could, by itself, make the bringing of it an 'action that cannot legally be taken'"). Thus, Brown does not prevail simply because the State Case judge dismissed the collection action after striking a declaration as hearsay, (Dkt 48-12).

LEE·SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

discharged, and if Brown wants a different holding, he needs to re-open the bankruptcy and try to obtain a different ruling.

Brown's Show-Me-The-Note Type Argument Should Be Rejected. Brown's argument smacks of the "show me the note" type of argument that this court has repeatedly rejected in the similar area of mortgages. *See Zadrozny v. Bank of New York Mellon*, 720 F.3d 1163, 1170 (9th Cir. 2013) ("Because the provisions of the deed of trust foreclose the pleading of a plausible 'show me the note' claim by the Zadroznys, the district court appropriately dismissed this claim"); *Gossen v. JPMorgan Chase Bank*, 819 F. Supp. 2d 1162, 1170 (W.D. Wash. 2011) ("Courts have routinely held that Plaintiff's 'show me the note' argument lacks merit"); *McDonald v. OneWest Bank, FSB*, 929 F. Supp. 2d 1079, 1088, n6 (W.D. Wash. 2013) ("[t]he Court acknowledges the numerous decisions rejecting a borrower's demand that the lender 'show me the note'") (citing cases). Meanwhile, Brown does not suggest any other person or entity owns the debt, while NCT has provided significant evidence that it does own the debt. (Dkt 48-9) to (Dkt 48-11). Brown's show-me-the note type claims should be dismissed.

**G. Plaintiff has no basis for declaratory or injunctive relief as to Patenaude.**

In Brown's second cause of action, he seeks declaratory and injunctive relief against "all defendants" under Fed.R. Bankr.P. 7001(9) and 28 U.S.C. § 2201. (Dkt 56 at ¶¶ 143). This "Count" is a remedy, not a substantive cause of action, and the Court need not even consider it. If considered, the Court should deny injunctive and/or declaratory relief.

**1. Fed. R. Bankr. P. 7001(9) is a bankruptcy rule for adversary proceedings that does not apply in district court.**

Brown seeks a declaratory judgment under Fed. R. Bankr. P. 7001(9), which states: "The following are adversary proceedings … a proceeding to obtain a declaratory judgment relating to any of the foregoing." *Id*. "The Bankruptcy Rules and Forms govern procedure in cases under title 11 of the United States Code." Fed.R. Bankr.P. 1001. This case is not an

LEE·SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

adversary proceeding in bankruptcy, and there is no rule or statute here that makes bankruptcy rules apply outside of the bankruptcy context, so citation to the federal bankruptcy rules relating to adversary proceedings is inappropriate here in district court, and the bankruptcy rule does not provide a basis to seek a declaratory judgment in this case. Indeed, Brown's use of this bankruptcy vehicle provides weight to the proposition that this case should be before the bankruptcy court, not this Court.

**2. An injunction under 28 U.S.C. § 2201 is a remedy, not a cause of action, so it should be dismissed as being a separate cause of action.**

Brown seeks declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. § 2201. The Declaratory Judgment Act of 1934, now 28 U.S.C. § 2201, is titled "Creation of a Remedy." *Id*. Declaratory relief under § 2201 is a "requests for relief and not separate legal causes of action." *Veridian Credit Union v. Eddie Bauer, LLC*, 295 F. Supp. 3d 1140, 1156 (W.D. Wash. 2017). *See also Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1111 (E.D. Cal. 2014). As such, the Court should dismiss Count II as a separate cause of action, even if it were to consider providing such a remedy. In addition, as an equitable remedy, declaratory relief is "dependent upon a substantive basis for liability" and has "no separate viability" if other causes of action are dismissed. *Flores*, 997 F. Supp. 2d at 1111. Thus, since Brown alleges only FDCPA violations against Patenaude, any remedy under § 2201 fails to the extent the FDCPA claims are dismissed.

**3. There is no ongoing controversy between Brown and Patenaude upon which to provide declaratory or injunctive relief.**

The Declaratory Judgment Act was adjudged constitutional only by interpreting it to confine the declaratory remedy within conventional "case or controversy" limits. *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 242, 73 S. Ct. 236, 239, 97 L. Ed. 291 (1952). *See also Societe de Conditionnement en Aluminium v. Hunter Eng'g Co.*, 655 F.2d 938, 942



LEE·SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

(9th Cir. 1981) ("[t]he "actual controversy" requirement of the Act is the same as the "case or controversy" requirement of Article III of the United States Constitution") (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-40, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937)). A controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. *Aetna Life Ins.*, 300 U.S. at 240-41, 57 S.Ct. at 463-64. Where a complaint seeks to redress past alleged wrongs, not prospective wrongdoing, the complaint fails to allege facts to support an actual controversy and in turn fails to support declaratory relief subject to the DJA. *Flores*, 997 F. Supp. 2d at 1112.

> Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Cunningham Bros. v. Bail*, 407 F.2d 1165, 1169 (7th Cir. 1969) (citing *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)).

