**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| OSURE BROWN, | No. 22-35244 |
| *Plaintiff-Appellant*, | |
| v. | D.C. No. 2:20-cv-00669-DGE |
| TRANSWORLD SYSTEMS, INC.; PATENAUDE & FELIX APC; US BANK, N.A.; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-1; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-2; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-1; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-2; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-3; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-1; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-2; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-1; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-2, | OPINION |
| *Defendants-Appellees*. | |

Appeal from the United States District Court
for the Western District of Washington
David G. Estudillo, District Judge, Presiding

Argued and Submitted February 17, 2023
Seattle, Washington

Filed July 14, 2023

Before:  William A. Fletcher, Richard A. Paez, and
Lawrence VanDyke, Circuit Judges.

Opinion by Judge Paez;
Concurrence by Judge VanDyke

## SUMMARY[*]

### Fair Debt Collection Practices Act / Bankruptcy Law

The panel affirmed in part and reversed in part the
district court's dismissal, for failure to state a claim, of an
action brought by Osure Brown, a student loan borrower
who had received a bankruptcy discharge, alleging that
defendants' attempts to collect debts that were discharged in
bankruptcy violated the Fair Debt Collection Practices Act
and the Bankruptcy Code.

Affirming the dismissal of Brown's claims that were
based on a violation of his bankruptcy discharge order, the

---

[*] This summary constitutes no part of the opinion of the court.  It has
been prepared by court staff for the convenience of the reader.

panel reiterated that *Walls v. Wells Fargo Bank*, 276 F.3d 502 (9th Cir. 2002), precludes FDCPA claims and other claims based on violations of Bankruptcy Code § 524.

The panel reversed the district court's dismissal, as barred by the one-year statute of limitations, of Brown's remaining FDCPA claim based on the theory that defendants knowingly brought a meritless post-discharge debt collection lawsuit because they knew they could not prove ownership of Brown's debts. Agreeing with other circuits, the panel held that certain litigation acts, including service and filing, can constitute distinct violations of the FDCPA that each trigger the statute of limitations. In determining which acts constitute independent violations, the court considers (1) the debt collector's last opportunity to comply with the statute and (2) whether the date of the violation is easily ascertainable. The panel concluded that Brown sufficiently alleged one post-filing FDCPA violation in the filing of an affidavit that presented a new basis, not contained in the complaint, to show that defendants owned the debts. Disagreeing with the Tenth Circuit, the panel further held that when service occurs before the filing of a suit, filing constitutes an independent violation of the FDCPA.

Concurring in the judgment, Judge VanDyke agreed with the outcome and much of the reasoning of the majority opinion, but he wrote that the rule announced in Part III.B of the majority opinion—that when service occurs before the filing of a suit, filing constitutes an independent violation of the FDCPA—was an unnecessary conclusion and failed to anticipate the intricacies that future cases are bound to raise.

## COUNSEL

Scott C. Borison (argued), Borison Firm LLC, Casper, Wyoming; Phillip Robinson, Consumer Law Center LLC, Silver Spring, Maryland; Christina L. Henry, Henry & DeGraaff PS, Seattle, Washington; for Plaintiff-Appellant.

Albert J. Rota (argued), Jones Day, Dallas, Texas; Justin H. Homes (argued), Bryan C. Shartle, and Bradley J. St. Angelo, Sessions Israel & Shartle LLC, Metaire, Louisiana; Emily J. Harris and Benjamin C. Byers, Coor Cronin LLP, Seattle, Washington; Marc Rosenberg, Lee Smart PS Inc., Seattle, Washington; Thomas N. Abbott, Perkins Coie LLP, Portland, Oregon; Kristine E. Kruger, Seattle, Washington; for Defendant-Appellees.

---

## OPINION

PAEZ, Circuit Judge:

In this case, we clarify what actions trigger the statute of limitations for a Fair Debt Collection Practices Act ("FDCPA") claim when the alleged violation of that statute occurs within the context of a debt collection lawsuit. We first reiterate that *Walls v. Wells Fargo Bank*, 276 F.3d 502 (9th Cir. 2002), precludes FDCPA and other claims based on violations of Bankruptcy Code § 524 (11 U.S.C. § 524). We then conclude that certain litigation acts—including service and filing—can constitute distinct violations of the FDCPA that each trigger the FDCPA's one-year statute of limitations. *See* 15 U.S.C. § 1692k(d). Accordingly, we affirm in part and reverse in part.

# I.

From 2003 to 2007, Plaintiff Osure Brown ("Brown") took out ten student loans to attend college in Washington state.  Defendants National Collegiate Student Loan Trusts (collectively, "the Trusts") ultimately purchased Brown's loans.  The Trusts appointed Defendant U.S. Bank as their special servicer.  The Trusts also hired Defendant Transworld Systems, Inc. ("Transworld"), to collect the defaulted loans, and hired Defendant Patenaude & Felix ("Patenaude"), a law firm specializing in debt collection, to represent them in debt collection actions.[1]

Several years after taking out the loans, Brown filed for Chapter 13 bankruptcy relief.  During his bankruptcy proceeding, the Trusts filed ten proof of claim forms for the outstanding student loan balance.  As part of his Chapter 13 repayment plan, Brown made payments to his creditors for thirty-six months, after which any remaining funds were distributed to certain "non-dischargeable student loan creditors," including the Trusts.  The bankruptcy court then issued an order of discharge for all dischargeable debts under 11 U.S.C. § 1328(a).  The parties dispute whether the loans owned by the Trusts were dischargeable, although that fact is not relevant to our analysis of the district court's dismissal under Federal Rule of Civil Procedure 12(b)(6).

