1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# EXHIBIT A

MOTION FOR LEAVE TO FILE PLAINTIFFS'
CONSOLIDATED COMPLAINT - 12

**SEATTLE CONSUMER JUSTICE, P.S.**
10728 16TH AVE SW
SEATTLE, WASHINGTON  98146
telephone (206) 330-0595

The Honorable David Estudillo

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| OSURE BROWN AND TOMMY BROWN, *on their own behalf and on behalf of other similarly situated persons*, | Case No: 2:20-cv-00669 - DGE |
| Plaintiff, | Consolidated with |
| v. | Case No. 2:20-cv-00680-DGE |
| TRANSWORLD SYSTEMS, INC., PATENAUDE & FELIX, APC, U.S. BANK, NA. NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-1, NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-2, NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-1, NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-2, NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-3, NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-1, NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-2, NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-1, and NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-2, | CONSOLIDATED COMPLAINT (JURY DEMAND) |
| Defendants. | |

**SEATTLE CONSUMER JUSTICE, P.S.**
10728 16ᵀᴴ Avᴇ SW
SEATTLE, WASHINGTON  98146
telephone (206) 330-0595

Plaintiffs Osure Brown and Tommy Brown bring this Consolidated Complaint, on his their behalf and on behalf of similarly situated persons, brings this action by his their undersigned counsel and says in support:

## I.   **INTRODUCTION**

1.      This is a consumer class action arising from the Defendants' alleged coordinated efforts to enforce consumer debts through pre-litigation collection actions and through the use of affidavits that allege to be based on personal knowledge when they are not; and through the presentation of documents that have been altered by the addition of information that was not part of the original documents, creating the purported debts and their transfers from the original creditors. In sum, Defendants' conduct amounts to an effort a student loan scheme to lead consumers and the courts to believe that the Defendants have the right to collect millions of dollars in consumer debts when they cannot show a satisfactory factual basis for their claims.

1.      brought under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") by victims of a student loan scheme against the Defendants that have together collected millions of dollars in loan payments from them.

2.      The National Collegiate Student Loan Trusts ( the "the Trusts" or the "NCSLT Trusts") were created between 2001 and 2007 for the purpose of acquiring private student loan debt. The Trusts collectively claim to own hundreds of thousands of private student loans with a face value of approximately $12 billion. The Trusts do not have employees. Instead, all actions taken by the Trusts related to loan servicing and debt collection are performed by third parties.

3.      The Defendants have worked together and collectively orchestrated to collect and attempt to collect debts through unfair and/or deceptive methods of collection.

4.      This action concerns the unlawful actions including the debt collection practices by Defendants National Collegiate Student Loan Trusts 2004-1, 2004-2, 2005-1, 2005-2, 2005-3, 2006-1, 2006-2, 2007-1, and 2007-2 ("Trusts" or "NCSLT Trusts") that are directed and controlled by the Defendant, U.S. Bank, N.A. in its dual roles as an Indenture Trustee and Special Servicer for the Trusts. Transworld Systems, Inc. ("TSI") is Special Subservicer

SEATTLE CONSUMER JUSTICE, P.S.
10728 16TH AVE SW
SEATTLE, WASHINGTON 98146
telephone (206) 330-0595

Transworld Systems, Inc. ("TSI") who in turn hires debt collection law firms that TSI directs and controls under its "Agency and Attorney Network." The firm hired by TSI for the collection actions filed against the Plaintiffs is are the Defendant, Patenaude & Felix, APC ("P & F"). The Trusts, US Bank, TSI and P & F are collectively the "Defendants". Specifically, the Defendants knew but recklessly disregarded that the Trusts do not have the right to collect any sums from the Plaintiffs and the Class members for these reasons:

     a.    The Defendants do not have the right to file claims, under the color of law, when they know they lack records, the records they have are unreliable, and the records are otherwise infected with inaccurate and incomplete information.

     b.    Notwithstanding this knowledge, as part of their pattern and practice of unfair, deceptive, or otherwise unconscionable debt collection practices, Defendants act through their affiliates and authorized agents to collect and attempt to collect on the hundreds and thousands of purported consumer debts they acquire for pennies on the dollar of what they claim is due.

5.    As a direct and proximate result of the Defendants' acts and omissions, the Plaintiffs and Class members have sustained damages and losses in the form of (i) incurred costs to defend the Defendants' improperly pursued debt collection actions, (ii) payments made to the Defendants which were not lawfully owed, and (iii) statutory damages.

## II.    <u>JURISDICTION AND VENUE</u>

6.    Defendants' conduct violates federal law through the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C.A. §1692 et seq.

7.    Subject matter jurisdiction is conferred upon this Court by 15 U.S.C. § 1692k(d), 28 U.S.C. §§ 1331.

8.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as each defendant conducts business in this District and a substantial portion of the events or omissions giving rise to the claims occurred within this District.

SEATTLE CONSUMER JUSTICE, P.S.
10728 16TH AVE SW
SEATTLE, WASHINGTON  98146
telephone (206) 330-0595

### III.   **PARTIES**

9.     Plaintiff Osure Brown is a citizen of Washington state and the borrower on the consumer loans at issue.

10.     Plaintiff Tommy Brown is a citizen of Washington state, the father of Osure Brown, and the cosigner on the loans at issue in this matter.

9.11.   Defendant TSI operates as its principal business as a debt collector and utilizes instrumentalities of interstate commerce or the mails in its collection activities. It collects consumer debts allegedly owed to others. TSI is a corporation chartered under California law with offices at 507 Prudential Road, Horsham, Penn., 19044. Transworld does business in Washington, and its registered agent in Washington is CT Corporation System, 711 Capital Way S., Ste. 204, Olympia, Washington 98501. In addition:

a.     Transworld is a debt collector as defined in the FDCPA, 15 U.S.C.A. §1692a(6). It acquired the alleged consumer loan accounts of the Plaintiffs and Class members for collection at a time when it knew Plaintiff's and Class members' debts were in default on or about November 1, 2014. Among the debts TSI collects are "private student loans" allegedly owed to the NCSLT Trusts.

b.     TSI is managed by a Board of Directors.

c.     To carry out part of its consumer collections business, it also operates and manages an Attorney Network business unit, which includes Defendant Patenaude & Felix, APC, that files debt collection lawsuits in Washington to collect on behalf of the NCSLT Trusts.

d.     These "Agency and Attorney Networks" were described on TSI's website[1] as follows:

Transworld Systems Inc. is expanding its existing Agency and Attorney Networks with current and new business opportunities. We are extremely proud

---

[1] https://web.archive.org/web/20150511054427/https://www.tsico.com/Services/Agency_Attorney_Network.html

SEATTLE CONSUMER JUSTICE, P.S.
10728 16TH AVE SW
SEATTLE, WASHINGTON  98146
telephone (206) 330-0595

of our Agency and Attorney Networks which designs and implements cost-effective collection solutions on behalf of clients across the country. We manage a nationwide network through leading edge technology and the expertise needed to achieve results.

We strive to surpass the growing and complex needs of our clients through the professional services provided by our Agency and Attorney Networks. TSI is currently seeking collection agencies and law firms to support our growing network and expanded business opportunities. TSI has a variety of business opportunities in which we are seeking professional, cost-conscious industry experts to join our Agency and Attorney Networks. The business opportunities contain, although not limited to, the following: healthcare, commercial, student loans, telecommunications, and bank card.

e.      TSI  is a licensed Washington collection agency under UBI# 600-169-996.

f.      TSI  is a person subject to RCW Ch. 19.86.

g.      TSI  is not licensed as a student education loan servicer under RCW 31.04.035.

10.12.  Defendant P & F is a debt collection law firm incorporated in California. P & F is a professional corporation doing business under the laws of Washington. P & F's registered agent in Washington is Matthew Cheung, who conducts business out of an office in Lynnwood, Washington.

11.13.  P & F seeks to collect defaulted consumer debts on behalf of the NCSLT Trusts through litigation, instrumentalities of interstate commerce or  the mails. In addition:

a.      P & F is a debt collector as defined in the FDCPA, 15 U.S.C.A. §1692a(6). It regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another including the alleged loan accounts of the Plaintiffs and putative class members.

b.      P & F is managed by a Board of Directors.

c.      To carry-out part of its consumer collections business, it also operates as part of TSI 's Attorney Network business unit and files debt collection lawsuits in Washington and nationwide to collect on behalf of the Trusts.

-CONSOLIDATED COMPLAINT - 5

1      d.      P & F is a licensed Washington collection agency.

2      e.      P & F is a person subject to Revised Code of Washington Ch. 19.86.

3      f.      P & F and its lawyer in Washington, Matthew Cheung, have, by service

4  and/or filing, commenced over 1400 lawsuits in the State of Washington on behalf of the

5  NCSLT Trusts including hundreds of cases against the Plaintiffs and the Class members.

6      g.      P & F was fully aware of, countenanced, permitted, and encouraged the

7  conduct of its employee Matthew Cheung as set forth herein.

8      h.      The actions of Mr. Cheung on behalf of P & F were conducted in trade or

9  commerce and primarily in connection with P & F's business has a collection agency.