The interests of justice are not served, however, where there is no immediate controversy between the parties, and it is unsure whether any such controversy will ever arise. *Id*. Here, Brown asks that this Court declare that the amounts borrowed by Brown cannot be collected because they were discharged by the bankruptcy court. (Dkt 56 at 144). But there is no pending collection action by NCT against Brown, and the likelihood is that there will not be one after dismissal of NCT's claims in the State Case.

But even if there were a controversy between Brown and some other defendant, there is no existing controversy between Brown and Patenaude, since Patenaude was merely a lawyer for a party in a prior lawsuit that concluded with an un-appealed final judgment, (Dkt 48-14), and Patenaude was not a party to that concluded underlying lawsuit. *See Smith v. Am. Asiatic Underwriters, Fed., Inc., U.S.A.*, 127 F.2d 754, 756 (9th Cir. 1942), on reh'g, 134 F.2d 233 (9th Cir. 1943) ("the only controversy disclosed by the record was a controversy between

LEE·SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

appellee and the Secretary of Commerce. With respect to that controversy, no judgment or 'decree of a conclusive character' could be granted, for the Secretary was not a party to the suit"). As such, declaratory judgment should immediately be denied as to Patenaude where there is no existing controversy between Brown and Patenaude.

**4. Declaratory and injunctive relief are equitable remedies and subject to the limitations of equitable remedies.**

Although declaratory judgments are a statutory rather than a traditional equitable remedy, the Supreme Court has characterized the declaratory judgment as 'essentially an equitable cause of action. *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 300, 63 S. Ct. 1070, 1074, 87 L. Ed. 1407 (1943). *See also Wilkes v. Internal Revenue Serv. Jacksonville Dist*., 509 F. Supp. 305, 312 (M.D. Fla. 1981) ("a declaratory judgment remains an equitable remedy subject to the discretion of the court"). Likewise, in deciding whether to grant injunctive relief, district courts apply traditional principles of equity. *Herb Reed Enters., LLC v. Fla. Entm't Mgmt.*, 736 F.3d 1239, 1249 (9th Cir. 2013) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). A plaintiff seeking an injunction must demonstrate that: (1) he has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1138 (9th Cir. 2006).

There is not room here to address all of the elements needed to fully analyze what is required for declaratory and/or injunctive relief. However, conclusory and factually unsupported allegations are insufficient to establish irreparable harm. *Herb Reed Enters*., 736 F.3d at 1250. Brown has not, and will not, suffer an irreparable injury. He represented to the bankruptcy court that the student loan debt was non-dischargeable, escaped paying on them in

LEE·SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

the State Case, and now seeks monetary damages on these facts in a case alleged as a class action. There is no allegation supporting either irreparable harm or that the remedies at law are inadequate. This is clearly a case where declaratory or injunctive relief is not appropriate.

**H. Dismissal should be with prejudice, since amendment is futile.**

On a Rule 12(b)(6) motion, the Court can dismiss a plaintiff's claims with prejudice where amendment of the pleadings would be futile. *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). "Futility alone can justify the denial of a motion to amend." *Id*. (citing *Nunes v. Ashcroft*, 348 F.3d 815, 818 (9th Cir.2003)). Here, amendment of the pleadings would be futile because Brown's claims are barred by such things as statute of limitations, judicial estoppel, and the bar on collateral attacks on bankruptcy orders, and no pleading will change that. As such, dismissal with prejudice is appropriate.

## IV. CONCLUSION

For the reasons set forth herein, and the joint defense brief being concurrently submitted, (Dkt 62), Patenaude requests that this Court dismiss all of Brown's claims against Patenaude with prejudice and dismiss Patenaude as a party from the lawsuit for all purposes.

DATED this 6th day of August, 2020.

LEE SMART, P.S., INC.

By: /s Marc Rosenberg
Marc Rosenberg, WSBA No. 31034
Of Attorneys for Defendant
Patenaude & Felix, APC

1800 One Convention Place
701 Pike St.
Seattle, WA 98101-3929
(206) 624-7990
mr@leesmart.com

DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)- 16
2:20-cv-00669-RSL
6679867.doc

LEE·SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

**CERTIFICATE OF SERVICE**

I hereby certify that on the date provided at the signature below, I electronically filed the preceding document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following individuals:

| | |
|---|---|
| Christina Henry | chenry@hdm-legal.com |
| Phillip Robinson | phillip@marylandconsumer.com |
| Scott Borison | scott@borisonfirm.com |
| Bradley St. Angelo | bstangelo@session.legal |
| Bryan C. Shartle | bshartle@sessions.legal |
| Justin Homes | jhomes@sessions.legal |
| Emily Harris | eharris@corrcronin.com |
| Benjamin C. Byers | bbyers@corrcronin.com |
| Albert J. Rota | ajrota@jonesday.com |
| Kristine E. Kruger | kkruger@perkinscoie.com |

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, to the best of my knowledge.

Dated this 6th day of August, 2020 at Seattle, Washington.

LEE SMART, P.S., INC.

By: /s Marc Rosenberg

Marc Rosenberg, WSBA No. 31034
Of Attorneys for Defendant
Patenaude & Felix, APC

1800 One Convention Place
701 Pike St.
Seattle, WA 98101-3929
(206) 624-7990
mr@leesmart.com

DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)- 17
2:20-cv-00669-RSL
6679867.doc

LEE·SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944