After the bankruptcy discharge, Patenaude, on behalf of Transworld and the Trusts, sent Brown ten letters seeking to collect the remaining loan balance on each of Brown's ten loans.  When attempts to settle the debts were not successful, the Trusts turned to Washington state court to collect the

---

[1] We refer to the Trusts, U.S. Bank, Transworld, and Patenaude collectively as "Defendants".

debts.    They served Brown with ten summonses and complaints on February 16, 2019.  The Trusts then filed the complaints on April 5, 2019, which were later consolidated into one lawsuit.**[2]**

Along with the complaints, the Trusts filed an affidavit by Jennifer Audet ("the Audet Affidavit"), a Transworld employee, purporting to show that the Trusts owned the underlying student loan debt.   After Brown questioned whether the Audet Affidavit demonstrated that the debts were properly assigned to the Trusts in his summary judgment motion, the Trusts filed an affidavit by Bradley Luke ("the Luke Affidavit"), another Transworld employee, on October 7, 2019, which also purported to show that the Trusts owned the debts.  The state court ruled that the Luke Affidavit was inadmissible hearsay and excluded it. Because the Trusts could not prove that the debts had been properly assigned to them, the state court granted summary judgment to Brown, dismissing the debt collection suit.  The Trusts did not appeal the judgment.

On April 6, 2020, Brown filed this putative class action in Washington state court, alleging violations of the FDCPA and the bankruptcy court's discharge order on behalf of himself and others similarly situated.  He alleges two distinct classes under Federal Rule of Civil Procedure 23(c), a "FDCPA Class" and a "Bankruptcy Class."   In Count I, Brown alleges that Transworld and Patenaude violated the FDCPA under two alternative theories: (1) by violating his bankruptcy discharge order and (2) by filing a knowingly meritless debt collection lawsuit.    Count II requests

---

[2] We thus refer to the state court "action" or "lawsuit" in singular form. No party argues that the date of consolidation is relevant to the FDCPA statute of limitations defense.

declaratory and injunctive relief on the basis of Count I for the FDCPA Class against all Defendants. In Count III, Brown alleges that the Trusts violated Bankruptcy Code § 524(a) (11 U.S.C. § 524(a)) by seeking to collect debts that were discharged in bankruptcy. Count IV requests declaratory and injunctive relief on the basis of Count III for the Bankruptcy Class against the Trusts. Defendants removed the case to federal court and Brown promptly filed an amended complaint.

Defendants filed a combined five motions to dismiss. The district court considered all the motions together and granted them in February 2022. The district court concluded that most of Brown's claims were precluded by *Walls*, which held that discharged debtors do not have a private right of action under Bankruptcy Code § 524 and thus cannot bring FDCPA claims based on a violation of § 524. *See* 276 F.3d at 509–11; 11 U.S.C. § 524.[3] The district court then considered Brown's remaining FDCPA claim, which was based on the theory that Defendants knowingly brought a meritless debt collection lawsuit. The court concluded that dismissal was warranted under the FDCPA's one-year statute of limitations because more than a year had elapsed between when Defendants served Brown with their debt collection suit and when Brown filed his FDCPA claim. *See* 15 U.S.C. § 1692k(d). Brown timely appealed.

---

[3] Section 524 provides that a discharge order "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2).

## II.

We have jurisdiction under 28 U.S.C. § 1291. "A judgment dismissing a case on the pleadings is reviewed on appeal de novo." *Turner v. Cook*, 362 F.3d 1219, 1225 (9th Cir. 2004) (citation omitted). On review, we "must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Id.* (quoting *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986)) (cleaned up). We will affirm dismissal only if "no relief could be granted under any set of facts that could be proved consistent with the allegations." *Id.* (citations omitted). We also review de novo the question of whether a claim is barred by the statute of limitations. *See Bliss v. CoreCivic, Inc.*, 978 F.3d 1144, 1147 (9th Cir. 2020) (citations omitted).

## III.

We first address Brown's claims based on a violation of his bankruptcy discharge order. These claims are precluded by *Walls*. We then address Brown's remaining FDCPA claim—that Defendants knowingly brought a meritless debt collection lawsuit—and decide whether Brown has alleged any violations of the FDCPA that are not barred by the statute of limitations. We hold that he has.

## A.

In Counts I and III, Brown alleges that Defendants attempted to collect debts that were prohibited from collection by his bankruptcy discharge order. In Count I, Brown contends that Transworld and Patenaude violated the FDCPA by attempting to collect such debts. In Count III, Brown alleges that the Trusts violated 11 U.S.C. § 524(a) by attempting to collect debts discharged in bankruptcy. As the

district court correctly concluded, both claims are squarely foreclosed by *Walls*. *See* 276 F.3d at 509–11. Our decision in *Manikan v. Peters & Freedman, LLP*, 981 F.3d 712 (9th Cir. 2020), does not alter this conclusion.

In *Walls*, we held that a debtor who alleges a violation of a bankruptcy court's discharge order has no private right of action under 11 U.S.C. § 524. The appropriate remedy is contempt of court against the offending creditor pursuant to 11 U.S.C. § 105(a). *See Walls*, 276 F.3d at 506–09. Because § 105 allows "an aggrieved debtor to obtain compensatory damages, attorneys fees, and the offending creditor's compliance with the discharge injunction," "no further remedy is necessary." *Id.* at 507. In so holding, we explained that

> [i]mplying a private remedy . . . could put enforcement of the discharge injunction in the hands of a court that did not issue it (perhaps even in the hands of a jury), which is inconsistent with the present scheme that leaves enforcement to the bankruptcy judge whose discharge order gave rise to the injunction.