10      i.      Matthew Cheung is an employee of P & F, and is a lawyer licensed to

11  practice law in the state of Washington and practices law from an office address in

12  Lynnwood, Wash.

13      12.14.  Defendants National Collegiate Student Loan Trust 2004-1, National Collegiate

14  Student Loan Trust 2004-2, National Collegiate Student Loan Trust 2005-1, National Collegiate

15  Student Loan Trust 2005-2, National Collegiate Student Loan Trust 2005-3, National Collegiate

16  Student Loan Trust 2006-1, National Collegiate Student Loan Trust 2006-2, National Collegiate

17  Student Loan Trust 2007-1, and National Collegiate Student Loan Trust 2007-2 (collectively

18  "NCSLT Trusts" or "the Trusts") are Delaware statutory trusts, formed and existing pursuant to

19  the laws of the state of Delaware for the purpose of purportedly acquiring consumer debts. The

20  Trusts do not offer or extend credit creating any debt.  The Trusts' principal business is the

21  collection of debts by using instrumentalities of interstate commerce or the mails. While the

22  Trusts claim to be the owners of Plaintiffs and class members loans, it is not. It is not a creditor

23  under the FDCPA.

24      13.15.  The Trusts attempt to collect debts, indirectly, that are allegedly owed to others

25  and utilizes instrumentalities of interstate commerce or the mails in doing so.  The Trusts are

26  debt collectors as defined in the FDCPA, 15 U.S.C.A. §1692a(6). The Trusts are also vicariously

liable for the actions by other Defendants.

1    14.16.  The Trusts are regularly treated as a single entity by the other Defendants.

2    15.17.  Defendant U.S. Bank, NA is a National Banking Association which does

3  business in King County, Washington.

4    16.18.  U.S. Bank serves as the "indenture trustee" for the NCSLT Trusts. U.S. Bank's

5  role in the Trusts is not in pursuit of its consumer banking activities.

6    17.19.  U.S. Bank became "Special Servicer" to the Trusts in 2012.

7    18.20.  U.S. Bank is currently the Special Servicer for defaulted Trust Loans because it

8  was designated as the Back-Up Special Servicer to the Trusts under the Default Prevention and

9  Collection Services Agreement with First Marblehead Education Resources, Inc. ("FMER")

10  who resigned as the initial Special Servicer in 2012 and U.S. Bank assumed its role.

11  As Special Servicer, U.S. Bank remains responsible for the performance of its duties whether

12  done by TSI, and in turn TSI's Attorney Network and Collection Network, or any other person

13  involved in collecting loans allegedly acquired by the Trusts. U.S. Bank has the duty to properly

14  supervise and control the activities of TSI, and TSI's Attorney Network and Collection

15  Network, or any other person engaged in collection for the Trusts, as its agents, and thus is

16  vicariously or directly liable for their wrongful conduct committed against Plaintiffs and other

17  consumers. In relation to the private student loans allegedly owned by the Trust, U.S. Bank,

18  regularly collects or attempts to collect debts, directly or indirectly, that are owed or asserted to

19  be owed or due to others and is a debt collector as defined in the FDCPA, 15 U.S.C.A.

20  §1692a(6). It is also vicariously liable for the actions by the other Defendants.

21    19.21.  Asserting gross negligence and other actionable wrongful conduct, the NCSLT

22  Trusts, by way of a Verified Amended Complaint filed in Delaware Chancery Court against TSI

23  and two codefendants (*The National Collegiate Master Student Loan Trust 1, et al v. U.S. Bank*

24  *National Association, GSS Data Services Inc., Turnstile Capital Management, LLC and*

25  *Transworld Systems, Inc*.; Chancery Court of Delaware, Cause #2018-0167-JRS) ("Verified

26

**SEATTLE CONSUMER JUSTICE, P.S.**
10728 16TH AVE SW
SEATTLE, WASHINGTON  98146
telephone (206) 330-0595

Amended Complaint"),[2] (a copy of which is **Exhibit A**, hereto), against U S. Bank, Turnstile, and GSS Data Services, Inc., made, among others, the following allegations which, on information and belief, after investigation, Plaintiffs asserts are accurate, and on information and belief reallege:

20.22. ¶45 "Neither the Trusts nor the Owners approved these arrangements with Turnstile or with TSI . To the contrary, the Owners specifically informed the Administrator and U.S. Bank that they did not want Turnstile or TSI to perform any services relating to the Trusts. But the Administrator and U.S. Bank refused to follow the instructions from the Owners. The Trust did not hire Turnstile or TSI, neither Turnstile nor TSI acts at the direction of the Trusts, and they do not follow any directions or instructions issued by the Trusts. To the contrary, as discussed below, while the Owners of the Trusts have requested that TSI cease filing lawsuits in the name of the Trusts where TSI cannot prove that the Trusts have standing to collect on defaulted loans, TSI has nevertheless continued to file such lawsuits."

21.23. ¶46. "To the contrary, TSI is an agent of U.S. Bank as Special Servicer. Under the Special Servicing Agreement, U.S. Bank was responsible for 'the enforcement, collection and servicing of Delinquent Loans and Defaulted Loans. . . .'"

22.24. ¶47. "U.S. Bank's duties further included monitoring the performance of Turnstile and replacing it if it was deficient or negligent in performing its duties. As set forth herein, Turnstile's performance of its duties was deficient and negligent, but U.S. Bank failed to monitor Turnstile's performance and failed to replace Turnstile as Subservicer."

23.25. The remainder of the allegations as they pertain to U.S. Bank in said Verified Amended Complaint establish that U.S. Bank was in a position to prevent and avoid the unfair and deceptive acts and practices performed by the Trusts, TSI  and the attorneys from TSI 's Attorney Network acting in Washington and elsewhere; that U.S. Bank knew of and was fully

---

[2] As of 2020, this suit has been consolidated with three others as *In re National Collegiate Student Loan Trusts Litigation*, C.A. No. 12111-VCS (Del. Ch. Jan. 21, 2020).

**SEATTLE CONSUMER JUSTICE, P.S.**
10728 16TH AVE SW
SEATTLE, WASHINGTON  98146
telephone (206) 330-0595

informed about said unfair and deceptive acts and practices being performed in Washington and elsewhere; that U.S. Bank had a duty to prevent and avoid such unfair and deceptive acts and practices; and that U.S. Bank negligently and/or grossly negligently and/or intentionally failed to prevent such unfair and deceptive acts and practices in Washington and elsewhere, and in fact directed, aided and abetted the commission of such unfair and deceptive acts and practices in Washington and elsewhere by the Trusts, TSI and the attorneys retained by TSI to act in the name of the NCSLT Trusts in Washington and elsewhere.

24.26.  The doctrine of respondeat superior applies to U.S. Bank, and renders it responsible for the wrongful conduct of TSI in Washington and elsewhere as herein alleged and for the wrongful actions of the attorneys retained by TSI to act in the name of the NCSLT Trusts in Washington and elsewhere. US Bank is also vicariously liable for the actions of these other Defendants.

25.27.  Paragraphs 71 through 79 of the said Verified Amended Complaint establish that U.S. Bank and TSI were fully aware that key portions of instruments which allegedly transferred the Discharged Loans or servicing rights thereto, including Schedule 1, Schedule 2, or Schedule 3 (collectively the "Loan Schedules") to those instruments, do not exist. Despite that knowledge, TSI, with the knowledge and consent of U.S. Bank, has failed to disclose these material facts and continued in many cases, in Washington and elsewhere, to file affidavits and/or declarations under oath which falsely and knowingly testify that such schedules do exist, and that the affiant or declarant has personal knowledge of their existence and to mislead as to the true nature of the loans.

26.28.  Paragraphs 80 through 85 of said Verified Amended Complaint set forth examples of case authority and rulings which establish that U.S. Bank, and TSI, knew that the declarations and affidavits, submitted to support claims made in the name of NCSLT Trusts, concerning loan documentation were false.

27.29.  In fact, TSI has not only failed to disclose material facts but has created false documents purporting to reflect the Loan Schedules from the original "Pool Supplement

SEATTLE CONSUMER JUSTICE, P.S.
10728 16TH AVE SW
SEATTLE, WASHINGTON  98146
telephone (206) 330-0595

Agreements" and TSI , through its employees and through its Attorney Network, falsely represented, through false affidavits and/or declarations, and through false statements in pleadings, testified or asserted that such documents were genuine loan documents and that the attorney, affiant or declarant had personal knowledge of their authenticity.

28.30.  The foregoing omissions and statements made in, or summarized from, the said Verified Amended Complaint constitute admissible evidence under Washington Evidence Rule 801(d)(2).

29.31.  U.S. Bank has been fully aware of  the Transworld Stipulation and Consent Order Issued by the Consumer  Financial Protection Bureau ("CFPB") on September 18, 2017 and available publicly at https://www.consumerfinance.gov/administrative-adjudication-proceedings/administrative-adjudication-docket/transworld-systems-inc/, and fully aware of the unfair and deceptive acts and practices of  TSI; U.S. Bank permitted, consented to, and aided and abetted those unfair or deceptive acts and practices.

30.32.  U.S. Bank was, and is, bound by the Transworld Consent Order issued by the CFPB. That order imposed both affirmative and prohibitory duties upon U.S. Bank. U.S. Bank has failed and/or refused to act in accordance with its duties under said Transworld Consent Order. The failure of U.S. Bank to act in accordance with its duties under the Transworld Consent Order, and to ensure and enforce Transworld's compliance with that Consent Order, establishes that US Bank's consent to, and aiding and abetting in the commission of, unfair and deceptive acts and practices by TSI was willful and knowing.