*Id.* at 509.

We also held that a debtor may not pursue an FDCPA claim based on a violation of the discharge order. *Walls*, 276 F.3d at 510–11. The plaintiff in *Walls* had sought relief under the FDCPA, claiming that Wells Fargo violated her discharge order by attempting to collect her debt after it had been discharged. *Id.* at 504. We concluded, however, that "[t]here is no escaping that Walls's FDCPA claim is based on an alleged violation of § 524." *Id.* at 510. To allow her

to bring such a claim would allow a private right of action "through the back door." *Id.* at 510. Her claim would "necessarily entail[] bankruptcy-laden determinations," which are best left to the bankruptcy court. *See id.*

Brown's Count III claim, entirely based on an alleged violation of Bankruptcy Code § 524, is squarely precluded by the first holding in *Walls*.[4] *See* 276 F.3d at 507–09. The Count IV claim, which seeks declaratory and injunctive relief on the basis of Count III, also fails because these remedies are not stand-alone claims, and they do not survive the dismissal of Count III when Brown has pled no facts suggesting that any of the Defendants are likely to sue him again. *See City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878–79 (9th Cir. 2022); *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941). Moreover, any declaration that certain debts have been discharged would need to be made by the bankruptcy court.[5] *See Stout v. Prussel*, 691 F.2d 859, 861 (9th Cir. 1982) ("It has long been the rule in

---

[4] The Trusts also argue that Brown was required to assert his claims that they did not have the right to enforce his loans and that those loans were discharged as a compulsory counterclaim in the state court litigation. Because Brown's claims are precluded by *Walls*, we do not reach this issue.

[5] Despite Brown's argument, the Supreme Court's decision in *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019), does not grant the district court authority to issue declaratory and injunctive relief relating to bankruptcy discharges. *Taggart* concerned the legal standard for holding a creditor in civil contempt when the creditor attempts to collect a debt in violation of a discharge order. *Id.* at 1801. It did not concern a district court's jurisdiction to enforce a discharge order. The Court had no reason to address that question because a bankruptcy court issued the civil contempt order in *Taggart*. *Id.* at 1800.

this circuit that the right to a discharge in bankruptcy is left to the sound discretion of the bankruptcy court.”).

To the extent Brown's FDCPA claim in Count I is based on the theory that Transworld and Patenaude improperly sought to collect debts discharged in bankruptcy, the claim fails under the second holding in *Walls*. *See* 276 F.3d at 510. Brown disputes this conclusion, arguing that our decision in *Manikan* narrowed *Walls* to allow his claim. This argument is incorrect.

In *Manikan*, we clarified that *Walls* does not preclude claims under the FDCPA when those claims are not based on a violation of a bankruptcy discharge order. 981 F.3d at 714. There, Manikan fully paid a debt to his homeowner's association through his Chapter 13 bankruptcy repayment plan two years before the bankruptcy court entered a discharge order. *Id.* at 714, 717. Nevertheless, after the entry of the discharge order, a debt collector attempted to serve Manikan with a Notice of Default. *Id.* at 714–15. Manikan sued under the FDCPA because the debt collector attempted to collect a debt that Manikan no longer owed. *Id.* at 714–15. We held that *Walls* did not preclude his claim because “whether an unfair debt collection practice occurred does not depend on issuance or enforcement of the discharge order.” *Id.* at 716. Rather, “even if Manikan had never received a discharge in his bankruptcy case, he could still assert [that the defendant] acted unlawfully by attempting to collect a debt that he fully satisfied.” *Id.* at 717. His FDCPA claims were “therefore premised on a wholly independent theory of relief.” *Id.* Unlike in *Walls*, the FDCPA claims in *Manikan* were not “inextricably intertwined with bankruptcy issues.” *Id.*

Brown cannot make the same argument.  His theory is identical to the one presented in *Walls*: that the Defendants violated the discharge order by attempting to collect debts that were discharged.  *See Walls*, 276 F.3d at 504.  Such a claim necessarily requires a determination of whether the debt was discharged, which is "within the exclusive jurisdiction of the bankruptcy court." *Banks v. Gill Dist. Ctrs., Inc.*, 263 F.3d 862, 868 (9th Cir. 2001).  As in *Walls*, Brown's claim is "premised on a violation of a bankruptcy discharge order."  *Manikan*, 981 F.3d at 716.  Indeed, Brown's definition for his proposed FDCPA class requires that each class member received a bankruptcy discharge. Allowing Brown's FDCPA claims to proceed would "circumvent the remedial scheme of the [Bankruptcy] Code under which Congress struck a balance between the interests of debtors and creditors by permitting (and limiting) debtors' remedies for violating the discharge injunction to contempt." *Walls*, 276 F.3d at 510.  Brown's Count I claim thus fails on this theory.