31.33.  At all times relevant to this Complaint, US Bank, TSI and P & F have acted as the debt collectors on behalf of the Trusts and the Trusts expressly authorized each of them to carry out all work that it has done on their behalf.

32.34.  The Trusts are persons subject to RCW Ch. 19.86.

33.35.  The Trusts, U.S. Bank, TSI and P & F have pursued collections of debts that are not legally enforceable through debt collection correspondence and litigation.

SEATTLE CONSUMER JUSTICE, P.S.
10728 16TH AVE SW
SEATTLE, WASHINGTON  98146
telephone (206) 330-0595

1   ~~34.~~36.  This Court has jurisdiction over Transworld, P & F, U.S. Bank, and the NCSLT

2   Trusts because they do business in Washington State by collecting or attempting to collect debts

3   from Washington State residents who they allege owe debts to the Trusts. Therefore,

4   Defendants have obtained the benefits of the laws of Washington (without the right to do so),

5   and Defendants are subject to the jurisdiction of this Court.

6   ~~35.~~37.  Venue is proper in this District because a substantial part of the events or

7   omissions giving rise to the claim occurred in this District.  28 U.S.C.A. §1391(b)(2).

8   ### IV.   FACTUAL BACKGROUND

9   **A.   NCSLT and TSI Background**

10  ~~36.~~38.  Based on publicly available documents and information and belief, the Trusts are

11  investment vehicles that were to engage in the practice of buying and selling large numbers of

12  education-related consumer loans and collecting payments from the borrowers for the benefit of

13  investors. The Trusts have been subject to significant litigation, including some discussed *infra*,

14  and are aware that the assets (i.e. the purported student loans) allegedly acquired by them subject

15  to this action are unenforceable since they cannot enforce them since they lack sufficient reliable

16  information to enforce any alleged debt.

17  ~~37.~~39.  As the Trusts have no employees, any actions performed nominally by a Trust or

18  on its behalf are actually performed by its board and management structure, servicers, or by

19  attorneys hired by the servicers. On information and belief, NCO Financial Systems, Inc. claims

20  to be the default servicer for the Trusts until November 1, 2014, at which time TSI became the

21  successor in interest to NCO.

22  ~~38.~~40.  TSI became the alleged default loan servicer for the Plaintiffs' and Class

23  members' account loans at a time when it believed the loans were in default and TSI treated the

24  loans as in default. TSI became the servicer for the Discharged Loans accounts at a time when it

25  knew the Discharged Loans records were inaccurate and prone to errors, and thus rendered the

26  loans unenforceable. TSI knew this based on the records TSI received from NCO and the Trusts

    and their affiliates at the time of the servicing transfer. However, TSI concealed this material

information from the Plaintiffs and putative Class members until less than twelve months before the commencement of this action.

### 1.   TSI attorney network

39.41.  Based upon public disclosures, and upon information and belief, TSI retains a national network of law firms and attorneys to pursue delinquent borrowers by filing collection lawsuits in state courts. One of these firms is P & F.

40.42.  On information and belief, P & F is licensed as a collection agency in the State of Washington and is therefore subject to laws that govern the practice of such agencies, including the federal Fair Debt Collection Practices Act ("FDCPA").

### 2.   U.S. Bank's Role in Debt Collection for the Trusts

41.43.  U.S. Bank serves two roles in connection with the Trusts. First, it is the Indenture Trust of the Trusts. It serves as the Indenture Trustee for a series of Indenture Agreements that were created as part of the transactions for the benefit of the purported investors/note holders. Second, it is the Special Servicer for the Trusts. As the Special Servicer, U.S. Bank is responsible for the collection of the loans allegedly held by the Trusts. It is in this second role as Special Servicer that the claims are asserted against it by the Plaintiffs and putative class members in this action since it is the ultimate decision maker and controller of the collection actions pursued on behalf of the Trusts (whether those decisions are made directly or indirectly through a servicer, subservicer or the people they hire, including attorneys, to collect on behalf of the Trusts). It is true that U.S. Bank has placed intermediaries between it and others in the collection chain commanded by U.S. Bank, but it remains in legal and ultimate control no matter how long the chain of parties engaged in collecting on behalf of the Trusts may become.

42.44.  U.S. Bank's reservation of responsibility is demonstrated by U.S. Bank providing indemnification to the servicer (and others) for the information or materials provided to the servicers/collectors for their use in their collection and services.

SEATTLE CONSUMER JUSTICE, P.S.
10728 16TH AVE SW
SEATTLE, WASHINGTON 98146
telephone (206) 330-0595

43.45.  The documents provided to the servicers under their servicing agreements are very narrow and limited to the "Original Credit Agreement" which refers to the signed first or first two pages of the Credit agreement and related documents. There is no requirement to provide the servicer the terms and conditions of the Credit Agreement, and there is no mention to provide any documents relating to the assignments of the Credit Agreements. As the Third Circuit noted in *In re National Collegiate Student Loan Trusts 2003-1, 2004-1, 2004-2, 2005-1, 2005-2, 2005-3*, 971 F.3d 433, 440 (3rd. Cir. 2020), "The Basic Documents at the outset did not provide for servicing loans delinquent in their payments because The Educational Resources Institute Inc. (the "Resource Institute") guaranteed full repayment on those loans. After that entity's bankruptcy in 2008, however, the Trusts established a regime for servicing delinquent student loans." As the Special Servicer, U.S. Bank provides certain services for loans that are either delinquent for more than thirty days or deemed to be in default. Among other services to the Trusts U.S. Bank does the following:

a.      Retains debt collection agencies known as "Subservicers" to enforce and collect delinquent and defaulted student loans;

b.      Audits the Subservicers and provided oversight with respect to account management, litigation assistance, and settlement strategies;

c.      Replaces any Subservicer whose performance is deficient;

d.      Requires each Subservicer to submit monthly reports relating to the loans on which the Subservicer is collecting; and

e.      Retains responsibility for the information relating to the loans through indemnification liability.

44.46.  U.S. Bank has also actively participated in litigation concerning the right to control the collection activities of the Trusts and determining who may collect on behalf of the Trusts. U.S Bank was a party and appealed an adverse decision against the Trusts in *In re National Collegiate Student Loan Trusts 2003-1, 2004-1, 2004-2, 2005-1, 2005-2, 2005-3*, 971 F.3d 433 (3rd. Cir. 2020). It continues to participate, after intervening, in a District Court action,

*Consumer Financial Protection Bureau, Plaintiff, v. National Collegiate Master Student Loan Trust et al., Defendants*, No. 1:17-CV-1323-SB, 2021 WL 5936404 (D. Del. Dec. 13, 2021), motion to certify appeal granted sub nom. *Consumer Fin. Prot. Bureau v. Nat'l Collegiate Master Student Loan Tr.*, No. 1:17-CV-1323-SB, 2022 WL 548123 (D. Del. Feb. 11, 2022), which adopted that its role as a special servicer was "to collect "past due and defaulted student loans" and to do "collections litigation." *Id.* at *1.

45.47.   U.S. Bank has also moved to intervene claiming a right to do so in actions against certain Trusts that sought to limit the rights of the Trusts to pursue collection actions or use particular collectors.

46.48.   Yet, despite its voluntary involvement in litigation concerning the collection actions filed in the name of the Trusts, U.S. Bank regularly claims it has no involvement and is far removed from collection activities based on contractual terms of the Special Servicing Agreement governing its involvement. U.S. Bank's interpretation of a limited role conflicts with the finding by the Third Circuit that "[t]he Special Servicing Agreement further provided that Defaulted Loans are serviced exclusively by the Special Servicer. ..." The Third Circuit also noted that the contention that collection lawsuits filed in the names of the Trusts were "lawsuits filed by U.S. Bank on behalf of the Trusts against borrowers for collection on Defaulted Loans were dismissed due to faulty documentation and procedures." *In re Nat'l Collegiate Student Loan Trusts 2003-1, 2004-1, 2004-2, 2005-1, 2005-2, 2005-3,* 971 F.3d 433, 440 (3rd. Cir. 2020), U.S. Bank's decisions to intervene or voluntarily participate in litigation concerning the collection actions, including collection suits, shows its direct and indirect involvement in the management and control of the Trusts' collections activities in its role as Special Servicer.

47.49.   U.S. Bank's decisions to intervene or voluntarily participate in litigation concerning the collection actions, including collection suits, shows its direct and indirect involvement in the management and control of the Trusts' collections activities in its role as Special Servicer.

SEATTLE CONSUMER JUSTICE, P.S.
10728 16TH AVE SW
SEATTLE, WASHINGTON  98146
telephone (206) 330-0595

**B.    Debt Collection Begins**

48.50.  In October 2018, Patenaude & Felix sent ten letters, signed by Matthew Cheung, that were received by Osure Brown stating that they would initiate collection efforts regarding an outstanding balance claimed to be owed to the Trusts by Osure Brown. The collection letters failed to reference the original creditor Bank of America and did not include any breakdown of interest or service charge, collection costs, or late payment charges, if any, added to the original obligation by the original creditor or the last payment made on the loans.