## B.

Brown's Count I claim also alleges an alternative FDCPA theory, arguing that because Transworld and Patenaude knew that they could not prove ownership of Brown's debts, they violated the FDCPA by bringing a knowingly meritless debt collection lawsuit.[6]  Because this

---

[6] In support of this theory, Brown cites several FDCPA sections, including: § 1692e(2)(A) (prohibiting debt collectors from making a "false representation of the . . . legal status of any debt"); § 1692e(5) (prohibiting debt collectors from "threat[ening] to take any action that cannot legally be taken or that is not intended to be taken"); § 1692e(10) (prohibiting debt collectors from using "any false representation or deceptive means to collect or attempt to collect a debt"); and § 1692f

theory is not "premised on a violation of a bankruptcy discharge order," *Manikan*, 981 F.3d at 716, it is not foreclosed by *Walls*.  The district court acknowledged this distinction but concluded that Count I nevertheless failed because—to the extent it was based on the meritless lawsuit theory—the claim was time-barred by the FDCPA's one-year statute of limitations, as Brown was required to file the FDCPA claim one year from the date the state court complaints were served, rather than one year from the date the complaints were filed.  To so conclude, the district court looked to Washington law, which provides that a plaintiff commences a lawsuit when a complaint is served *or* filed, whichever comes first.  *See* Wash. Rev. Code § 4.28.020; *Seattle Seahawks v. King County*, 913 P.2d 375, 376 (Wash. 1996).  Brown challenges this conclusion, arguing that he has alleged several independent violations of the FDCPA, including the filing of the complaints on April 5, 2019 and the filing of the Luke Affidavit on October 7, 2019, each of which commences a one-year statute of limitations under the FDCPA and render timely the April 6, 2020 filing of this lawsuit (April 5, 2020 was a Sunday).  *See* Fed. R. Civ. P. 6(a)(1)(c) (explaining that if the last day to file falls on a Sunday, the plaintiff may file the next business day); *see also Hart v. United States*, 817 F.2d 78, 80 (9th Cir. 1987) (applying Rule 6(a) to a federal statute).

We hold that Brown correctly asserts that some litigation acts can constitute independent FDCPA violations and that each such violation triggers its own one-year statute of limitations under the FDCPA.  *See* 15 U.S.C. § 1692k(d) (creating a one-year statute of limitations for each violation

(prohibiting debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt").

of the FDCPA).   After discussing relevant FDCPA precedent, we address the alleged post-filing violations, and then address the distinction between service and filing. Because Brown has alleged discrete violations after the date of service of the complaints, we reverse.

**1.**

Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors" in order to "protect consumers."  15 U.S.C. § 1692(e).  "The FDCPA pursues [this purpose] by imposing affirmative requirements on debt collectors and prohibiting a range of debt-collection practices." *Rotkiske v. Klemm*, 140 S. Ct. 355, 358 (2019) (citing 15 U.S.C. §§ 1692b–1692j).   While Congress's "ultimate objective was to protect consumers from harassment by debt collectors, Congress intended to achieve this purpose by regulating the conduct of debt collectors." *Mattson v. U.S. W. Commc'ns, Inc.*, 967 F.2d 259, 261 (8th Cir. 1992) (citing 15 U.S.C. § 1692(e)).  "Because the statute is broadly remedial, we liberally construe the FDCPA in favor of consumers."  *McAdory v. M.N.S. & Assocs., LLC*, 952 F.3d 1089, 1092 (9th Cir. 2020) (citing *Hernandez v. Williams, Zinman & Parham PC*, 829 F.3d 1068, 1078–79 (9th Cir. 2016)).

Although we perhaps have not yet said so explicitly, every alleged FDCPA violation triggers its own one-year statute of limitations as provided in §1692k(d).  *See Bouye v. Bruce*, 61 F.4th 485, 490, 491 n.5 (6th Cir. 2023) (explaining that at least five circuits "adhere to the view that every alleged violation of the FDCPA has its own [one-year] statute of limitations"); *Solomon v. HSBC Mortg. Corp.*, 395 F. App'x 494, 497 (10th Cir. 2010) (collecting cases) ("For statute-of-limitations purposes, discrete violations of the

FDCPA should be analyzed on an individual basis."). This rule is clear from the text of the statute. Under the FDCPA, consumers can bring private actions "in any appropriate United States district court without regard to the amount in controversy . . . within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). The Supreme Court recently clarified that there is no "discovery rule" for FDCPA claims, so "absent the application of an equitable doctrine, the statute of limitations in § 1692k(d) begins to run on the date on which the alleged FDCPA violation occurs, not the date on which the violation is discovered." *Rotkiske*, 140 S. Ct. at 358. Thus, to determine when the FDCPA's statute of limitations begins to run, the key question is what act constitutes the occurrence of an FDCPA violation. The Supreme Court has said only that whether something "occurred" under the FDCPA means whether it "actually happened." *Id.* at 360.

Although the FDCPA clearly "appl[ies] to lawyers engaged in litigation," *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995), it is less clear which litigation acts can constitute independent FDCPA violations when the underlying FDCPA violation is a debt collection lawsuit. As the Supreme Court has explained, "it would be odd if the [FDCPA] empowered a debt-owing consumer to stop the 'communications' inherent in an ordinary lawsuit and thereby cause an ordinary debt-collecting lawsuit to grind to a halt." *Id.* at 296. While making clear that Congress did not intend to "create a [] broad[] exception[] for all litigating attorneys" in the FDCPA, the Court explained that it is not necessary to read "ordinary court-related document[s]" as violating the FDCPA. *See id.* at 296–97. Nevertheless, the FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity

consists of litigation." *Id.* at 299.[7]  In short, some litigation acts may constitute independent FDCPA violations; otherwise, debt collectors could commit unlimited FDCPA violations after commencing an improper debt collection action.

We have considered FDCPA claims related to debt collection lawsuits in two prior cases.  In *Naas v. Stolman*, 130 F.3d 892 (9th Cir. 1997), we noted that we had never before "determined at which point the statute of limitations begins to run when the alleged violation of the Act is the filing of a lawsuit." *Id.* at 893.  We concluded that an FDCPA violation occurred when a debt collector filed an allegedly improper debt collection lawsuit, not when the lawsuit was decided. *Id.* To so conclude, we considered that "[f]iling a complaint is the debt collector's last opportunity to comply with the Act, and the filing date is easily ascertainable." *Id.*; *see also id.* (discussing the Eighth Circuit's decision in *Mattson*, 967 F.2d at 261, which relied on these considerations to determine that an FDCPA violation occurred when abusive debt collection letters were mailed, but not received).  The statute of limitations for the FDCPA claim thus ran from the date the debt collection lawsuit was filed.  We had no reason to consider whether the date of service affected this analysis.