49.51.  In response to a debt verification letter sent to Patenaude & Felix and signed for by Matthew Cheung, Osure Brown received documentation regarding all ten loans, including payment histories from American Educational Services, and payments on a Loan Payment History Report after charge-off on September 4, 2012. Each loan verification response included accrued interest for each loan. There is no indication on any payment history to indicate who made the payments.

50.52.  In January 2019, Osure Brown again received letters from Patenaude & Felix, signed by Matthew Cheung, informing him of a potential settlement for each NCSLT loan, indicating that they would discount a considerable portion of the obligation.

**1.    The Trusts File Suit**

51.53.  On April 5, 2019, Osure Brown and Tommy Brown were sued by the Trusts, represented by P & F, in ten separate cases in King County Superior Court, Nos. 19-2-09408-7, 19-2-09402-8, 19-2-0903-6, 19-2-09404-4, 19-2-09405-2, 19-2-09405-2, 19-2-09406-1, 19-2-09407-9, 19-2-09409-5, 19-2-09410-9, and 19-2-09411-7. The cases were subsequently consolidated into cause No. 19-2-09402-8.

52.54.  In each case, the Trusts, TSI, and P & F with the consent of US Bank alleged that Osure Brown had liability for each one of the ten Bank of America loans identified in his Chapter 13 bankruptcy case, which, they alleged, had subsequently been purchased by the Trusts in consolidated loan pools. These statements were false, unfair, and deceptive.

SEATTLE CONSUMER JUSTICE, P.S.
10728 16TH AVE SW
SEATTLE, WASHINGTON  98146
telephone (206) 330-0595

53.55.  After receiving the unfiled summons and complaints via process service in February 2019, Osure Brown sent *pro se* notices of appearance on all ten cases to counsel at P & F.

54.56.  P & F sent copies of the filed lawsuits and affidavits by letter dated April 8, 2019, to Osure Brown.

55.57.  Each of the ten complaints filed by the Trusts, with the aid, assistance and direction of U.S. Bank and the other debt collectors, TSI and P & F, was unfair, abusive, and deceptive in multiple ways, as explained herein:

**2.    The Trusts could not substantiate their ownership of the loans.**

56.58.  In each case, the NCSLT Trusts concurrently filed an affidavit (collectively the "Audet Affidavits") signed by Jennifer A. Audet, an employee of Transworld, the NCSLT Trusts' debt collector. Each of Audet's Affidavits claimed that Audet had personal knowledge regarding the records pertaining to the loan at issue, had verified that there was an outstanding principal balance on a loan currently owned by one of the Trusts, and was authorized by TSI and US Bank, National Association to make the representations in the affidavit. Each Audet Affidavit also claimed that the associated loan had been transferred, sold, and assigned to the NCSLT Trusts.

57.59.  Attached to each of the Audet Affidavits is a trio of exhibits purporting to substantiate the chain of assignments for the loan. Exhibit A was a notice from U.S. Bank identifying itself as the special servicer for a number of the Trusts, including the defendants, and confirming TSI as the Trusts' subservicer. Exhibit B was a document titled "Loan Application/Promissory Note" or "Loan Request /Credit Agreement" allegedly signed by Osure Brown as borrower and Tommy Brown as cosigner and submitted to BOA, along with a document titled "Note Disclosure Statement" that includes additional information about the alleged loan. Exhibit C consisted of a "Pool Supplement" evidencing the purported sale of certain loans from BOA to The National Collegiate Funding LLC, which would in turn sell

SEATTLE CONSUMER JUSTICE, P.S.
10728 16TH AVE SW
SEATTLE, WASHINGTON  98146
telephone (206) 330-0595

them to one of the NCSLT Trusts, followed by a "Deposit and Sale Agreement" that purports to record the sale of the pool of loans from National Collegiate Funding to the designated Trust.

58.60.   In each case, both the Pool Supplement and the Deposit and Sale Agreement note that the actual list of loans in each pool is specified by an associated Schedule (variously Schedule 1, Schedule 2, or Schedule 3; collectively the "Loan Schedules") of the associated Pool Supplement. None of the Pool Supplements attached to any of the Audet Affidavits include the associated Schedules referenced and thus cannot establish the validity of assignment under RCW 19.16.270, despite the claim in the affidavits that Exhibit C "is a true and correct copy of the assignment Agreement(s) described herein."

59.61.   Additionally, the Audet Affidavits claimed that Tommy Brown had made payments on the loans, with the last payment made for various loans in 2017 and 2018, without disclosing that any payments made on the account were not made by Tommy Brown. When subsequently challenged on the validity of the false Audet Affidavits, the Trusts responded by replacing them on October 7, 2019, with a new affidavit (the "Luke Affidavit") signed by Bradley Luke, another TSI employee presented as the custodian of records for the Trusts.

60.62.   The Luke Affidavit was accompanied by several exhibits that purported to substantiate the Trusts' ownership of the loans at issue. Like the Audet Affidavits, however, the Luke Affidavit failed to provide any of the Loan Schedules required to prove a valid assignment, or any other business records demonstrating that the Trusts had at any point purchased any loans originated by Osure Brown and/or Tommy Brown. Instead, it provided what appeared to be an excerpt of a spreadsheet, which appeared to have been expressly generated for litigation purposes long after the loans were purportedly originated. The Luke Affidavit was a separate communication that also concealed information available to the Trusts, U.S. Bank and P & F.

### C.   Summary Judgment is Granted in Favor of the Browns

61.63.   On September 20, 2019, the Browns moved for summary judgment in their favor in the consolidated matter for lack of standing and for failure to prove assignment of the loans,

arguing that Bradley Luke did not have the ability to testify about the NCSLT Trusts' ownership of the loans at issue.

62.64.  On October 24, 2019, the Browns' motion for summary judgment and associated motions by all parties were heard before the King County Superior Court of the State of Washington by the Honorable Nicole Gaines-Phelps. On December 24, 2019, the state court ordered that summary judgment be granted in favor of Osure Brown and Tommy Brown in the consolidated matter which incorporated oral findings of fact and conclusions of law found in the transcript of the hearing. *See* Hearing Transcript attached to Declaration of Christina L. Henry, **Exhibit B;** Order Granting Summary Judgment attached as **Exhibit C.**

63.65.  The state court also struck the affidavit of Bradley Luke as hearsay because Mr. Luke was not employed by the entity that had custody and possession of the purported records and did not have knowledge of the retention policies of BOA, the alleged originator of the loans. Accordingly, the state court granted the motion for summary judgment in favor of the Browns.

64.66.  The NCSLT Trusts, US Bank, TSI and P & F, did not appeal the judgments entered against the Trusts in favor of the Browns. Those judgments are now final judgments.

65.67.  The Defendants may claim that Osure Brown and Tommy Brown still owes a debt that he they did not pay and thus he they fears future debt collection in the form of phone calls, letters and/or negative credit reporting.

**D.     The Defendants Possessed Knowledge that They Chose to Conceal from the Plaintiffs, Class Members, and State Courts.**

66.68.  The Trusts were recently the subject of investigation by the CFPB.

67.69.  On September 18, 2017, a complaint was filed by the CFPB against fifteen National Collegiate Student Loan Trusts, including all of the defendant trusts in the instant matter (collectively the "Collective NCSLT Trusts"), in the United States District Court for the District of Delaware, Cause No. 17-cv-01323-GMS (ECF No. 1 therein) ("CFPB Complaint"), attached hereto as **Exhibit D.**

**SEATTLE CONSUMER JUSTICE, P.S.**
10728 16TH AVE SW
SEATTLE, WASHINGTON  98146
telephone (206) 330-0595

68.70.  The same day, the parties jointly moved therein for entry of a consent judgment (ECF No. 3 therein)("CFPB Proposed Consent Judgment"), attached hereto as **Exhibit E.**

69.71.  The CFPB Complaint allege that unfair and deceptive practices in debt collection are routine practices of the NCSLT Trusts and regardless of whether the CFPB Proposed Consent Judgment is approved by a federal court against the NCSLT Trusts, the NCSLT Trusts are on notice and have knowledge of the allegations, and so does the public.

70.72.  That CFPB Proposed Consent Judgment is thus incorporated by reference here as if fully set forth.

71.73.  On September 15, 2017, more than a year and a half before filing suit against the Browns, the CFPB issued a Stipulation and Consent to the Issuance of a Consent Order ("Transworld Stipulation") and a Consent Order in the matter of Transworld Systems, Inc. as agent for the Collective NCSLT Trusts ("Transworld Consent Order"), filing both in 2017-CFPB-0018, attached hereto as **Exhibit F and G.**

72.74.  That Transworld Consent Order was issued specifically as to TSI's unfair and deceptive acts and practices on behalf of, or in the name of, the NCSLT Trusts. The Transworld Consent Order is both remedial and mandatory, and identified and prohibited many of the unfair and deceptive acts and practices of TSI on behalf of, or in the name of, the NCSLT Trusts identified above.