In *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939 (9th Cir. 2011), we held that certain post-

---

[7] This rule does not mean that lawyers can be found liable for any missteps in the litigation process.  Lawyers acting as debt collectors "may not be held liable if [they] 'show[] by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.'" *Heintz*, 514 U.S. at 295 (quoting 15 U.S.C. § 1692k(c)).

filing litigation acts can constitute FDCPA violations. *Id.* at 951–52. In *McCollough*, the debt collector served requests for admission that asked the debtor to admit facts that were not true, even though the debt collector "had information in its possession that demonstrated the untruthfulness of the requested admissions." *Id.* at 952. The debt collector also did not explain to the debtor that "the requests would be deemed admitted after thirty days." *Id.* Because we "consider the debt collector's conduct from the standpoint of the least sophisticated debtor," we held that this conduct violated the FDCPA as a matter of law. *Id.* By utilizing abusive discovery procedures, the debt collector committed an FDCPA violation through its litigation conduct. That decision, however, did not directly address the statute of limitations.**[8]**

To determine whether a litigation act constitutes an independent violation of the FDCPA and thus has its own statute of limitations, we now derive the following test from *Naas*: When the alleged FDCPA violation is the bringing of a debt collection lawsuit, we determine which actions constitute independent FDCPA violations by considering (1) the debt collector's last opportunity to comply with the

---

[8] Our sister circuits have also held that mid-litigation acts can constitute new FDCPA violations, but have done so without addressing statute of limitations issues. *See, e.g.*, *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 234 (4th Cir. 2007) (holding that debtor properly alleged an FDCPA violation based on the theory that "the summary judgment motion itself contained false statements"); *Bentrud v. Bowman, Heintz, Boscia & Vician, P.C.*, 794 F.3d 871 (7th Cir. 2015) (reviewing whether motion for summary judgment violated the FDCPA); *Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1295 (11th Cir. 2015) ("[D]ocuments filed in court in the course of judicial proceedings to collect on a debt, like [a] sworn reply, are subject to the FDCPA.").

statute and (2) whether the date of the violation is easily ascertainable.  *See* 130 F.3d at 893.

Under this test, if a debt collector decides to take a certain action during litigation, courts must assess whether that act was the debt collector's "last opportunity to comply" with the FDCPA.  Examples of litigation-related acts that could independently violate the FDCPA include a debt collector serving a request for admission of facts it knows are false or filing an affidavit containing new information it knows to be false.  *See, e.g.*, *McCollough*, 637 F.3d at 652. The debtor must, however, allege "specific actions" taken by the debt-collector that show "more than another attempt to argue that a violation arising from the filing of a debt-collection suit continues as long as the suit remains pending." *Gajewski v. Ocwen Loan Servicing*, 650 F. App'x 283, 287 (7th Cir. 2016), *reh'g en banc denied*; *see also Bouye*, 61 F.4th at 491 (quoting *Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 259 (6th Cir. 2014)) ("[T]he violations that occur within the limitations window must be discrete violations; they cannot be the later effects of an earlier time-barred violation.").  Put simply, to plausibly allege that a litigation act is a violation of the FDCPA, the debtor must aver sufficient facts to show that the debt collector's act is a *new* violation of the FDCPA.  Under our newly formulated test, the focus appropriately remains on the debt collector's actions.  There is a difference between litigating a case and committing affirmative FDCPA violations during that litigation.

With this framework in mind, we turn to Brown's claims.

## 2.

We first consider Brown's argument that several of Defendants'   post-filing   acts   constituted   independent

FDCPA violations. These include Patenaude mailing the filed lawsuits and the affidavit to Brown on April 8, 2019; Transworld submitting the Luke affidavit to replace the Audet affidavit in the state court action on October 7, 2019; and the state court hearing on October 24, 2019, including statements made by Patenaude lawyers at that hearing.

Two circuits have addressed mid-litigation acts and the FDCPA's statute of limitations. Both concluded that when certain acts constitute independent violations of the FDCPA, those acts will trigger their own one-year statutes of limitations under § 1692k(d). In *Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685 (8th Cir. 2017), the Eighth Circuit concluded that the debtor plausibly alleged an FDCPA violation on the basis of a law firm's request for a continuance on the October 5, 2015 trial date. *Id.* at 695. The law firm argued that the FDCPA claim was time-barred because the request was simply a "permissible litigation tactic" in the underlying debt collection lawsuit, which was filed in June 2014, and the debtor filed the FDCPA claim over a year later on February 5, 2016. *Id.* at 689–90. The Eighth Circuit noted that not "every continuance request violates the FDCPA." *Id.* at 696. But the law firm had a pattern of falsely threatening to proceed to trial, showing up on the trial date with no witnesses or evidence, and—if the debtor appeared with counsel—requesting a continuance. *See id.* at 689–90. Litigation tactics are not insulated from liability when they violate the FDCPA, *id.* at 696 (citing *Heintz*, 514 U.S. at 296), and in *Demarais*, the debtor had plausibly alleged that the law firm had threatened to take action that it did not intend to take in violation of § 1692e(5), *id.* at 695. In so holding, the Eighth Circuit explained that the district court improperly looked to whether the alleged violation "relate[d] back" to the complaint. *Id.* at 694.