73.75.  In the Transworld Consent Order, the CFPB found that TSI and its nationwide network of law firms committed a number of offenses between November 1, 2014, and April 25, 2016, including:

    a.      Filing tens of thousands of collections lawsuits against borrowers in which they did not possess the complete documentation needed to prove the NCSLT Trusts owned the loans;

    b.      Filing tens of thousands of affidavits in support of collections lawsuits in which the affiant swore they had personal knowledge of the debt, when in fact the affiants frequently merely reviewed data on a computer screen, did not know the source

-CONSOLIDATED COMPLAINT - 19

of the data or how it was collected and maintained, and lacked knowledge of the chain of assignment records necessary to prove that the relevant Trust owned the loans;

c.    Filing numerous lawsuits without the intent or ability to prove the claims, if contested.

74.76.  The Transworld Consent Order further found that these acts constituted violations of the Consumer Financial Protection Act, 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

75.77.  In 2018, the Collective NCSLT Trusts, through the Trusts' Owners (as defined in the Trust Agreements), filed suit in Delaware Chancery Court against TSI and two codefendants, for breach of contract, charging them with costing the Collective NCSLT Trusts billions of dollars and with causing "wrongful and fraudulent …cases being brought against thousands of borrowers." *See* Verified Amended Complaint, **Exhibit A**

76.78.  Specifically, the Collective NCSLT Trusts have accused TSI of injurious falsehood for, among other things:

a.    Recklessly making false and misleading representations to borrowers that the Collective NCSLT Trusts had a right to sue the Plaintiffs and putative class members, when they did not;

b.    Falsely representing to borrowers that the Collective NCSLT Trusts possessed all of the notes, assignments and other documents needed to prove standing to foreclose on their loans, when they did not;

c.    In so doing, exposing the Collective NCSLT Trusts to lawsuits from borrowers.

79.    The New York Attorney General also obtained a consent order with TSI's over its practice of attaching  "rosters" prepared for litigation  in  lieu of Schedules without personal  identifying information therein. *See* here, ¶¶ 19-23.

80.    The Massachusetts Attorney General called out TSI on its claims that it knew which trust owned a particular loan "when, in fact, Transworld did not possess sufficient documentation to establish the chain of title of the particular loan." *See* here at ¶ 37.

SEATTLE CONSUMER JUSTICE, P.S.
10728 16TH AVE SW
SEATTLE, WASHINGTON 98146
telephone (206) 330-0595

1      81.

2      77.    At the time the NCSLT Trusts filed suit against Osure Brown on April 5, 2019,

3  the Trusts were aware of the CFPB Consent Order, and of their lawsuit against TSI and other

4  codefendants in Delaware Chancery Court.

5      78.    At the time the NCSLT Trusts filed suit against Osure Brown on April 5, 2019,

6  the Trusts were aware of the CFPB Consent Order, the New York Attorney general action, the

7  Massachusetts Attorney General action and of their lawsuit against TSI and other codefendants

8  in Delaware Chancery Court.

9      82.

10      At the time the NCSLT Trusts filed suit against Osure Brown on April 5, 2019,

11  the Trusts were aware of the reckless and injurious practices of TSI as explained in the

12  Delaware lawsuit and addressed in the , and the CFPB and Attorney General  Consent Orders.

13

14      79.    At the time the NCSLT Trusts filed suit against Osure Brown on April 5, 2019,

15  the Trusts were aware of the reckless and injurious practices of TSI as explained in the

16  Delaware lawsuit.

17      80.83.  At the time the NCSLT Trusts filed suit against Osure Brown, with the aid and

18  assistance of US Bank, TSI and P & F, on April 5, 2019, the NCSLT Trusts, U.S. Bank, TSI,

19  and P & F were aware of Transworld's reckless and injurious practices. Yet, TSI, U.S. Bank,

20  P & F, and the NCSLT Trusts continued their unfair and deceptive practices of flooding the

21  courts with hundreds of debt collection actions without a reasonable basis to do so and without

22  the right to due so based on their prior admissions in the CFPB Consent Orders.

23      84.    The actions and inactions of the NCSLT Trusts, TSI, U.S. Bank and P & F in

24  regard to Osure Brown and Tommy Brown were substantially identical to the actions that the

25  TSI Consent Order and attorney general actions found they took in regard to thousands of

26  borrowers across the country in violation of the Consumer Financial Protection Act.

CONSOLIDATED COMPLAINT - 21

SEATTLE CONSUMER JUSTICE, P.S.
10728 16TH AVE SW
SEATTLE, WASHINGTON  98146
telephone (206) 330-0595

81.   The actions and inactions of the NCSLT Trusts, TSI, U.S. Bank and P & F in regard to Osure Brown were substantially identical to the actions that the TSI Consent Order found they took in regard to thousands of borrowers across the country in violation of the Consumer Financial Protection Act.

82.85.  The NCSLT Trusts, P & F, U.S. Bank and TSI were aware that they lacked the ability to prove their ownership of any loans taken out by Osure Brown at the time they filed their collection action against the Browns.

83.86.  The NCSLT Trusts, U.S. Bank, TSI and P & F are aware that the Loan Schedules related to the purported student loans acquired by them are lost, and they do not exist now, if they ever did. No entity has the Loan Schedules and thus these loans are uncollectible by any successor because no one can prove valid assignment and history of the loans. The NCSLT Trusts, U.S. Bank, TSI and P & F are aware that the Loan Schedules related to the purported student loans acquired by them are lost, and they do not exist now, if they ever did. No entity has the Loan Schedules and thus these loans are uncollectible by any successor because no one can prove valid assignment and history of the loans.  They are all also aware that TSI has been creating "rosters" and adding them to documents to make them appear to be part of the original document when they are not.

## V.   CLASS ALLEGATIONS

84.87.  Plaintiffs Osure Brown and Tommy Brown also sues on behalf of others, pursuant to Fed. R. Civ. P.  R. 23, who are similarly situated to the Mr. Browns as an FDCPA Class and as a Washington Consumer Protection (CPA) Class. Theseis Classes of similar persons is are defined, subject to further amendment, as follows:

a.      **FDCPA Class:** Those persons with an address in the State of Washington whom P & F or TSI has communicated with directly or indirectly for the purpose of collecting a purported student loan owned by a Trust in the one year preceding the filing of the original complaint in this case.

SEATTLE CONSUMER JUSTICE, P.S.
10728 16TH AVE SW
SEATTLE, WASHINGTON  98146
telephone (206) 330-0595

a.b.    **Washington CPA Class: Those persons in the state of Washington** whom the Trusts have communicated with, directly or indirectly, for the purpose of collecting a purported student loan owned by a Trust since April 3, 2015.

b.

88.    Excluded as members of the FDCPA Class are any persons who fall within these definitions if the person is (i) an employee or independent contractor of any of the Defendants; (ii) a relative of an employee or independent contractor of any of the Defendants; (iii) is an employee of the Court where this action is pending or (iv) have previously released the Defendants for the claims asserted in this action.

85.89.  Excluded as members of the Washington Class are any persons who fall within these definitions if the person is (i) an employee or independent contractor of any of the Defendants, (ii) a relative of an employee or independent contractor of any of the Defendants, or (iii) is an employee of the Court where this action is pending.

86.

87.90.   The Class definitions may be amended or modified.

88.91.   Osure Brown and Tommy Brown proposes to represent himself themselves and the FDCPA Class and Washington CPA Class as defined above. Subclass(es) may also be added as these proceedings continue.

89.92.   Osure Brown and Tommy Brown qualifiesy as a persons who is are a members of the respective Class definitions he they seeks to represent.

90.93.   The members of the FDCPA Classes are capable of being described without difficult managerial or administrative problems. The members are readily identifiable from the information and records in the possession, custody or control of the Defendants, public records, and records of third parties including the consumer reporting agencies who report the Defendants furnished credit information to others as part of their business.

91.94.   Upon information and belief based on public records, the FDCPA Class is sufficiently numerous such that individual joinder of all members is impractical. This allegation

SEATTLE CONSUMER JUSTICE, P.S.
10728 16TH AVE SW
SEATTLE, WASHINGTON  98146
telephone (206) 330-0595

is based on the fact that the Trusts have sued thousands of consumers nationwide, including hundreds of cases in Washington by the Trusts, US Bank, P & F and TSI.

92.95.  There are questions of law and fact common to the FDCPA Class which predominate over any questions affecting only the individual members of the FDCPA Class. The common issues include, but are certainly not limited to:

        a.        Whether the Defendants have used false, deceptive or misleading statements in connection with its attempts to collect debts from the members of the FDCPA class;

        b.        Whether the Defendants have made false statements concerning the character, amount or legal status of any debts, misrepresenting, directly or indirectly, expressly or by implication, that Defendants had verified that the debt was the accurate amount, owed by the consumer, and collectible;

        c.        Whether the Defendants misrepresented, directly or indirectly, expressly or by implication, when filing debt collection lawsuits and other separate communications that they intended to and could prove their claims when they could not;

        d.        Whether the Defendants have used any false representation or deceptive means to collect or attempt to collect any debt;

        e.        Whether the Defendants engaged in any material investigation as to the completeness or authenticity of records to prove the chain of title and/or ownership of loan documents.

        f.        Whether the Defendants engaged in any investigation of prior collection activities to determine if any unfair practice had been committed which as a matter of law prevent collection of interest, costs or charges under RCW 19.16.450, or otherwise;

        g.        Whether the Defendants engaged in any investigation of the validity or truth of statements contained in the alleged loan documents;

        h.        Whether the Defendants both negligently and intentionally caused false evidence to be submitted in student loan collection actions commenced in the state of

SEATTLE CONSUMER JUSTICE, P.S.
10728 16TH AVE SW
SEATTLE, WASHINGTON  98146
telephone (206) 330-0595

Washington where they knew or should have known that the affidavits supporting the lawsuits were false or that the affiant lacked personal knowledge of the matters to which he or she attested;

      i.     Whether the Defendants sued, directly and indirectly, on a debt not owed to the Trusts;

      j.     Whether the Defendants have used any unfair or unconscionable means to collect or attempt to collect any debt;

      k.     Whether the Defendants filed and served lawsuits without standing or ownership of the alleged debt; and

      l.     The sum of the Defendants' net worth;

93.96.  Plaintiffs' Osure Brown's claims are the same as those of each member of the FDCPA Class and are based on the same legal and factual theories.