Instead, the district court should have looked at the lawyer's actions at the October 5 trial and "determined whether [the plaintiff] plausibly alleged that [the law firm] violated the FDCPA on that date." *Id.*

The Sixth Circuit also recently decided that a mid-litigation misrepresentation carried its own statute of limitations, such that a debtor's FDCPA claim based on that act was not time-barred. The facts of that case are similar to those presented here concerning the filing of the Luke Affidavit. In *Bouye v. Bruce*, attorney James Bruce represented Mariner Finance, LLC, an entity that had bought debtor Zahra Bouye's debt from Winner Furniture. 61 F.4th at 487. After Bouye defaulted on her retail installment contract ("RIC"), Bruce filed suit in state court on behalf of Mariner on March 4, 2019. The RIC attached to the complaint, however, did not establish that Winner had ever properly transferred the debt to Mariner such that Mariner had a right to sue on the debt. *Id.* at 487. On July 2, 2019, Bruce supplemented the record with a second, updated RIC that showed a Winner employee had authorized the transfer of the debt to Mariner. *Id.* at 487–88. On March 19, 2020, Bouye sued Bruce in federal court, alleging a violation of the FDCPA based on the theory that "Bruce, on Mariner's behalf, doctored the RIC mid-litigation to make it look like the debt assignment from Winner to Mariner was proper." *Id.* at 488. Bruce argued that Bouye's claim was time-barred, as she brought suit more than a year after the state court lawsuit was filed.

The Sixth Circuit rejected this argument, explaining that the alleged filing of a false RIC constituted a new FDCPA violation. *Id.* at 491. By filing an updated RIC and moving for summary judgment on that basis, Bruce made an "affirmative[] misrepresent[ation] to the [c]ourt." *Id.* The

claim for that misrepresentation "would have started accruing either [] when Mariner filed the second RIC, or . . . when Mariner moved for summary judgment based on that filing." *Id.* (finding it unnecessary to decide which date triggered the statute of limitations). The court explained that FDCPA violations must be discrete instances, and the replacement of the RIC was discrete from the initiation of the lawsuit:

> Bouye's single claim is independent of Mariner's initial filing of the lawsuit—not a continuing effect of it—because it is a standalone FDCPA violation. This is not a case where Bruce simply "reaffirmed" the legitimacy of the state suit throughout the litigation. Rather, the allegation is that Bruce introduced an RIC with a false assignment of debt that occurred after the lawsuit was filed. If we were to only consider the date Mariner filed suit . . . without regard to subsequent FDCPA violations within that lawsuit, we would create a rule that disregards the fact that § 1692k(d) creates an independent statute of limitations for each violation of the FDCPA.

*Id.* at 493 (citing *Slorp*, 587 F. App'x at 259).

We agree that when a debt collector commits an FDCPA violation that does more than "simply reaffirm[] the legitimacy of the state suit," *id.* (internal quotation marks omitted), that new violation can constitute a "last opportunity to comply" with the FDCPA, *see Naas*, 130 F.3d at 893. Assuming the date of that action is easily

ascertainable, *id.*, it may form the basis of a new FDCPA violation. Whether a lawyer appropriately litigates a case or engages in conduct that violates the FDCPA is a fact-intensive inquiry that requires a case-by-case approach. *See Hemmingsen v. Messerli & Kramer, P.A.*, 674 F.3d 814, 819 (8th Cir. 2012) ("[T]he diverse situations in which potential FDCPA claims may arise during the course of litigation, and the Supreme Court's caution in *Heintz* . . . counsel against anything other than a case-by-case approach.").

In this case, we conclude that Brown has alleged one post-filing FDCPA violation: the filing of the Luke Affidavit. By filing a new affidavit that attempted to show that the Trusts owned the debts, Defendants did more than "reaffirm" the original complaint. Rather, they presented a new basis—not contained in the complaint—to show that the Trusts owned the debts. When Defendants ceased to rely on the Audet Affidavit and moved forward with the Luke Affidavit, this discrete event created a "last opportunity to comply" with the FDCPA. *See Naas*, 130 F.3d at 893. The filing date is also easily ascertainable. *See id.* While Brown has thus alleged a violation, we do not address the merits of his claim.

Brown's remaining alleged violations, which include the mailing of the lawsuits and arguments made at the state court summary judgment hearing, are standard litigation events that reasonably follow the commencement of a lawsuit. They do not constitute final opportunities to comply with the FDCPA and therefore are not independent FDCPA violations.

**3.**

Our analysis, however, does not end there. As other circuits have explained, there is no "continuing violation

doctrine" in the FDCPA context, which would allow plaintiffs to "sweep in a series of component acts that comprise a claim, if one of those acts was within the limitations period." *Bouye*, 61 F.4th at 493. Rather, "the only kinds of claims a plaintiff can bring are discrete violations of the FDCPA." *Id.* Thus, finding that the Luke Affidavit is an independent violation does not allow Brown to include actions before October 7, 2019, the date on which the Luke Affidavit was filed, in his FDCPA claim. But Brown also argues that Defendants committed an independent FDCPA violation on April 5, 2019, when they filed the complaints, even though they had previously served him with the complaints. This argument requires us to consider the distinction between service and filing.