94.97.  There is no material difference between his their claims and the claims of the members of the respective classes he they seeks to represent.

95.98.  The Defendants' likely defenses (though unavailing) are and will be typical of and materially the same or identical for each of the FDCPA Class and will be based on the same legal and factual theories. There are no valid, unique defenses.

96.99.  Osure The Browns will fairly and adequately represent and protect the interests of the class members.

97.100.  Osure The Browns does do not have any interests antagonistic to the members of the respective classes he seeks to represent.

98.101.  Osure The Browns seeks certification pursuant to Fed. Civ. P. 23(b)(2) and (b)(3).

99.102.  The Defendants' acts were wrongful on grounds that apply uniformly across the FDCPA Class so that the underlying statutory relief afforded to the claims below is appropriate respecting each of the classes as a whole. Further, common questions predominate over any individual questions and a class action is superior for the fair and efficient adjudication

SEATTLE CONSUMER JUSTICE, P.S.
10728 16TH AVE SW
SEATTLE, WASHINGTON  98146
telephone (206) 330-0595

of this controversy. A class action will cause an orderly and expeditious administration of class members' claims, and economies of time, effort, and expenses will be fostered, and uniformity of decisions will be ensured.

100.103.     Apart from details such as names, dates, and dollar amounts, there are no individual questions to establish the claims of the Plaintiffs and the FDCPA Class members.

104.     Osure The Browns's claims are typical of the claims of the FDCPA Class members.

101.105.     The FDCPA Class members have suffered damages, losses, and harm similar to those sustained by Plaintiffs in relation to the improper, unfair, and deceptive collection activities of the Defendants in violation of state and federal laws governing their activities.

106.     The members of the Washington CPA Class are capable of being described without difficult managerial or administrative problems. The members are readily identifiable from the information and records in the possession, custody or control of the Defendants, public records, and records of third parties including the consumer reporting agencies who report the Defendants furnished credit information to others as part of their business.

107.     Upon information and belief based on public records the Washington Class is sufficiently numerous such that individual joinder of all members is impractical. This allegation is based on the fact that the NCSLT Trusts have sued thousands of consumers nationwide, including hundreds of cases in Washington by P&F and TSI.

108.     There are questions of law and fact common to the Washington Class and, in fact, the wrongs alleged against the NCSLT Trusts and the other defendants are identical. The common issues include, but are certainly not limited to:

a.     Whether the Defendants failed to meet the minimum investigation and good faith requirements of CR 11 and were in furtherance of and consequent to unfair and deceptive practices of repeatedly filing lawsuits without adequate investigation and without adequate or reasonable investigation by counsel;

SEATTLE CONSUMER JUSTICE, P.S.
10728 16TH AVE SW
SEATTLE, WASHINGTON 98146
telephone (206) 330-0595

b.      Whether the Defendants engaged in any material investigation as to the completeness or authenticity of records to prove the chain of title and/or ownership of loan documents;

c.      Whether the Defendants engaged in any material investigation regarding statutes of limitations, as may be applicable to the alleged borrowers;

d.      Whether the Defendants engaged in any investigation of prior collection activities to determine if any unfair practice had been committed which as a matter of law prevent collection of interest under RCW 26.16.450, or otherwise;

e.      Whether the Defendants engaged in any investigation of the validity or truth of statements contained in the alleged loan documents;

f.      Whether the Defendants both negligently and intentionally caused false or forged evidence to be submitted in student loan collection actions commenced in the state of Washington;

g.      Whether the Defendants have used false, deceptive or misleading statements and documents in connection with its attempts to collect debts from the Plaintiff;

h.      Whether the Defendants have made false statements concerning the character, amount or legal status of any debts;

i.      Whether the Defendants have made any threat to take legal action that they do not have the right to take;

j.      Whether the Defendants have used any unfair and deceptive means to collect or attempt to collect any debt;

k.      Where the Defendants sued the Plaintiff for a debt not owed to the Defendant Trusts;

l.      Whether the Defendants filed and served lawsuits without standing or ownership of the alleged debt;

m.      The Defendants' net worth;

SEATTLE CONSUMER JUSTICE, P.S.
10728 16TH AVE SW
SEATTLE, WASHINGTON  98146
telephone (206) 330-0595

n.      Whether the Defendant TSI has engaged in the unauthorized practice of law;

o.      Whether the Defendant TSI has engaged in the servicing of student loans without a proper license for any or all portions of the class period;

p.      Whether any other Defendant has engaged in the servicing of student loans without a required, proper license for any or all portions of the class period;

q.      Whether the Defendants are collecting debts in the name of the Trusts deceptive when the Trusts have no employees and act only through their affiliates and agents;

r.      Whether the Defendants letters sent to Plaintiff prior to filing that failed to identify the original creditor;

s.      Whether U.S. Bank is legally and contractually responsible for the actions of persons performing duties of the Special Servicer.

109.    The Browns' claims are the same as each member of the Washington CPA Class and are based on the same legal and factual theories.

110.    There is nothing unusual about the Plaintiffs to warrant a material difference between histheir claims and the claims of the members of the class hethey seeks to represent.

111.    The Defendants' likely defenses (though unavailing) are and will be typical of and the same or identical for each of the Washington CPA Class and will be based on the same legal and factual theories. There are no valid, unique defenses or defenses that will become the major focus of the action.

112.    TommyThe Browns will fairly and adequately represent and protect the interests of the class members.

113.    Tommy The Browns does not have any interests antagonistic to the members of the class he they seeks to represent.

114.    Tommy The Browns seek certification of the Washington CPA Class pursuant to Wash. Super. Ct. Civ. R. 23(b)(2) and (b)(3).

SEATTLE CONSUMER JUSTICE, P.S.
10728 16TH AVE SW
SEATTLE, WASHINGTON 98146
telephone (206) 330-0595

115.   The Defendants have acted on grounds that applies uniformly across the Washington Class. so that the underlying statutory relief afforded to the claims below is appropriate respecting each of the classes as a whole. Further, the common questions predominate over any individual questions and a class action is superior for the fair and efficient adjudication of this controversy. A class action will cause an orderly and expeditious administration of class members' claims, and economies of time, effort, and expenses will be fostered, and uniformity of decisions will be ensured.

116.   There are no individual questions to establish the claims of the Plaintiffs and the Washington CPA Class members. The claims are based on Defendants' omissions and failure to have either a permissible purpose to collect sums from the class members or attempt to collect sums from the class members.

117.   ~~Tommy~~ The Brown~~'~~s' claims are typical of the claims of the Washington CPA Class members.

118.   The Washington CPA Class members have suffered damages, losses, and harm similar to those sustained by the Browns in relation to the improper, unfair, and deceptive collect activities of the Defendants in violation of state and federal laws governing their activities. ~~102.~~

**CAUSES OF ACTION**

A.   **COUNT I: FAIR DEBT COLLECTION PRACTICES ACT ("FDCPA"), 15 U.S.C. § 1692, *ET SEQ.* ON BEHALF OF THE NAMED PLAINTIFFS AND THE FDCPA CLASS MEMBERS AGAINST DEFENDANTS.**

119.   Plaintiffs incorporate all preceding paragraphs as if set forth fully herein and assert this claim on their behalf and on behalf of FDCPA Class members against Defendants Transworld, P & F, the Trusts and U.S. Bank, or vicarious liability of  the Trusts or US Bank .

~~103.~~120.      Plaintiff~~s~~ incorporate~~s~~ all preceding paragraphs as if set forth fully herein and assert this claim on ~~his~~ their behalf and on ~~his~~ behalf of FDCPA Class members against Defendants Transworld, P & F and U.S. Bank, and via vicarious liability, to the Trusts.

**SEATTLE CONSUMER JUSTICE, P.S.**
10728 16ᵗʰ Ave SW
Seattle, Washington  98146
telephone (206) 330-0595

104.121.    Transworld, P & F and U.S. Bank, directly or indirectly, utilize instrumentalities of interstate commerce or the mails to regularly collect debts alleged to be owed to the Trusts. Therefore, they are Debt Collectors within the meaning of 15 U.S.C. § 1692a(6).

105.122.    TSI and P & F also are debt collectors pursuant to 15 U.S.C. § 1692a(6) because their principal business activity utilizes instrumentalities of interstate commerce or the mails related to the direct or indirect collection of consumer debts on behalf of others.