Only the Tenth Circuit appears to have considered this issue head on. In *Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002), the court held that when service occurs after the filing of a debt collection lawsuit (the reverse of our situation here), the statute of limitations to bring an FDCPA claim runs from service, not from filing.[9] *Id.* at 1113. The Tenth Circuit held that "the plaintiff does not have a 'complete and

_____

[9] Other circuits have interpreted *Naas* and *Johnson* as reaching opposite conclusions. "Where FDCPA claims are premised upon allegations of improper pursuit of debt collection litigation, courts are split as to when the FDCPA's one-year statute of limitations begins to run: some have held that such claims accrue upon filing the underlying collection action, [citing *Naas*], while others use the date on which the purported debtor was served with the complaint [citing *Johnson*]." *Schaffhauser v. Citibank*, 340 F. App'x 128, 130–31 (3d Cir. 2009) (finding it unnecessary to reach the issue); *accord Ruth v. Unifund CCR Partners*, 604 F.3d 908, 914 (6th Cir. 2010) (same). There is no conflict between these two cases. We had no reason to consider the difference between service and filing in *Naas*, as it made no difference to the overall timeliness of the plaintiff's suit.

present cause of action,' and thus no violation occurs within the meaning of § 1692k(d)," until both filing and service have occurred. *Id.* at 1113 (quoting *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp.*, 522 U.S. 192, 201 (1997)). The court explained that if a debt collector files a suit but then "elects to call off the process server and abandon the collection suit before the plaintiff has been served," *id.* at 113–14, the abandoned lawsuit does not constitute an "attempt to collect" the debt under the FDCPA, *id.* at 114. "[T]he fact that a party that has committed half an actionable wrong is likely to commit the other half cannot suffice to create a complete and present cause of action." *Id.*

At least as it applies to the facts here, we reject the *Johnson* court's two-halves-make-a-whole approach. *Accord Tyler v. DH Capital Mgmt.*, 736 F.3d 455, 463–64 (6th Cir. 2013) (rejecting *Johnson*'s approach and holding that filing alone may constitute an FDCPA violation). When service occurs first, *Johnson*'s reasoning does not make sense. *See* 305 F.3d at 113–14. Service alone can be a violation of the FDCPA, as it is the exact kind of threatening action Congress intended to prohibit. Indeed, it is clearly barred by § 1692e(5), which lists as a violation of the FDCPA "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken." If a debt collector serves a debtor with no intention of filing the complaint, the debt collector is clearly threatening legal action in violation of the FDCPA. Because service does not require the payment of filing fees, it is not hard to imagine a debt collector engaging in abusive service practices to coerce alleged debtors into payment. But filing may also constitute an independent violation of the FDCPA, especially because it can cause additional harm to the debtor. A pending legal action "could be a red flag to the debtor's other creditors and

anyone who runs a background or credit check, including landlords and employers." *Tyler*, 736 F.3d at 464. The debtor may thus have additional FDCPA claims under § 1692e and § 1692f once the lawsuit is filed.

Applying our newly derived test here, we hold that when service occurs before filing, filing constitutes an independent violation of the FDCPA. Under the first factor of the test, service is not a debt collector's "last opportunity to comply" with many FDCPA prohibitions. *See Naas*, 130 F.3d at 893. Because filing requires an additional act that can cause new harm to the debtor, filing is the debt collector's last opportunity to comply. This test correctly places the onus on debt collectors to analyze their actions to make sure they comply with the FDCPA. *See Mattson*, 967 F.2d at 261 (explaining that Congress intended to protect consumers by "regulating the conduct of debt collectors" (citing 15 U.S.C. §1692(e)); *Tyler*, 736 F.3d at 464 ("[T]he focus should be on the debt collector's actions."). Filing is not merely "doubling down" on the initial act of service; it requires an affirmative step forward. After serving a complaint, a debt collector could learn new information about the validity of the case or decide against filing for any number of reasons. Thus, while service alone can constitute an FDCPA violation, the final step of filing presents a "last opportunity" to comply with the FDCPA when the alleged violation is the bringing of a knowingly meritless lawsuit. *See Naas*, 130 F.3d at 893. And as to the second factor, the filing date is easily ascertainable. *See id.*

Because we conclude that service and filing are independent FDCPA violations, each act has its own one-year statute of limitations under § 1692k(d). Thus, Brown had one year from the date of filing of the state court action

to bring his FDCPA claim, and his lawsuit is timely.**[10]**  We reverse the district court's dismissal of Count I.  Because Count I survives, we also reverse and remand Brown's Count II claim for declaratory and injunctive relief for consideration consistent with this opinion.

## C.

Finally, Brown argues that because the state court found that the Trusts lacked admissible evidence to demonstrate ownership of the debt, we must give "full faith and credit" to that decision by directing judgment for Brown on his FDCPA claim.  This argument fails.  The state court found that Defendants failed to present sufficient evidence to show that they owned the debts, but did not address the issue in this case: whether Defendants knowingly brought a meritless lawsuit in violation of the FDCPA.  The Supreme Court has explicitly said that it does "not see how the fact that a [debt-collection] lawsuit turns out ultimately to be unsuccessful could, by itself, make the bringing of it an 'action that cannot legally be taken.'"  *Heintz*, 514 U.S. at 295–96 (quoting 15 U.S.C. § 1692e(5)).  While the state court's decision could possibly be evidence in support of Brown's FDCPA claim, this lawsuit does not in any way "relitigate" the issues in the

---

[10] Transworld and Patenaude also argue that certain alleged violations, such as filing, are not actionable because they were directed at Brown's counsel, not Brown.  This position is plainly wrong.  *See, e.g.*, *Sayyed*, 485 F.3d at 232 ("A communication to debtor's counsel, regarding a debt collection lawsuit in which counsel is representing the debtor, plainly qualifies as an indirect communication to the debtor."); *Demarais*, 869 F.3d at 692 (recognizing that discovery requests could constitute FDCPA violations even though they were sent "directly" to plaintiff's counsel); *Miljkovic*, 791 F.3d at 1300 ("[W]e find it impossible to conclude, under the plain language of the FDCPA, that a debt collector's communications to an attorney representing a consumer are not covered by the Act.").

state court action.  *See Dodd v. Hood River County*, 136 F.3d 1219, 1224 (9th Cir. 1998).