106.123.    The Trusts were formed to buy debt for investment purposes and to undertake a profit by hiring others to collect debt on their behalf. The Trusts are debt collectors pursuant to 15 U.S.C. § 1692a(6) because their principal business activity utilizes instrumentalities of interstate commerce or the mails. While the Trusts claim to be the owner of Plaintiff and class members loans, they are not. The Trusts are not creditors under the FDCPA.

107.124.    The Trusts also are debt collectors pursuant to 15 U.S.C. § 1692a(6) because, while the Trusts claims to be the owner of Plaintiff and class members loans, they are not. The Trusts are not creditors under the FDCPA.  The Trusts also regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another, i.e., the investors. By communicating with the Plaintiffs and FDCPA class members, directly and indirectly, and threatening and/or actually pursuing litigation and demanding sums not legally due from the Plaintiffs and the FDCPA class members, which are barred from collection against the Plaintiffs and FDCPA Class members as a result of an inability to prove their claims, TSI, U.S. Bank, the Trusts and P & F used false, deceptive, or misleading representations or means in connection with the collection of consumer debts of the Named Plaintiff and FDCPA Class members in violation of 15 U.S.C. § 1692e, 1692e(2), 1692e(5) and 1692e(10).

108.125.    U.S. Bank as the Special Servicer regularly collects or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another including hiring TSI and P & F to collect debts allegedly owed to the Trusts.

109.126.    Alternatively, US Bank and the Trusts are vicariously liable for the actions of the other Defendants, TSI and P&F. For P&F there is a principal-agency relationship with the

SEATTLE CONSUMER JUSTICE, P.S.
10728 16ᵀᴴ AVE SW
SEATTLE, WASHINGTON  98146
telephone (206) 330-0595

other Defendants as an attorney who collects and sues on behalf of the Trusts. For TSI, there is

a principal-agency relationship with Defendants U.S. Bank and Trusts that is within the scope of

federal common law principles of agency that would impose vicarious liability. The debt

collection actions alleged, including the knowing collection of meritless debt, are within the

scope of its agency relationship.

110.127.     Named Plaintiffs and the FDCPA Class members have suffered actual

economic and non-economic damages, as more fully described *supra* and have incurred

attorney's fees and court costs as a result of Transworld, P & F and U.S. Bank's direct or indirect

illegal debt collection practices described herein.

111.128.     The FDCPA provides for statutory damages in addition to actual damages.

**B.     COUNT II: CIVIL CONSPIRACY TO VIOLATE THE WASHINGTON STATE CONSUMER PROTECTION ACT ON BEHALF OF THE NAMED PLAINTIFFS AND THE WASHINGTON CPA CLASS MEMBERS**

129.     Plaintiffs incorporates all preceding paragraphs as if set forth fully herein and assert this claim on their behalf and on behalf of the Washington CPA Class members against each of the Defendants.

130.     Defendants have engaged in unfair and deceptive business practices in violation of the Revised Code of Washington Ch. 19.86.

131.     Such practices are likely to be repeated further, as illustrated by, among other things, similar conduct toward hundreds of other alleged debtors in Washington.

132.     Such practices are likely to be repeated further, as illustrated by, among other things, the recent filings in the District of Delaware District Court and entry of the final and not appealed Transworld Consent Order by the CFPB.

133.     Such conduct has damaged Plaintiffs and the Washington CPA Class members by without limitation, loss of time away from their work having to litigate the Defendants' improper debt collection actions in state court proceedings against them without the right to do so.

134.     Such conduct constitutes an unacceptable risk to and/or damages the public interest.

**SEATTLE CONSUMER JUSTICE, P.S.**
10728 16TH AVE SW
SEATTLE, WASHINGTON 98146
telephone (206) 330-0595

135.    Such conduct should be enjoined as authorized by RCW 19.86.

136.    In addition to damages, Plaintiffs and the Washington CPA Class members are entitled to recover treble damages to the extent provided by statute together with reasonable attorney's fees and reasonable non-taxable costs and taxable costs.

137.    The Defendants have, amongst themselves, expressly or impliedly agreed to undertake unlawful debt collection efforts and/or violations of the Washington State Consumer Protection Act and/or the Washington Collection Agency Act including but not limited to the engagement and retention of TSI to service as a loan servicer when each knows TSI is not licensed to conduct such work in the State of Washington.

138.    The Defendants, and each of them, have taken at least one overt wrongful act in furtherance of the said conspiracy. U.S. Bank agreed to be the Special Servicer of the Trusts and to be responsible for collection of debts allegedly owed to the Trusts. As part of accepting that role as Special Servicer, it has authorized and directed the other Defendants, TSI and P&F, to take actions on behalf of the Trusts to collect debts. The delegation of the performance of those duties to others by U.S. Bank does not relieve it of the responsibility, contractually and legally, for any collection actions taken on behalf of the Trusts which by its actions has ratified the unfair, deceptive, and abusive conduct.

139.    The Defendants are jointly and severally liable for the wrongful acts of the others in furtherance of the said conspiracy.

**C.    COUNT III: CLAIM AGAINST ALL DEFENDANTS: VIOLATION OF THE WASHINGTON STATE CONSUMER PROTECTION ACT ON BEHALF OF THE WASHINGTON CLASS**

140.    Plaintiffs incorporate all preceding paragraphs as if set forth fully herein and assert this claim on their behalf and on behalf of the Washington CPA Class members against each of the Defendants.

SEATTLE CONSUMER JUSTICE, P.S.
10728 16TH AVE SW
SEATTLE, WASHINGTON 98146
telephone (206) 330-0595

141.    As described herein, Defendants have engaged in unfair and deceptive business practices in violation of RCW 19.86.

142.    Such practices are likely to be repeated further, as illustrated by, among other things, similar conduct toward hundreds of other alleged debtors in Washington.

143.    Such practices are likely to be repeated further, as illustrated by, among other things, the filing of this lawsuit after entry of the final and not appealed Transworld Consent Order by the CFPB and other government actions against the Trusts' collectors.

144.    Such conduct has damaged the Plaintiffs without limitation, making him unable to manage his finances and causing him to incur out of pocket expenses to determine his legal rights and responsibilities which caused loss of time away from his business.

145.    Such conduct constitutes an unacceptable risk to and/or damages the public interest.

146.    Such conduct should be enjoined as authorized by RCW 19.86.

147.    In addition to damages, Plaintiffs and the Class are entitled to recover treble damages to the extent provided by statute together with reasonable attorney's fees and reasonable non-taxable costs and taxable costs.

**D.    COUNT IV: PER SE VIOLATION OF WASHINGTON'S CONSUMER PROTECTION ACT DUE TO A PER SE VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT ON BEHALF OF THE WASHINGTON CLASS AGAINST TSI AND P&F**

148.    Plaintiffs incorporates all preceding paragraphs as if set forth fully herein and assert this claim on their behalf and on behalf of the Washington Class members against the Defendants, TSI and P&F.

149.    In RCW 19.86.020, the CPA provides that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

SEATTLE CONSUMER JUSTICE, P.S.
10728 16TH AVE SW
SEATTLE, WASHINGTON 98146
telephone (206) 330-0595

150.    A CPA claim consists of the following elements: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; and (5) causation.

151.    Violations of the FDCPA are *per se* violations of the CPA.

152.    Defendants' conduct violates the FDCPA through the following conduct as follows:

a.      TSI and P&F each use any instrumentality of interstate commerce or the mails in a business, the principal purpose of which is the collection of any debts, or regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. TSI and P&F are Debt Collectors within the meaning of 15 U.S.C. § 1692a(6).

b.      By communicating with the Plaintiffs and the class members, directly and indirectly, and threatening and/or actually pursuing litigation and demanding sums not legally due from the Plaintiffs and the class members. TSI and P&F used false, deceptive, or misleading representations or means in connection with the collection of the consumer debts of the Named Plaintiffs and the Class members in violation of 15 U.S.C. § 1692e, 1692e(2), 1692e(5) and 1692e(10).

c.      TSI's and P&F's actions and omissions described herein in relation to their knowledge of the Trust's inaccurate and incomplete records which are not sufficient to pursue debt collection actions also constitute unfair or unconscionable means to collect or attempt to collect from the Named Plaintiffs and the Class Members in violation of 15 U.S.C. § 1692f.

d.      TSI's actions and omissions as a collector and an unlicensed student loan servicer for periods of time governed by this action through the filing of this pleading also violates 15 U.S.C. § 1692e, § 1692f in light of the other conduct unfair, deceptive, and abusive conduct descried herein.

SEATTLE CONSUMER JUSTICE, P.S.
10728 16TH AVE SW
SEATTLE, WASHINGTON  98146
telephone (206) 330-0595

e. Named Plaintiffs and the Class members have suffered actual economic and non-economic damages, as more fully described *supra,* and have incurred out of pocket expenses to determine to determine his legal rights and responsibilities which caused loss of time away from his business and made it impossible to manage their finances due to TSI's and P&F's illegal debt collection practices and direct and indirect actions described herein.

153.    The FDCPA violations are per se violations of the CPA. Defendant TSI and P&Fs' unfair and deceptive acts and practices repeatedly occurred in their trade and commerce, were capable of deceiving a substantial portion of the public, and have already injured many hundreds, if not thousands, of Washington residents.