**AFFIRMED in part, REVERSED in part and REMANDED.**

The parties shall bear their own costs on appeal.

---

VANDYKE, Circuit Judge, concurring in the judgment:

I agree with the outcome and much of the reasoning of the majority opinion, but I write separately because the rule announced in Part III.B.3 of the majority's opinion— "hold[ing] that when service occurs before filing, filing constitutes an independent violation of the FDCPA"—is an unnecessary conclusion that carries our circuit into the unknown without anticipating the intricacies future cases are bound to raise.

*First*, the rule is unnecessary.  In this case, the limitation periods began when the trusts filed the affidavits of Jennifer Audet and Bradley Luke on April 5, 2019, and October 7, 2019, respectively.  Those periods ended on April 6, 2020, and October 7, 2020, respectively.  15 U.S.C. § 1692k(d); Fed. R. Civ. P. 6(a)(1)(c).  Brown timely filed his complaint on April 6, 2020, alleging that the trusts had knowingly filed meritless debt collection suits.  If those affidavits knowingly misrepresented that the trusts owned Brown's loan debt, the filing of each affidavit constituted a discrete violation of the FDCPA and marked the last opportunity to not violate the FDCPA with respect to that affidavit.  *See Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997).  Since I agree with the majority that the filing of an allegedly false affidavit triggers the limitations period for the FDCPA, *see Bouye v. Bruce*,

61 F.4th 485, 490–91 (6th Cir. 2023), the concurrent filing of Jennifer Audet's affidavit with the trusts' complaints makes it unnecessary to decide (as the majority nonetheless does) whether complaints filed after service independently violate the FDCPA.  Since Brown's claim that the trusts filed knowingly meritless collection suits was raised within one year of the underlying affidavits, it is gilding the lily to decide whether the trusts' *complaints* also triggered the FDCPA's limitations period.

*Second*, it's a much harder question whether the filing of a complaint *after* service constitutes an independently wrongful act under the FDCPA for purposes of calculating a new limitations period, and I therefore hesitate to set down new precedent in that regard when it's unnecessary.  A comparative illustration will underscore the difficulty: In instances where service of process *post-dates* the filing of a complaint, it is hard to discern when an actionable wrong has occurred because a debtor typically feels threatened at the moment of service, not the moment of filing.  Debtors are often unaware of a collection suit that has been filed until service is rendered.  In such situations, it is arguable that an adverse action has not been consummated until the date of service.  Indeed, that's what the Tenth Circuit decided in *Johnson v. Riddle*, 305 F.3d 1107, 1113–14 (10th Cir. 2002).  The *Johnson* court decided that service rendered after filing was an indispensable "half" of an "actionable wrong," and only with service did the limitations period begin to run on the whole action.  *Id.*  That has some intuitive appeal.  After all, a filed complaint might be abandoned before a debtor is haled into court.  When that happens, the harm arguably never reaches fruition.

But where, as here, service *pre-dates* the filing of a complaint, a debtor receives the threat of legal action first.

So it is hard to see how filing a complaint after service is sufficiently distinguishable from other downstream litigation activities that do not constitute separate adverse actions. *See, e.g.*, *Heintz v. Jenkins*, 514 U.S. 291, 296 (1995) (noting it would be odd to interpret the FDCPA as allowing an "ordinary court-related document" or communication "inherent in an ordinary lawsuit" to cause "an ordinary debt-collecting lawsuit to grind to a halt"). The majority appears to recognize this difficulty and suggests that "filing *may* also constitute an independent violation of the FDCPA" because it "*can* cause additional harm to the debtor" and "*could be* a red flag" for a debtor's credit score. (Emphasis added.) But such indeterminate consequences do not merit the majority's unconditional holding that, in all instances "when service occurs before filing, filing constitutes an independent violation of the FDCPA." It is far from certain that the post-service filing of a complaint constitutes an independently actionable wrong, nor does Brown assert that the trusts' complaints harmed his credit. By contrast, Brown *does* assert that the affidavits were knowingly false.

*Third*, to the extent the majority views the post-service filing of a complaint as a debt collector's "last opportunity to comply with" the FDCPA, that is a strained reading of *Naas*, 130 F.3d at 893. *See Johnson*, 305 F.3d at 1114 n.4 ("[T]he choice between accrual upon filing and accrual upon service was not before the court in *Naas*."). Pre-filing service of a meritless complaint *already* constitutes a failure to comply with the FDCPA. *See* 15 U.S.C. § 1692e(5). So the term "last opportunity to comply" can't really mean the last opportunity to rectify a previous wrong or to reverse prior non-compliance. Otherwise, every litigation action would constitute another "last opportunity to comply," since

every such action marks a missed opportunity to turn back and cease from litigating an improper debt-collection action. Instead, the phrase obviously meant something more like the "last clear chance to avoid" the discrete commission of a different FDCPA violation.  Here, that discrete misstep was clearly the service of process, not the subsequent filing of the complaint.

It may very well be that *some* meritless debt collection complaints filed after service constitute actionable wrongs under the FDCPA, but because that is a factually contingent inquiry that should turn on the facts and allegations of each case, I cannot endorse the majority's broader rule and needlessly prejudge such future cases.  Here, it is enough that the filing dates of the affidavits show that the district court erred in holding that Brown's claim that the trusts knowingly filed meritless collection suits was time-barred, and I therefore respectfully concur in the judgment.