154.    Defendants TSI and P&Fs' wrongdoing is continuing in nature and represents an ongoing threat to Plaintiff and Class members.

155.    Class members generally are unaware that Defendants TSI and P&Fs' collection practices are unlawful, and that Defendants TSI and P&Fs are using false statement, affidavits and altered documents to obtain judgments or coerce payments on debts they are collecting.

156.    Plaintiffs and Class members will suffer continuing, immediate, and irreparable injury absent the issuance of injunctive and equitable relief.

157.    Plaintiffs and Class members do not individually have a complete, speedy, and adequate remedy at law with respect to Defendants TSI and P&Fs' continuing misconduct.

158.    Preliminary and injunctive relief is necessary to prevent further injury to Plaintiffs and Class members.

~~112.~~    Defendants TSI and P&Fs' conduct in violation of the CPA has proximately caused and continues to cause injury to Plaintiff and Class members in their business or property.

159.

~~113.~~    Plaintiffs and Class members are entitled to recover compensatory, special, and general damages as allowed by law.

160.

-CONSOLIDATED COMPLAINT - 35

SEATTLE CONSUMER JUSTICE, P.S.
10728 16TH AVE SW
SEATTLE, WASHINGTON  98146
telephone (206) 330-0595

————Plaintiffs and the Class are entitled to recover treble damages, attorneys' fees, and costs pursuant to RCW 19.86.090.

114.161.     .

**B.E.    COUNT V: CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF UUNDER THE FDCPA ON BEHALF OF THE PLAINTIFFS AND THE FDCPA CLASS AND FOR INJUNCTIVE RELIEF UNDER THE WASHINGTON CPA CLASS ON BEHALF OF THE PLAINTIFFS AND THE WASHINGTON CPA CLASS AGAINST DEFENDANTS TSI, P&F, AND U.S. BANK.**

115.162.     Plaintiffs Osure Brown and Tommy incorporates all preceding paragraphs as if set forth fully herein and assert this their claims on his their behalf and on behalf of FDCPA and Washington CPA Class members against Defendants TSI, P&F, and U.S. Bank.

116.163.     There is an actual controversy between the parties concerning the enforceability of the debts that the Defendants have sought to collect from the Plaintiff and the FDCPA Class and the Washington CPA Class.

117.164.     The Plaintiffs and the FDCPA Class seek a declaratory judgments pursuant to 28 U.S.C. § 2201 as to the respective rights of the parties.

165.     The Plaintiffs and the FDCPA Class seek a declaration that the Defendants are estopped from claiming the right to collect the debts from the Plaintiffs and should be enjoined from engaging in collection of the alleged debts.

166.     As to the Washington Consumer Protection Act, a party may seek injunctive relief for violations of the Consumer Protection Act. RCW 19.86.090.

167.     Plaintiffs and Class members seek injunctive relief from this Court which would enjoin Defendant Trusts, TSI, P&F and U.S. Bank in its capacity as Special Servicer for the Trusts, from collecting debts in the manner described above from the Plaintiffs and Class members and from any other person similarly situated. *Scott v. Cingular Wireless*, 160 Wn. 2d 843, 853 (2007).

SEATTLE CONSUMER JUSTICE, P.S.
10728 16TH AVE SW
SEATTLE, WASHINGTON 98146
telephone (206) 330-0595

168.     Specifically, Plaintiffs and Class members seek an injunction prohibiting Defendants from their unlawful collection tactics, including but not limited to demanding money that is not owed, using Washington courts to extort payments and monies out of its residents by disregarding court rules and applicable law, misstating the law in collection lawsuits, providing insufficient or false affidavits, presenting altered documents as originals, and attempting to collect grossly inflated and illegal collection fees.

169.     Plaintiffs and Class members have reason to believe these actions make up a pattern and practice of behavior and have impacted other individuals similarly situated.

170.     Injunctive relief is necessary to prevent further injury to Plaintiffs and Class members and to the Washington public as a whole.

171.     Injunctive relief should therefore issue as described herein.

**F.     Count VI: Invasion of Privacy Against All Defendants on Behalf of the Washington Class.**

172.     Plaintiffs incorporate all preceding paragraphs as if set forth fully herein and assert this claim on their behalf and on behalf of the Washington CPA Class members against each of the Defendants.

173.     The Defendants have intruded upon the solitude and seclusion of the Plaintiffs and members of the Washington Class.

174.     The Plaintiffs and the members of the Washington Class each had a reasonable expectation that their solitude would not be intruded by demand letters and lawsuits by the Defendants and their agents and affiliates acting on their behalf and with their authorization.

175.     The Defendants' intrusion, given their knowledge that they did not have any legitimate legal claims against the Plaintiffs and the members of the Washington Class and Defendants actions, would be highly offensive to a reasonable person.

176.     The Plaintiffs and the members of the Washington CPA Class have been damaged by the Defendants' invasion of their privacy, including their right to solitude and seclusion.

SEATTLE CONSUMER JUSTICE, P.S.
10728 16TH AVE SW
SEATTLE, WASHINGTON  98146
telephone (206) 330-0595

118.177.    The Defendants' intentional, malicious, and recklessly indifferent conduct warrants the imposition of punitive damages

## VI.    **REQUEST FOR RELIEF**

WHEREFORE, the Plaintiffs prays for the following relief and judgment in his their favor and the other members of the FDCPA Class and the Washington CPA Class and against the Defendants TSI, P&F, and U.S. Bank, directly or vicariously, pursuant to Count I of this Complaint under the FDCPA. and Against All Defendants pursuant to Counts II. The Plaintiffs also pray for the following relief and judgment in their favor and for the other members of the Washington CPA Class and against the Defendants for Counts II, III, V, and VI of the Complaint and against TSI and P&F for Counts II-VI:

i.    The Court certify a FDCPA Class of persons as defined herein subject to modification or amendment;

ii.    The Court appoint Plaintiffs and his their counsel to represent the FDCPA Class certified;

iii.    The Plaintiffs and FDCPA Class be awarded statutory damages against each Defendants TSI, US Bank, P & F pursuant to the FDCPA in the sum of $500,000 per defendant;

iv.    The Plaintiffs and FDCPA Class be awarded actual damages against the Defendants TSI and P & F under Count I in an amount to be determined at trial;

v.    The Defendant Trusts and US Bank be held vicariously liable for the actions of the other Defendants;

vi.    The Plaintiffs and FDCPA Class be granted the declarations sought and injunctive relief sought in Count V and enjoin the Defendants from further collection of discharged debts;

vii.    The Plaintiffs and the FDCPA Class be awarded their costs, including attorney fees, pursuant to the FDCPA; and

viii.    The Plaintiffs and FDCPA Class be awarded such other and further relief

SEATTLE CONSUMER JUSTICE, P.S.
10728 16TH AVE SW
SEATTLE, WASHINGTON  98146
telephone (206) 330-0595

as may be appropriate and proper.

ix.   That the Court certify a Washington CPA Class of persons defined herein as may be modified or amended;

x.   That the Court appoint Plaintiffs and ~~his~~their counsel to represent the Washington CPA Class certified;

xi.   That the Plaintiffs and Washington CPA Class be awarded actual damages against each of the Defendants, jointly and severally, pursuant to the Washington Consumer Protection Act in an aggregated amount in excess of $75,000.00 for the Plaintiff and class members ;

~~That the Plaintiffs and Washington CPA Class be awarded punitive damages in an amount to be determined;~~

xii.   That the Plaintiffs and the Washington CPA Class be awarded their costs, including attorney fees, pursuant to the Washington Consumer Protection Act;

xiii.   For treble damages, pursuant to RCW 19.86.090, calculated from the damages determined by the court;

xiv.   For injunctive relief pursuant to RCW 19.86.090 ~~as described above~~and for declaratory relief under RCW 7.24 et seq; and

~~viii.~~xv.   That the Plaintiffs and Washington CPA Class be awarded such other and further relief as may be appropriate and proper.

Dated this ~~19th~~____ of ~~November~~February 2023.

/s/ Christina L Henry
Christina L Henry, WSBA 31273
Counsel for Plaintiffs
~~HENRY & DEGRAAFF, PS~~Seattle Consumer Justice, P.S.

10728 16th Ave SW
Seattle, WA 98146
Tel 206-330-0595

SEATTLE CONSUMER JUSTICE, P.S.
10728 16TH AVE SW
SEATTLE, WASHINGTON  98146
telephone (206) 330-0595

Fax 206-400-7609
*chenry@hdm-legal.com*

 */s/ Scott C. Borison*
Scott C. Borison (Pro Hac Vice)
Counsel for Plaintiffs
Borison Firm, LLC.
~~Counsel for Plaintiffs~~
5830 E Second St #95943
Casper. WY 82609
Tel 301-620-1016
Fax 301-620-1018
*scott@borisonfirm.com*

 */s/ Phillip R. Robinson*
Phillip R. Robinson (Pro Hac Vice)
Counsel for Plaintiffs

Consumer Law Center LLC
10125 Colesville Road, Suite 378
Silver Spring, MD 20901
Tel (301) 448-1304
*phillip@marylandconsumer.com*

SEATTLE CONSUMER JUSTICE, P.S.
10728 16TH AVE SW
SEATTLE, WASHINGTON  98146
telephone (206) 330-0595